IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph. D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph. D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

        Plaintiffs,

v.                                  No. CIV 10-407 JCH/LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT, ARSENIO CORDOVA,
LORRAINE COCA-RUIZ,
STELLA GALLEGOS, ROBERTO J.
GONZALES, PETER BASTON, and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants Taos Board of Education,

Arsenio Cordova, Lorraine Coca-Ruiz, Stella Gallegos, and Roberto J. Gonzales' (hereinafter the

"School Defendants") *Motion to Dismiss Plaintiff DeLong's Complaint* [Doc. 13], *Motion to*

*Dismiss Plaintiff Livingston's Complaint* [Doc. 14], *Motion to Dismiss Plaintiff Collins'*

*Complaint* [Doc. 15], *Motion to Dismiss Plaintiff Chavez-Medina's Complaint* [Doc. 16], *Motion*

*to Dismiss Plaintiff Winter's Complaint* [Doc. 17], *Motion to Dismiss Plaintiff Gallegos-*January

5, 2011*Jaramillo's Complaint* [Doc. 18], *Motion to Dismiss Plaintiff McCann's Complaint* [Doc.

19], *Motion to Dismiss Plaintiff Vigil's Complaint* [Doc. 20], *Motion to Dismiss Plaintiff Martinez's Complaint* [Doc. 21], *Motion to Dismiss Plaintiff Garcia's Complaint* [Doc. 22], *Motion to Dismiss Plaintiff Trujillo's Complaint* [Doc. 23], and *Motion for a More Definite Statement* [Doc. 24]. The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the School Defendants' motions with respect to each Plaintiff's Complaints [Docs. 13-23] should be GRANTED in part and DENIED in part, and that ths School Defendants' *Motion for a More Definite Statement* [Doc. 24] should be GRANTED.

## BACKGROUND

Plaintiffs are all either current or former employees of Defendant Taos Municipal Schools. With the exception of Plaintiff Garcia, who was an Administrative Assistant, each Plaintiff acted as an administrator for the Taos Municipal Schools in various capacities. Defendants Cordova, Coca-Ruiz, and Gallegos are Board Members of the Taos Board of Education, and Defendant Gonzales was the interim Superintendent of Schools during the time that many of the acts alleged in Plaintiffs' Complaint occurred. Each of these named Defendants is sued in his or her individual as well as official capacity.

Plaintiffs filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") in May and June, 2009, although the nature of these charges is not specified in Plaintiffs' Complaint. This suit does not concern those charges, but rather concerns actions that Plaintiffs contend Defendants later took against them, allegedly in retaliation for their filing those charges.

According to Plaintiffs' Complaint,[1] in early 2009, Plaintiff DeLong, who was then the

---

[1] Because Defendants have moved for dismissal of certain claims pursuant to Fed. R. Civ. P. 12(b)(6), the Court must, for purposes of this motion, view all well-pleaded facts, but not

Superintendent of Schools, offered all other Plaintiffs a two year contract of employment. Each other Plaintiff agreed to the terms of the offer, and signed the agreement. *See* Complaint [Doc. 1] at ¶ 11. After the contracts had been executed, Defendants Cordova, Coca-Ruiz, and Montoya suspended and then terminated Plaintiff DeLong's employment, allegedly in retaliation for the discrimination charges that she and the other Plaintiffs had filed. *Id*. at ¶ 12. This suspension and termination was allegedly without explanation or due process, and in violation of her multi-year contract, which still had at least one more year on it. *Id.*

After Plaintiff DeLong's suspension, Defendants Cordova, Coca-Ruiz, and Montoya, acting through and in conspiracy with Defendant Gonzalez, who had become the interim Superintendent, allegedly began a campaign of retaliation against all of the remaining Plaintiffs because of the EEOC charges that Plaintiffs had filed. *Id*. at ¶ 13. This campaign of retaliation:

> consisted of a change in the terms, conditions[,] and privileges of each Plaintiffs' employment, including, but not limited to[,] pay decreases with additional duties, threats of termination of employment, demands that some Plaintiffs sign a new contract for only one year with a threat of termination of employment if any Plaintiff refused, changing the terms of the properly executed contract of employment, changing some Plaintiffs from certified to non-certified employee positions, relocating some of the Plaintiffs from their previous work location to a remote work location, imposing a 2.1% pay decrease when other administrators and non-certified employees' pay was not affected[,] and denying Plaintiff's overtime compensation and employee benefits in other ways[,] including denying Plaintiffs educational blocks.

