IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

       Plaintiffs,

v.                                                        No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

       Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Taos Board of Education, Taos Municipal School District's ("Taos Schools'" or "the District's"), Arsenio Cordova's, Lorraine Coca-Ruiz', Stella Gallegos', and Roberto J. Gonzales' (collectively, "the School Defendants'") *Motion for Summary Judgment and Memorandum in Support of Motion on Claims Brought by Plaintiff Garcia* (Doc. 159). In the underlying suit, eleven Plaintiffs, all current or former employees of Taos Schools – including Sandra A. Garcia, an administrative assistant to Co-Plaintiff Rose Martinez and bookkeeper for the District – accuse the School Defendants of a

variety of state and federal offenses, including retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2005e-5(f), et seq., and the New Mexico Human Rights Act, 28-1-1 N.M.S.A. (1996). Garcia has since waived all of her claims except for her retaliation claim.[1] In the instant motion, the School Defendants contend that summary judgment should be granted because Garcia failed to exhaust her administrative remedies, and does not set forth a triable claim that the alleged retaliatory acts constituted adverse employment actions within the meaning of the relevant law. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendants' motion should be **granted.**

## FACTUAL BACKGROUND

**Garcia's Employment History with Taos Schools, Including December 2007 Transfer**

Plaintiff Garcia is a longtime employee of Taos Schools. Garcia was initially employed as a secretary at Ranchos Elementary School from 1997 until December 21, 2007, at which time she became administrative assistant to Acting Superintendent Rose Martinez. Martinez was subsequently transferred to the role of Director of Instruction for the District, and Garcia was offered, and accepted, the position of Martinez' administrative assistant.

On June 25, 2008, Plaintiff Garcia executed a new contract with Taos Schools for the 2008-2009 school year, pursuant to which she agreed to serve as an administrative assistant and bookkeeper for the annual salary of $41,594. Garcia and Taos Schools again executed a new contract on January 28, 2009, which raised her salary to $42,244. Both of these contracts were

---

[1] *See* Doc. 209 at 7 (Garcia's response indicating that she "only makes claims under EEO and HRD law for retaliation.").

signed by then-Superintendent Loretta DeLong on behalf of the District.

**Garcia's First EEOC Complaint**

On May 24, 2009, Garcia filed a complaint against certain School Defendants with the Equal Employment Opportunity Commission ("EEOC"), accusing Taos School Board members Cordova and Coca-Ruiz and Interim Superintendent Gonzales of acts of age- and gender discrimination, harassment and retaliation for complaints made about the workplace, in violation of Title VII of the Civil Rights Act of 1964. The narrative portion of the EEOC charge specifically identified seven specific incidents of allegedly discriminatory conduct.

**Garcia's Contract Renewed**

On July 7, 2009, Garcia formally executed a Non-Certified Employment Contract with the District, pursuant to which she agreed to a salary of $42,245 for the 2009-2010 school year – the same salary she had earned for the second half of the 2008-2009 school year.

**Garcia Assumes Additional Bilingual Job Responsibilities**

In August 2009, Garcia assumed additional bilingual administrative duties, in addition to her regular job responsibilities. Garcia represents that her new duties included, *inter alia,* data entry of various documents in Spanish; working with schools to compile an accurate accounting of bilingual students in the District; maintaining a database compiling information on these students; ordering Spanish-language testing materials; and assisting in the preparation and adjustment of the District's bilingual budget.

The parties dispute the extent to which Garcia's bilingual duties have added to her existing workload. Garcia contends that the District formerly employed a separate "Bilingual Secretary," and that assuming those duties has added an estimated 13.5 hours to her workweek. The School Defendants claim that Garcia spends 35% of her time on bilingual responsibilities

during state reporting periods, and 1 to 1.5 hours per week on bilingual duties during non-reporting periods. The parties also dispute whether, as Garcia maintains, she assumed these new duties on the order of new Superintendent Roberto Gonzales.

**EEOC Issues Right to Sue Letter, Garcia Files Second EEOC Complaint**

On October 9, 2009, the EEOC issued a Right to Sue letter to Garcia regarding her discrimination charge.

On January 14, 2010, Garcia filed a second EEOC action against the School Defendants. In her complaint, Garcia alleged that the School Defendants had committed various acts of discrimination against her between June 15, 2009 and January 13, 2010, in retaliation for her filing of the first EEOC complaint.

On January 27, 2010, the EEOC sent Garcia a Right to Sue letter regarding her second complaint.