*Id*. at ¶ 14.

In addition, "[u]nder duress[,] each Plaintiff was ordered to sign an affidavit stipulating to the authenticity of the date of their two year contract. After signing the affidavit, some Plaintiff [sic] were ordered to sign a one year contract. The new contracts did not stipulate a job

---

conclusory allegations, as true. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991).

class, job description[,] or salary schedule.  As ordered, some Plaintiffs signed the new agreements under duress."  *Id*. at ¶ 15.  Each Plaintiff was also "personally subjected to hostility and retaliatory behavior from the individual Defendants during both private meetings and open meetings with additional threats of termination."  *Id*. at 16.  The only example offered in the Complaint of such behavior is the provision of private information concerning Plaintiff McCann's health to Taos newspapers by Defendant Coca-Ruiz.  *Id*.

Ultimately, although it is unclear from the Complaint when or under what circumstances this occurred, Plaintiff Trujillo's employment was terminated and Plaintiff Livingston was allegedly constructively terminated.[2]  *Id*. at ¶ 17.  In addition, Plaintiff Winter was removed from her position as Personnel Director and assigned to another position, again allegedly in retaliation for having filed the EEOC complaint.  *Id*. at ¶ 18.

---

[2] The School Personnel Act, NMSA 22-10A-1 *et seq.*, gives "termination" a specific meaning that may differ from the term as used by Plaintiffs in their Complaint and subsequent briefing.  With respect to a certified school employee, the Act defines "terminate" to mean the act of not re-employing the employee for the ensuing school year.  NMSA 22-10A-2(E).  In other words, a certified school employee is "terminated" if she finishes out the term of her contract and that contract is not renewed.  With respect to non-certified school employees, "termination" refers to the act of severing the employment relationship with the employee, and can occur during the school year.  *Id.*  If a certified employee has her employment relationship severed prior to the expiration of her contract, the Act defines this as a "discharge" rather than a "termination."  *Id*. at 22-10A-2(A).  Plaintiffs' Complaint does not appear to specify whether Plaintiffs Trujillo and Livingston had their employment relationship severed prior to the expiration of their contracts or whether they simply did not have their contracts renewed.  *See* Complaint at ¶ 17.  Nor does it appear to specify whether Plaintiffs Trujillo and Livingston were certified employees at the time their employment relationship was severed.  Plaintiffs claim that Plaintiff DeLong had at least one more year on her contract at the time her employment relationship was severed, *see id*. at ¶ 12, so it is not clear that "termination" is the proper term to use with reference to her removal.  The Court raises this issue to explain that when it uses "terminate" or "discharge" throughout this Memorandum Opinion and Order, it is using them as Plaintiffs have used them throughout their Complaint and briefing; it is not attempting to use them as terms of art or to make any pronouncements about the issues in this case (such as whether certain Plaintiffs were certified employees) through their use.

Another portion of Plaintiffs' Complaint concerns the hiring by the School Defendants of Defendant Baston and his company IDEAS Business Technology Integration, LLC ("IDEAS Defendants") to conduct an audit of Plaintiffs' activities and to write a report. Plaintiffs contend that the audit and report "was designed by all Defendants to denigrate, malign and humiliate Plaintiffs in a public setting without the benefit of a public reply by Plaintiffs," and that it was a retaliatory action taken in violation of Title VII. *Id*. at ¶ 19. Plaintiffs contend that the report was a "witch hunt," intended to injure Plaintiffs, expose them to contempt, harm their reputation, and discourage others from associating with them. *Id*. at ¶ 20. Plaintiffs allege that the report was largely false or made after a negligent attempt to recognize falsity, and that it was made with malice. *Id*. Plaintiffs list a number of findings and recommendations contained in the 151 page report that they contend constitute false and derogatory statements made with the intent to defame them. *Id*. at ¶¶ 21-24.