**Garcia Assumes New "Federal Program" Duties**

In June 2010, Garcia was assigned new "federal program" duties, including, *inter alia*: maintaining ten new budgets; assisting with the preparation of monthly, quarterly, and annual budget reports; maintaining encumbrance reports for each program for each school in the District; maintaining federal program inventories; and processing purchase requisitions in the District's bookkeeping program. Garcia contends that these additional duties have added another 11 hours to her existing workweek, so that she works an average of 61.5 hours per week (including her bilingual duties). She contends that her additional duties used to be spread between four since-eliminated positions, and that she has not received increased compensation for these new duties.

The School Defendants respond that, while Garcia's new federal program duties consume

4

"about 30 hours a week," she no longer spends "as much time on curriculum and testing as she did before. Garcia's supervisor, Rose Martinez, is also involved in Bilingual and Federal Programs with Garcia, and Martinez' duties have also changed accordingly." (Doc. 159 at 5).

The record does not indicate which individual(s) determined that these duties should be assigned to Garcia.

## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks

5

omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## DISCUSSION

The School Defendants' motion is based on the arguments that (1) Garcia failed to exhaust her administrative remedies; and (2) the incidents that form the basis of her claim do not constitute adverse employment actions within the meaning of Title VII retaliation law.

### I. Whether Garcia has Exhausted Her Administrative Remedies

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court." *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993) (quotation omitted). In order to show that she exhausted her administrative remedies, a federal plaintiff must establish that she brought "a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice." *Castaldo v. Denver Public Sch.*, 276 Fed. Appx. 839, 841 (10th Cir. 2008); *see also* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). In addition, she must show that she received notice of her right to sue from the EEOC. *See* 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1). Upon receipt of her "right to sue" letter, the claimant then has 90 days to file suit in federal court. *Gerald v. Locksley*, 2011 U.S. Dist. LEXIS 119688, at *48 (D.N.M., Aug. 1, 2011); *see also* 42 U.S.C. § 2000e-5(f)(1). The Court must "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Denetclaw v. Thoutt Bros. Concrete Contrs,* 287 Fed. Appx.

17, 21 (10th Cir. 2008). However, a "plaintiff normally may not bring a retaliation lawsuit "based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs*.,165 F.3d 1321, 1326 (10th Cir. 1999).

As set forth above, Garcia brought separate EEOC complaints against the School Defendants on May 24, 2009 and January 14, 2010, which resulted in the EEOC's issuing her "right to sue" letters on October 9, 2009 and January 27, 2010, respectively. It is undisputed that Garcia failed to exercise her right to sue following her receipt of the first letter but joined together with the ten other Plaintiffs to file the instant suit within 90 days of receiving the second letter. Thus, the School Defendants argue that Garcia is limited to relying only on allegedly unlawful employment practices that occurred in the 300-day period between March 20, 2009 and the day she filed the second EEOC complaint, January 14, 2010, having both waived the right to rely on events occurring before that period and failed to exhaust her administrative remedies with respect to allegations arising after that period. They note that of the three incidents that Garcia has identified as supporting her retaliation claim – (1) her transfer from a secretarial position at Ranchos Elementary to the position of Rose Martinez' administrative assistant in December 2007; (2) her assumption of bilingual duties in August 2009; and (3) her assumption of federal program duties in June 2010 – only her assumption of bilingual duties falls within the relevant time period. Further, the School Defendants argue that summary judgment should be granted even as to Garcia's claim that they retaliated against her by assigning her new bilingual duties, because this incident "was not specifically identified in the EEOC charge." (Doc. 159 at 8).

A "plaintiff's claims in federal court are generally limited to those that can reasonably be

7

expected to follow the charge of discrimination." *Denetclaw*, 287 Fed. Appx. at 21; Garcia's EEOC charge against the School Defendants states that she is

> being retaliated against for . . . filing a charge of discrimination with the [EEOC] in the terms, conditions and privileges of my employment. . . . Because my supervisor has received additional duties after filing an EEOC Charge of Discrimination I too have acquired additional duties without additional compensation. I am [also] being subjected to hostility and behavior [sic] from the Superintendent and the Board during staff meetings and open meetings with threats of termination[,] which makes it difficult to perform the duties as required.

(Doc. 159 Ex. 31). Garcia did not identify or describe any of the additional duties she had been assigned, provide any further elaboration as to the hostile behavior directed at her, or identify the person(s) who threatened to terminate her employment.[2] However, she indicated elsewhere on the form that the complained-of acts took place between June 15, 2009 and January 13, 2010. *Id.* Garcia also checked a box indicating that her administrative charge was based on "retaliation." *Id.*

The Court proceeds to consider each of the three allegedly retaliatory events referenced in the briefing on the instant motion. First, because Garcia's December 2007 transfer fell well outside the timeline during which the allegedly retaliatory acts occurred, the Court finds that Garcia may not rely on this incident to establish her retaliation claim for damages.