Finally, Plaintiffs allege that Defendant Cordova filed a lawsuit against Plaintiffs DeLong, Livingston, Collins, Martinez, Winter, and Trujillo on or about September 13, 2009, with the intent to further retaliate against them. The suit claimed, *inter alia*, that Defendant Cordova was a School Board member attempting to make changes in the schools, and that Plaintiffs interfered with his role as a Board member. The Complaint states nothing about the status or disposition of Defendant Cordova's suit. Plaintiffs claim that Defendant Cordova's suit was, "in effect, an action by the School and Board against Plaintiffs," was an attempt to cause financial harm to them, and was an attempt "to interfere with their First Amendment right to freedom of association and freedom to petition the government." *Id*. at ¶ 25.

Plaintiffs' Complaint states five counts: (I) Retaliation under Title VII and the New Mexico Human Rights Act; (II) Violation of Due Process and Equal Protection under 42 U.S.C.

5

§ 1983 and conspiracy in violation of 42 U.S.C. § 1985(2) and (3); (III) Breach of contract and breach of the covenant of good faith and fair dealing; (IV) Defamation or prima facie tort against the IDEAS Defendants;[3] and (V)Violation of First Amendment right to association and right to petition the Government against Defendant Cordova.

## LEGAL STANDARD

Defendants have moved to dismiss portions of this case pursuant to Fed. R. Civ. P. Rule 12(b)(6).  Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.  A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.,*144 F.3d 1302, 1304 (10th Cir. 1998).

In addressing pleading requirements, the Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  The factual allegations in a

---

[3] The IDEAS Defendants have filed an Answer to Plaintiffs' Complaint, *see* Doc. 54, but have not yet filed any potentially dispositive motions.  Because Count IV is stated only against the IDEAS Defendants, it will not be addressed in this Memorandum Opinion and Order.

complaint "must be enough to raise a right to relief above the speculative level," *id.*, and if a

plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her]

complaint must be dismissed."  *Id.* at 570.  In determining whether a complaint states a plausible

claim for relief, the Court must engage in "a context-specific task that requires [it] to draw on its

judicial experience and common sense.  But where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)

(quoting Fed. R. Civ. P. 8(a)(2)).

In order to meet the standard of facial plausibility, a complaint must "plead[] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

alleged misconduct." *Id.* at 1949.  Simply put, "[t]readbare recitals of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.*  Nor will a complaint survive a

Rule 12(b)(6) motion "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).  The "tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions....[P]leadings that,

because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at

1949-50.  (citations omitted).

In evaluating a Rule 12(b)(6) motion, the Court's function "is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State*

*Sch. for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999).  Certainly, the "plausibility

standard is not akin to a 'probability requirement,' but it asks for more that a sheer possibility

that the defendant has acted unlawfully."  *Id.*  As the Tenth Circuit has explained, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*, 129 S.Ct. at 1249 (quoting *Twombly*, 550 U.S. at 557) (further citations omitted).

## ANALYSIS

Although the School Defendants filed separate motions to dismiss for each Plaintiff, Plaintiffs' claims are all contained in one Complaint, and the majority of Defendants' contentions are repeated in each separate motion. Thus, to the extent Defendants' claims are repeated in each of their motions, the Court will address the substance of each of Defendants' contentions, applying its determination to each relevant Plaintiff, rather than addressing Defendants' motions individually.