As for Garcia's contention that she was forced to assume new responsibilities with respect to the District's bilingual program, it is undisputed that her EEOC charge was timely filed within 300 days of this alleged alteration in her duties. However, it is equally plain that

---

[2]It appears from Garcia's brief that she has narrowed her retaliation claim to allege only that the School Defendants retaliated against her by assigning her new duties in December 2007, August 2009, and June 2010. Garcia does not argue anywhere in her response brief that the School Defendants retaliated against her by threatening to terminate her or otherwise subjecting her to hostility, as suggested by her EEOC charge.

Garcia presented the EEOC with no additional facts concerning this allegation beyond the general charge that she had "acquired additional duties without additional compensation" during the relevant time period.[3] (Doc. 159 Ex. 31). In order to establish that she has exhausted her administrative remedies, a Title VII plaintiff must show that her EEOC complaint "contains facts concerning the . . . retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged . . . retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation omitted). Moreover, the facts set forth in the EEOC charge "must be sufficiently related to the claim such that those facts would prompt an investigation of the claim." *See id.* (finding that plaintiff exhausted his retaliation claim where the text of the EEOC charge set forth the dates he was cleared by his physicians to return to work, which was sufficient to trigger an administrative investigation into his claim that employer "acted with a retaliatory motive when it did not permit him to return to work despite releases from two doctors."). Thus, the Court must consider whether Garcia's statement to the EEOC that she had been required to take on additional duties without additional compensation, taken in combination with her checking of the retaliation box, was sufficient to trigger an administrative investigation into the instant claim.

While the call is a close one, the Court construes the EEOC complaint liberally in finding

---

[3]Indeed, there appears to be no mention of Garcia's assuming new "bilingual" duties anywhere in the record until her deposition was taken in preparation for the instant motion. *See, e.g.,* Doc. 106 Am. Cplt. ¶ 106 (Garcia alleging, without setting forth a date, that after DeLong was replaced as Superintendent by Gonzales she was asked to "research grants for one hour daily" and serve as the "backup receptionist for 1.5 hours daily every other week"; and further noting that unspecified additional duties had been assigned to Martinez, her supervisor, "thereby requiring that Plaintiff Garcia perform additional duties.").

this aspect of Garcia's claim exhausted. The Tenth Circuit has repeatedly held that an EEOC claimant's "failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box," which can only be rebutted by setting forth sufficient facts in the narrative portion of the "charge of discrimination" form from which an administrative investigation into the claim could reasonably be expected to follow. *Jones,* 502 F.3d at 1186, citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998); *see also Gerald,* 2011 U.S. Dist. LEXIS 119688, at * 82 (presumption that the charging party is not asserting unchecked claim can only be rebutted "if the text of the charge clearly sets forth the basis of the claim"). Here, of course, the Court is presented with the reverse situation: a Plaintiff who checked the retaliation box on her EEOC charge, but who otherwise set forth only a general allegation regarding her claim that unspecified individuals retaliated against her by assigning her unspecified "additional duties without additional compensation."[4] However, the Court finds that, taken together, Garcia's checking of the retaliation box, statement that her retaliation charge was partly based on her assumption of new duties, and setting forth of the timeframe during which the complained-of conduct occurred would have sufficed to trigger an administrative investigation that would have recognized the alleged assignment of new "bilingual" duties to Garcia as a basis for her claim. The Court's finding is in keeping with the "more lenient pleading standard" employed by the Tenth Circuit in determining whether administrative remedies have been exhausted as to a particular claim, which "contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees

---

[4]The text of the charge clearly sets forth sufficient facts to trigger an inquiry into whether Superintendent Gonzales and the individual Board members retaliated against Garcia by threatening her with termination at Board meetings. However, Garcia does not assert such a claim in the instant suit.

10

who do not have the benefit of counsel." *Mitchell v. City and County of Denver*, 112 F. Appx. 662, 667 (10th Cir. 2004).