### 1.   Individual Liability Under Title VII

Defendants' first contention is that Plaintiffs' claim for retaliation under Title VII (Count I) should be dismissed to the extent that it seeks to assert liability against Defendants in their individual capacities. *See*, *e.g.,* Motion to Dismiss Plaintiff Livingston's Complaint (hereinafter "Livingston Mot.") [Doc. 14] at 5. This contention is made in each of Defendants' motions to dismiss [Docs. 13-23]. Defendants correctly state the law that "personal capacity suits against individual supervisors are inappropriate under Title VII." *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996). However, a close reading of the Complaint's allegations and prayer for relief indicates that Plaintiffs have made a claim for Title VII retaliation only against the School itself,

and not against any Defendants in their individual capacity.  *See* Complaint at ¶¶ 30, 33, and 34.

Plaintiffs confirm in their responses to Defendants' motions for summary judgment that they are

not making any claim against individual Defendants for Title VII retaliation.  *See*, *e.g.*, Plaintiff

Livingston's Response to Motion to Dismiss (hereinafter "Livingston Resp.") [Doc. 47] at 3-4.

Thus, to the extent that Defendants' motions seek to dismiss a claim that has not been made,

their motions are denied as moot.

        2.     <u>Due Process Claims</u>

           A.    <u>Plaintiff DeLong's Claim</u>

    Plaintiff DeLong had been the Superintendent in early 2009, until her suspension and

eventual termination.  She claims that certain Defendants violated her constitutional Due Process

rights by terminating her without notice or provision of any hearing.  *See* Complaint at ¶¶ 39, 42-

43.  Defendants moved to dismiss a portion of her claim to the extent that she attempted to bring

a claim against Defendant Gonzales in his individual capacity.  *See* Motion to Dismiss Plaintiff

DeLong's Complaint (hereinafter "DeLong Mot.") [Doc. 13] at 5.  Defendants argue that,

because only the School Board has the authority to employ a Superintendent, and because

Defendant Gonzales was not on the School Board at the time of Plaintiff DeLong's termination,

he cannot have had any personal involvement in the decision to terminate her.  *See id.*  While

this is a correct statement of the law, Plaintiffs clarify in their Response to this motion [Doc. 44]

that Plaintiff DeLong made no claim against Defendant Gonzales in his individual capacity for a

Due Process violation.  *See* Plaintiff DeLong's Response to Motion to Dismiss (hereinafter

"DeLong Resp.") [Doc. 44] at 3-4.  Therefore, to the extent that Defendants' motion seeks to

dismiss a claim against Defendant Gonzales that has not actually been made, it is denied as

moot.  Defendants' motion does not seek to dismiss Plaintiff DeLong's Due Process claim

against Defendants Cordova, Coca-Ruiz, and Gallegos, and this claim remains.

B.    Other Plaintiffs' Claims

Plaintiff Trujillo was an administrator for the school district until her termination.  She was the only Plaintiff, other than Plaintiff DeLong, to have her employment actively terminated. Plaintiff Livingston claims to have been constructively terminated.  The other Plaintiffs, while not terminated either actively or constructively, all claim to have suffered detrimental changes in the terms and conditions of their employment, such as through the cancellation of their two year employment contracts, which were replaced by one year contracts.  *See* Complaint at ¶¶ 36, 38.

Defendants moved to dismiss a portion of the claims of Plaintiffs, other than Plaintiff DeLong, to the extent that they attempted to bring a claim against Defendants Cordova, Coca-Ruiz, and Gallegos in their individual capacities.  *See, e.g.*, Motion to Dismiss Plaintiff Trujillo's Complaint (hereinafter "Trujillo Mot.") [Doc. 23] at 5.  Defendants argue that, because these three Defendants were acting in their capacity as School Board members, they cannot have had any legal involvement in Plaintiff Trujillo's termination or any other personnel action against a school employee.  *See id*.  Defendants are correct.  Under NMSA 1978 § 22-5-14(b)(3), employment decisions lie solely with the Superintendent.  *See id*.  ("The local superintendent shall: (3) employ, fix the salaries of, assign, terminate or discharge all employees of the school district.").