Finally, it is undisputed that Garcia failed to exhaust the portion of her retaliation claim which alleges that she was made to assume new "federal program" duties in June 2010. A Title VII plaintiff may not assert an unexhausted claim involving a discrete employment action under a "continuing violation" theory. *See Martinez v. Potter,* 347 F.3d 1208, 1210 (2003) (noting that Tenth Circuit has "unambiguously . . . reject[ed] application of the 'continuing violation' theory" since the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *see also Martinez*, 347 F.3d at 1210-11 (exhaustion requirement is applicable "to discrete claims based on incidents occurring after the filing of plaintiff's EEOC complaint"). However, a different rule applies where a Title VII plaintiff claims that she has been subjected to a " hostile work environment," pursuant to which "a series of events . . . are considered one unlawful action." *Obermeyer*, 760 F. Supp. 2d at 1247. Because a hostile environment claim by definition "involves repeated conduct," the challenged conduct "cannot be said to occur on any particular day, but rather occurs over a series of days or years." *Id.* (quotations omitted). "Thus, so long as one of the incidents included within the claim" was administratively exhausted, "conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred." *Id.* at 1247-48. "A series of alleged events comprises the same hostile environment where both [the incidents that were administratively exhausted and those that occurred after the EEOC charge was filed] involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Duncan v. Manager, Dept. of Safety, City & Co. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005), quoting *Nat'l Railroad,* 536 U.S. at 120.

Garcia does not argue that she is setting forth a hostile work environment claim. Moreover, there is no evidence in the record tending to show that her alleged assumption of "federal program" duties in June 2010 was part of an ongoing series of events comprising a hostile work environment. While the assignment of new "bilingual" duties and the assignment of new "federal program" duties are the same type of employment action, the alleged assignments did not take place frequently, or close in time – rather, they occurred almost one year apart. Further, there is no evidence in the record that the assignments were made by the same managers, because Garcia has failed to identify with particularity the manager(s) behind the latter incident. *See, e.g.*, Doc. 209 at 3 (Garcia's Proposed Undisputed Material Fact No. 6, which recites how "[i]n June of 2010, Plaintiff was assigned Federal Program duties," without setting forth the perpetrators of the decision). The Court thus concludes that Garcia's alleged assignment of new "federal program" duties in June 2010 was a discrete incident that was not administratively exhausted before the EEOC.

Accordingly, the Court will only consider whether Garcia has set forth a triable retaliation claim with respect to her alleged assignment of additional duties under the "bilingual" program in August 2009.

## II. Whether Garcia Sets Forth a Triable Retaliation Claim Under Title VII

"Title VII's anti-retaliation provision forbids an employer[5] from discriminating against an employee . . . because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Brown v.*

---

[5]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b).

*Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705, 711 (10th Cir.2012) (quotation and marks omitted). To state a prima facie case of discriminatory retaliation, a Title VII plaintiff must show "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[6] *Id.* It is undisputed that Garcia's filing of an EEOC charge was a protected activity within the meaning of Title VII retaliation law. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, Plaintiff engaged in protected activity.").

The disputed element is whether the assignment of additional bilingual duties to Garcia constitutes a materially adverse employment action. The Supreme Court has explained that "a [materially adverse] employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added). The Tenth Circuit determines whether an adverse employment action exists on a case-by-case basis after "examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). Thus, "an act by an employer that does more than *de minimis* harm to a plaintiff's future employment prospects can . . . be regarded as an adverse employment action, even where plaintiff does not show the act precluded a particular employment prospect." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004).

---

[6]Alternatively, a Title VII plaintiff can establish retaliation if she can "directly establish that retaliation played a motivating part in the employment decision." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). Garcia does not attempt to make such a showing here.

Under long-standing Tenth Circuit precedent, "supervisors and other employees may not be held personally liable under Title VII." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.9 (10th Cir. 2007). *See also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."). Thus, the individual School Defendants are entitled to summary judgment on the instant claim. Because Garcia contends that Superintendent Gonzales, as agent of Taos Schools, perpetrated the alleged adverse employment action, (Doc. 209 Ex. 1 at 5), the Court must determine whether the District, acting through Gonzales, retaliated against her by assigning her new bilingual duties.

At her deposition, Garcia testified that she has at all times, both before and after the addition of bilingual data-entry duties to her workload, worked 37.5 hours per week. (Doc. 159 Ex. 2, Garcia Dep. at 14:10-14:12). The difference appears to be in how those hours are apportioned. Garcia testified that "right before reporting [State] periods," which happen an unspecified number of times each school year, she typically spends "I don't know, 35 percent of my time" on bilingual duties. *Id*. at 14:17-14:25. *See also* 21:12-21:17 (Garcia testifying that since she and Martinez assumed bilingual duties, "we are not doing as much curriculum as we were. . . . We are not spending as much time on instruction as we were previously."). She further explained that her bilingual work "drops off" between reporting periods, so that in a typical workweek "about an hour" or "an hour and a half" of her time is spent on bilingual duties. *Id.* at 14:25-15:12.