In their responses, Plaintiffs other than Plaintiff Trujillo do not appear to contest that a claim for a Due Process violation does not lie against the School Board Defendants in their individual capacities.  Plaintiff Trujillo, on the other hand, contends that Defendants Cordova, Coca-Ruiz, and Gallegos "participated directly in violating [her] constitutional rights and that these Defendants directed or encouraged the Superintendent to implement their unconstitutional

acts in the termination of Plaintiff." *See* Plaintiff Trujillo's Response to Motion to Dismiss (hereinafter "Trujillo Resp.") [Doc. 50] at 6. However, the gravamen of Plaintiff Trujillo's complaint with respect to this portion of Count II is not simply that she was unlawfully terminated, but that she was terminated without notice or a hearing, and without being given a reason for her termination. *See* Complaint at ¶¶ 38, 40. Plaintiffs' suit seeks damages against Defendants in their individual capacities because of their actions taken as School Board members. *See* Complaint at ¶ 6 ("All actions of these Defendants complained of herein were taken in their capacity as either elected or appointed officials of the Taos Municipal School District and its Board."). Not only do Board members lack any authority over employment decisions, they also have no authority over what notice, hearing, or other process an employee is afforded prior to termination. *See* NMSA 1978 § 22-5-4 (listing enumerated powers of local school boards). Thus, Defendants Cordova, Coca-Ruiz, and Gallegos cannot be sued in their individual capacities for violating Plaintiff Trujillo's due process rights concerning her termination. Her suit against Defendant Gonzales in his individual capacity remains.

With the exception of the claims made by Plaintiffs DeLong and Trujillo, whose employment was actively terminated, Defendants contend that not only should individual capacity suits not lie against School Board members for a Due Process violation, but that the remaining Plaintiffs' Due Process claims should be dismissed in their entirety because they have not shown any protected property interest of which they have been deprived. *See, e.g.,* Livingston Mot. [Doc. 14] at 6-8. In the context of a procedural Due Process claim, a plaintiff must first demonstrate the existence and deprivation of a constitutionally protected property interest before that plaintiff can show that she is entitled to damages for failure to provide an appropriate level of process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir.

1998).

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In the employment context, the Supreme Court has defined a property interest as a legitimate expectation in continued employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Defendants contend that, because (with the exception of Plaintiffs DeLong and Trujillo) Plaintiffs are still employed,[4] they have failed to allege a deprivation that would invoke Due Process protections.

A protected property interest "is defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Driggins v. City of Oklahoma City*, 954 F.2d 1511, 1513 (10th Cir. 1992) (quoting *Roth*, 408 U.S. at 577). *See also Bishop v. Wood*, 426 U.S. 341, 344 (1976) (holding that the existence of a legitimate property right in employment is determined by reference to state law). Plaintiffs claim that they were deprived of a constitutionally protected property right when they had their contracts modified from two years to one year, with some Plaintiffs subject to a reduction in duties or rate of pay.

Plaintiffs' citation to *Stanton v. Mays*, 522 F.2d 908, 911 (10th Cir. 1977) as creating a property interest in a fixed-term contract is unavailing, because *Stanton* concerned the dismissal of an employee with a fixed contract, rather than continued employment of an employee at a reduced contract term. Nonetheless, reducing the terms of their contracts does deprive these

---

[4] Although Plaintiff Livingston has alleged that she was constructively discharged, because, as discussed later in this Memorandum Order and Opinion, she has not provided any basis for her claim of constructive discharge, Defendants place her in the same category as other Plaintiffs who are still employed.

Plaintiffs of a protected property interest.  Under New Mexico law, school administrators have

no tenure rights, and are not entitled to procedural due process regarding termination decisions

(*i.e.*, decisions not to renew their contracts upon expiration).  *See Cole v. Ruidoso Mun. Sch.*, 947

F.2d 903, 905 (10th Cir. 1991); *Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 493 (1994).

However, during the term of their contract, administrators may only be discharged for just cause

and subject to a host of procedural protections.  *See* NMSA 22-10A-27 (2003).  Thus, by taking

Plaintiffs' two-year contracts and replacing them with one-year contracts, at the end of which

they can be terminated without cause or procedural protections, Defendants have deprived

Plaintiffs of a property right, namely, the right to a full year of employment during which they

can be discharged only for cause and with procedural protections.  Therefore, Plaintiffs' Due

Process claims survive.