The above evidence is partly contradicted by an unsworn declaration attached to Garcia's response, in which she alleges for the first time that her additional bilingual duties "resulted in approximately 35% additional time <u>beyond a regular workload</u> of 37.5 hours per week (100%)

14

making the total time 135% or an approximately 13 additional hours per week." (Doc. 209 Ex.1, Garcia Unsworn Decl. ¶ 18) (emphasis added). Garcia does not attempt to explain why she previously denied that her assignment of bilingual duties required her to work overtime, and instead testified that she spent 35% of her normal 37.5-hour workweek on bilingual duties during reporting periods only. Further, Garcia's declaration is silent as to whether she works the additional 13 hours every week or only during reporting periods.

   Garcia fails to set forth evidence tending to show that she has suffered a materially adverse employment action. Without weighing her contradictory accounts as to the amount of overtime her bilingual duties require, the Court finds that there is no evidence that she has suffered a significant alteration in her responsibilities. Rather, the evidence from Garcia's deposition – uncontradicted by her new declaration – suggests that her additional bilingual responsibilities only occupy a significant amount of her time during "reporting periods." However, Garcia makes no attempt to show how many reporting periods there are in a school year. In the absence of any evidence as to how frequently such reporting periods occur, a reasonable factfinder would have no basis to conclude that her assumption of bilingual duties have had more than a *de minimis* impact on Garcia. *See Aquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001). Thus, taking the declaration as true, the Court finds that Garcia has nevertheless failed to state a triable claim against the District.

   Moreover, even if the Court concluded that Garcia's new declaration is so ambiguous as to potentially create a question of fact as to how often reporting periods occur, the declaration is so squarely at odds with Garcia's previous testimony that the Court finds it must be disregarded. It is the long-standing precedent of this Circuit that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*,

15

796 F.2d 1230, 1237 (10th Cir. 1986).  While a subsequent contrary affidavit "will not be automatically excluded because it conflicts" with the affiant's earlier testimony, it can only be used to defeat summary judgment "if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony."  *Burns v. Bd. of County Commissioners*, 330 F.3d 1275, 1282 (10th Cir. 2003).

> Factors to be considered in determining whether an affidavit presents a sham issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Id.* (quotation omitted).  Here, Garcia cannot satisfy any of the *Burns* factors.  Her testimony that she has at all times worked 37.5 hours per week was made at her deposition by the School Defendants' counsel, at which she was represented by her own counsel; Garcia would have of course been aware of her hours worked at the time of the deposition; and there is no suggestion in her declaration that the earlier testimony was given in confusion or under duress -- indeed, Garcia makes no attempt to explain the discrepancy at all.  Accordingly, the Court finds that Garcia's declaration should be disregarded as an attempt to create a sham issue for trial.

Thus, whether her subsequent contradictory affidavit is considered or disregarded, the Court finds that Garcia has failed to show that the addition of "bilingual" duties have added so significantly to her weekly hours as to constitute an adverse employment action.  Moreover, Garcia offers no evidence that the various data-entry projects she performs in order to fulfill her new duties constitute, in and of themselves, a significant or onerous change in her responsibilities.  Further, while Garcia asserts in conclusory fashion that then-acting Superintendent Gonzales was the perpetrator of the alleged adverse employment action, she fails

to provide evidence in specific, factual form.  Garcia cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) (internal quotation and marks omitted).

Because Garcia has not set forth evidence that her assumption of additional duties under Taos Schools' bilingual program constitutes a materially adverse employment action, the Court finds that the District is entitled to summary judgment on her sole remaining count for retaliation.

### III. Whether Garcia Sets Forth a Triable Retaliation Claim Under the New Mexico Human Rights Act

The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ("NMHRA"), are "actually identical" to the requirements set forth by Title VII. *See, e.g., Gioia v. Pinkerton's Inc.,* 194 F.Supp.2d 1207, 1220 (D.N.M. 2002).  Thus, the Court finds that the School Defendants are also entitled to summary judgment on Garcia's claim for retaliation under the NMHRA.

### CONCLUSION

Therefore, for the reasons set forth above, the Court finds that the School Defendants' *Motion for Summary Judgment and Memorandum in Support of Motion on Claims Brought by Plaintiff Garcia* (Doc. 159) is **GRANTED.**

_____
UNITED STATES DISTRICT COURT JUDGE