        3.    <u>Liberty Interest Claims</u>

        In order to bring an actionable claim for violation of a liberty interest, a plaintiff must

allege that a defendant made statements that impugn a plaintiff's good name, honor, reputation,

or integrity, that such statements were false, that the statements were published, and that they

were made in the course of terminating the plaintiff or that they foreclosed other employment

opportunities.  *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1991).  Defendants contend

that only Plaintiffs DeLong and Trujillo, whose employment was actively terminated, can bring

an actionable claim for violation of a liberty interest, and they move to dismiss any other

Plaintiff's claim.

        Plaintiffs confirm in their responses to Defendants' motions for summary judgment that,

with the exception of Plaintiffs DeLong and Trujillo, they are not making any liberty interest

claims.  *See*, *e.g.*, Livingston Resp. [Doc. 47] at 5.  Thus, to the extent that Defendants' motions

seek to dismiss claims that have not been made, their motions are denied as moot.

    4.    <u>Equal Protection Claims</u>

Plaintiffs' Complaint claims, on behalf of all Plaintiffs, that Defendants violated their right to Equal Protection through their conduct.  Defendants seek dismissal of the Equal Protection claims on the ground that no viable claim has been pled.  The Supreme Court has foreclosed Equal Protection "class of one" claims in the public employment context.  *See Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591 (2008); *Kelley v. City of Albuquerque*, 542 F.3d 802, 822 (10th Cir. 2008).  Plaintiffs acknowledge this, and contend that their Equal Protection claim is not based on a "class of one" argument.  *See, e.g.,* DeLong Resp. [Doc. 44] at 4.  Instead, Plaintiffs contend that "the class of individuals that filed a discrimination complaint against Defendants and then suffered retaliation as a result of that filing" is a protected class for Equal Protection purposes.  *Id.*

This attempt to turn a statutory retaliation claim into an Equal Protection claim is not viable.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1085-86 (10th Cir. 2007) (holding that a group of state employees who alleged that they were blacklisted for maintaining administrative appeals of state personnel actions could not state an Equal Protection claim, even if the blacklisting policy ran afoul of state or federal laws).  The *Teigen* court held that "[t]he kind of bare retaliation claim at issue in this case simply cannot form the basis for a constitutional equal protection violation" because "otherwise, every claim of unlawful retaliation against a government employer...could be transformed into an equal protection claim simply be defining the relevant class as consisting of those employees who challenged the government's unlawful employment policies."  *Id.* at 1086.  *Teigen*'s holding applies equally to this case, and Plaintiffs' Equal Protection claim is therefore dismissed with prejudice.

5.   Section 1985 Claims

All Plaintiffs have claimed that Defendants Cordova, Coca-Ruiz, and Gallegos acted in conspiracy with Defendant Gonzales and the IDEAS Defendants in violation of 42 U.S.C. § 1985(2) and (3).  *See* Complaint at ¶¶ 50-52.  42 U.S.C. § 1985 concerns conspiracies to interfere with civil rights.  42 U.S.C. § 1985(2) prohibits obstruction of justice through a conspiracy to impede, hinder, obstruct, or defeat the due course of justice with the intent to deny the equal protection of the laws or to injure a person who is lawfully attempting to enforce the right or any person or class of persons to the equal protection of the laws.  42 U.S.C. § 1985(3) provides a cause of action against those who conspire to deprive any person or class of persons of the equal protection of the laws.  It further provides a cause of action to any person who is injured or deprived of having any right or privilege of a citizen of the United States by means of a conspiracy.  *Id.*  Plaintiffs' theory is that Defendants conspired to retaliate against each Plaintiff for filing a complaint with the EEOC alleging illegal discrimination and, because filing an EEOC complaint is a right or privilege of a citizen of the United States, conspiracy to retaliate for such filings violates 42 U.S.C. § 1985.  *See, e.g.,* DeLong Resp. [Doc 44] at 6.

As with Plaintiffs' Equal Protection claim, this appears an attempt to turn a Title VII retaliation claim into something that is not supported by the law.  Section 1985(2) applies to conspiracies to obstruct justice in federal or state judicial proceedings.  *See Kush v. Rutledge*, 460 U.S. 719, 724-25 (1983).  The only proceedings mentioned in Plaintiffs' Complaint are the EEOC complaints.  EEOC complaints do not constitute protected proceedings for purposes of Section 1985(2).  *See, e.g., Graves v. United States*, 961 F. Supp. 314, 319 (D.D.C. 1997) and cases cited therein (holding that pending administrative proceedings under Title VII do not constitute a court proceeding for purposes of Section 1985(2)).

Similarly, Section 1985(3) may not be used to redress violations of Title VII.  *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378-79 (1979); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991).  In order to state a claim under Section 1985(3), a plaintiff must sufficiently allege: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). However, Section 1985(3) "does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id*. (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).  The "other class-based animus" language has been very narrowly construed, *Id*., and has not been extended to include a class that files an EEOC complaint.  At the very least, a claim under Section 1985(3) appears to require some racial component.  *See Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985).  As pled, Plaintiffs have alleged the Defendants conspired to injure them out of a retaliatory animus, not out of any race-based animus.  Thus, Plaintiffs' Section 1985 claims must be dismissed at this time.  However, this dismissal is without prejudice, and with leave to amend their Complaint to identify a basis for a race-based conspiracy claim that is distinct from their Title VII retaliation claim.

6.     Breach of Contract and Covenant of Good Faith and Fair Dealing Claims

Defendants seek to have Plaintiffs' breach of contracts claims dismissed, citing NMSA 1978 § 37-1-23A, which grants governmental entities immunity from actions based on contract, except for actions based on a valid written contract.  *See, e.g.,* DeLong Mot. [Doc. 13] at 7. Defendants also argue that New Mexico courts do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment contract, citing

16

*Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 731 (1988).  However, Plaintiffs'

Complaint clearly alleges that each Plaintiff signed a written two-year contract, which was later

voided by Defendants.  *See* Complaint at ¶¶ 11, 14, 15, 17, 18.[5]  Because Plaintiffs all claim to

have been employed pursuant to a valid, written contract whose terms were violated, they have

sufficiently stated a claim for Rule 12(b)(6) purposes, subject to the requirement to make a more

definite statement, as discussed below.  For this reason, Defendants' motion to dismiss this

aspect of Plaintiffs' claims is denied.

       7.     <u>Motion for a More Definite Statement</u>

     Defendants have moved, pursuant to Fed. R. Civ. P. 12(e), for a more definite statement

regarding Plaintiffs' claim under Title VII (Count I).  *See* Doc. 24.  A party may move for a

more definite statement of any pleading that is "so vague or ambiguous that a party cannot

reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  A Rule 12(e)

motion should be granted if the claims alleged are not sufficiently specific to enable a responsive

pleading in the form of a denial or admission.  *See Peterson v. Brownlee*, 314 F. Supp. 2d 1150,

1156 (D. Kan. 2004).

     In this case, Plaintiffs' Complaint frequently lumps all Plaintiffs and all School

Defendants together.  For example, paragraph 14 of the Complaint refers to "demands that some

Plaintiffs sign a new contract for only one year" and the "changing [of] some Plaintiffs from

certified to non-certified employee positions," without identifying which specific Plaintiffs were

---

     [5] Defendants contention that Plaintiff DeLong excluded herself from allegations in the
Complaint through her Response by indicating that "each Plaintiff (other than DeLong) had
entered into a two year agreement with the Schools in early 2009," Doc. 44 at 10, is without
merit.  Plaintiff DeLong clearly pled that she had a two and one-half year contract with the
School District, which had at least one more year on it at the time her employment was
terminated.  *See* Complaint at ¶ 12.

subject to these demands or changes, or which Defendants Plaintiffs claim were responsible. Similarly, paragraph 15 alleges that each Plaintiff was ordered to sign an affidavit stipulating to the authenticity of the date of their two year contract, but it does not specify which Defendant gave such an order.  Nor does the Complaint specify what "hostil[e] and retaliatory behavior" was perpetrated on which Plaintiff by which Defendant.  *See id.* at ¶ 16.

Because the standard for an "adverse employment action" in a Title VII context is liberally construed*, see Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998), Defendants need to have an understanding of which retaliatory adverse employment action is alleged to have been taken against each specific Plaintiff so that they can admit or deny specific allegations.  Because the Complaint contains ambiguous and general statements of retaliatory adverse employment actions, the School Defendants are not in a position to properly respond.

Plaintiffs' response to this motion [Doc. 41] does nothing to elucidate their Complaint. Instead, it merely repeats allegations in the Complaint, and makes general and conclusory statements such as "some [Plaintiffs] suffered material changes of positions and location of employment, some were changed from certified to non-certified employees and all suffered emotional distress because of the retaliation suffered," and "[e]ach Plaintiff was personally subjected to hostility and retaliatory behavior from the individual Defendants."  Doc. 41 at 2. Plaintiffs go so far as to suggest that, because Defendants filed motions to dismiss, they must understand the Complaint well enough to be able to file an Answer as well.  *Id.* at 3.  Filing a motion to dismiss on certain grounds does not preclude filing a Rule 12(e) motion seeking clarification.  Plaintiffs' insistence that "whatever additional information Defendants need should be learned from discovery," *id.*, is especially unavailing in this instance, where Plaintiffs

are in full control of determining which "hostilities" they suffered and which actions they personally regarded as adverse.

This is particularly true in the case of Plaintiff Livingston's claim that she was constructively discharged. Plaintiff Livingston claims that she "is not aware of any case requiring that she detail the facts in her complaint constituting a constructive discharge." Livingston Resp. [Doc. 47] at 4. However, the allegation of constructive discharge is merely a legal conclusion couched as a factual allegation, which the Court is not bound to accept. *Twombly*, 550 U.S. at 555. She has not pled any facts purporting to demonstrate that her workplace was objectively intolerable such that a reasonable employee would have no choice but to quit. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000). Thus, she has not provided the grounds of her entitlement to relief or raised her right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

Therefore, Defendants' motion for a more definite statement will be granted. In order to proceed with Count I of their Complaint, Plaintiffs must amend their Complaint to plead sufficient facts to provide a clear understanding of which retaliatory acts each specific Plaintiff complains of, and allegations of which specific Defendant perpetrated which acts.[6]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss Plaintiff DeLong's Complaint* [Doc. 13], *Motion to Dismiss Plaintiff Livingston's Complaint* [Doc. 14], *Motion to Dismiss Plaintiff Collins' Complaint* [Doc. 15], *Motion to Dismiss Plaintiff Chavez-*

---

[6] Although Defendants phrased their motion only in terms of clarification of Plaintiffs' Title VII claims, clarification of Plaintiffs' contentions will be beneficial for evaluating Plaintiffs' breach of contract and breach of covenant of good faith and fair dealing claim as well.

*Medina's Complaint* [Doc. 16], *Motion to Dismiss Plaintiff Winter's Complaint* [Doc. 17], *Motion to Dismiss Plaintiff Gallegos-Jaramillo's Complaint* [Doc. 18], *Motion to Dismiss Plaintiff McCann's Complaint* [Doc. 19], *Motion to Dismiss Plaintiff Vigil's Complaint* [Doc. 20], *Motion to Dismiss Plaintiff Martinez's Complaint* [Doc. 21], *Motion to Dismiss Plaintiff Garcia's Complaint* [Doc. 22], and *Motion to Dismiss Plaintiff Trujillo's Complaint* [Doc. 23] are all GRANTED in part and DENIED in part.  Defendants' *Motion for a More Definite Statement* [Doc. 24] is GRANTED.

Plaintiffs are granted 30 days to file an amended Complaint to address any deficiencies identified in this Memorandum Opinion and Order.

Dated this 11th day of January, 2011.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE