## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

       Plaintiffs,

v.                                                          No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

       Defendants.


## MEMORANDUM OPINION AND ORDER

     This matter comes before the Court on Defendants Taos Board of Education, Taos

Municipal School District's ("Taos Schools'" or "the District's"), Arsenio Cordova's, Lorraine

Coca-Ruiz', Stella Gallegos', and Roberto J. Gonzales' (collectively, "the School Defendants'")

*Motion for Summary Judgment and Memorandum in Support of Motion on Claims Brought by*

*Plaintiff Livingston* (Doc. 160).  Jeanelle S. Livingston, one of eleven Plaintiffs in the underlying

suit, accuses the School Defendants of (I) retaliation in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2005e-5(f), et seq., and (II) the New Mexico Human Rights Act, 28-1-1

N.M.S.A. (1996); (III) breach of contract ; (IV) breach of the covenant of good faith and fair

dealing; and (V) procedural due process violations under the Fourteenth Amendment and 42

U.S.C. § 1983.  The Court having considered the motion, briefs, exhibits, and relevant law, and

being otherwise fully informed, finds that the School Defendants' motion should be **granted.**


## FACTUAL BACKGROUND

Many of the "facts" asserted by the parties are conclusory allegations; summaries of the

opposing party's contentions; are not later offered in support of that party's claims or defenses;

or are not supported by correct citations to the record.  The Court considers only those facts

which are plainly relevant to the determination of whether a genuine dispute exists as to the

claims in issue.

### Livingston's February 2009 Contract

At the time of the events in issue, Livingston was the Exceptional Programs Coordinator

for Taos Schools in Taos, New Mexico. On February 20, 2009, Livingston entered into a two-

year contract with the District to continue as Exceptional Programs Coordinator.  The contract

was executed on behalf of the District by then-Superintendent Loretta DeLong.  Livingston's

contract provided that, beginning in the upcoming 2009-2010 school year, Livingston would

earn a salary of $68,504, "[s]ubject to the provisions of the applicable approved budget. . . .  In

the event that the Administrator is employed on a two (2) year contract, [it] will be amended in

the first and second year to reflect any appropriate district salary adjustment factors." (Doc. 160

Ex. 3 ¶ 8).  The contract further provided that it could be cancelled by Taos Schools'

Superintendent in the event of insufficient appropriations by the State legislature.  It is

undisputed that Taos Schools' 2009-2010 budget had yet to be adopted at the time Livingston entered into the contract.

**Budget Cuts Are Discussed**

Over the rest of the 2008-2009 school year, Livingston attended three or four meetings of the Administrative Council – a group comprised of Taos Schools' administrators and school board members – at which the need for budget cuts were discussed. Under one proposal, certain administrative positions would be eliminated outright. Another proposal called for the existing administrators' salaries to be reduced. Livingston does not dispute that a potential 2.1% salary reduction was discussed at these meetings, and that she was aware that such a reduction might apply to her.

**Livingston's First EEOC Complaint, Which Did Not Result in a Lawsuit**

On May 29, 2009, Livingston filed a complaint against Taos Schools and Cordova with the Equal Employment Opportunity Commission ("EEOC"), accusing Cordova of acts of race- and gender discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964. The narrative portion of the EEOC charge specifically identified ten incidents of allegedly discriminatory conduct.

On October 9, 2009, the EEOC issued a Right to Sue letter to Livingston regarding her complaint. It is undisputed that Livingston did not exercise her right to sue within 90 days of receipt of the letter.

**Livingston Announces Retirement From the District in June 2009**

On June 16, 2009, Livingston wrote a letter to DeLong's successor, Acting Superintendent Roberto Gonzales, providing notice of her intended retirement from the District, effective July 31, 2009. Gonzales acknowledged and accepted the notice by letter the next day,

3

June 17, 2009.

At her deposition, Livingston testified that she further informed Gonzales in person that she was leaving the District because she had been "working in an extremely hostile environment," had been discriminated against on account of "my gender [and] my race," and had been experiencing "continual retaliation" after filing an EEOC charge "with a group of other women."  (Doc. 225 Ex.1, Livingston Dep. at 50:12-50:16).  Specifically, Livingston alleges that she told Gonzales about her "unfortunate relationship with board members," her "concern over the recent submission and lack of response to IDEAS' report,"[1] and her fear about working "in a building where they were abating asbestos for almost a month and a half."  *Id.* at 50:23-51:3. The School Defendants deny Livingston's account as it relates to the "asbestos abatement" project described by Livingston, which they contend did not begin until after she announced her retirement.  *See infra* at 5.

**Livingston's Pay is Reduced By 2.1% in Her Final Month of Employment**

The first pay period of the 2009-2010 school year ended on July 3, 2009.  On July 6, 2009, Livingston issued a memo to Gonzales in which she complained that her first paycheck reflected a 2.1% decrease in pay, and imploring him to restore the deducted salary to her next paycheck.

**Livingston Expresses Concern About Environmental Safety in Workplace**

---

[1]This is an apparent reference to one of several reports issued by IDEAS Business Technology Integration, LLC ("IDEAS") --a consulting business hired by Taos Schools to perform a quality-assurance audit of the District and one of the other Defendants in this case – during Spring and Summer 2009.  While IDEAS apparently mentioned Livingston and/or her Exceptional Programs department in more than one of its reports, (Doc. 160 Ex. 5), Livingston only proffers specific facts related to a charge against her which appeared in IDEAS' August 2009 Report.  *See infra* at 5; Doc. 225 at 5 (Plaintiff's Proposed Undisputed Fact No. 13).

On July 22, 2009, Livingston wrote a memo to Gonzales noting that "asbestos abatement has begun and is in process at this time in Taos Elementary Building," where the Exceptional Programs offices were located.  (Doc. 237 Ex. 3).  Livingston described how her workspace had "been 'sealed' off from the abatement site with a plastic barrier," and how "on several occasions this week and last, I or Sandra Vigil have found the plastic separated from the wall."  *Id.* Livingston noted that the workers had corrected the situation each time the plastic separated, but stated that she "remain[ed] concerned about the safety of the Exceptional Programs staff during this process."  *Id.*  The memo further described how she and her staff had been were "asked to leave the site for several days this month," while the abatement process took place in the offices. *Id.*

### The IDEAS Report

On August 26, 2009, IDEAS issued a Report that named Livingston in connection with a possible forgery.  Specifically, IDEAS claimed that a controversy existed regarding the actual date(s) that then-Superintendent Loretta DeLong entered into employment contracts with Livingston and several of the other Plaintiffs.  In a section detailing the District's contracting process, the Report initially stated that "[i]n February 2009, contracts for administrators . . . were signed by then Superintendent Loretta DeLong."  (Doc. 170 Ex. E at 64); *see also* Doc. 211 Ex.1, IDEAS' May 19, 2009 "Preliminary Report on Findings' Regarding Administrators' Contracts" (stating that the personnel files of several Plaintiffs contained "two[-]year employment contracts signed by Dr. DeLong prior to her suspension in February").

One paragraph below, however, IDEAS recited how Information Technology experts had discovered information tending to cast doubt on the date the contracts were "purportedly signed":

> IDEAS requested and received an electronic copy of the template purportedly
> used to create the February 2009 contracts.  The document was imbedded in an
> email, but when it was extracted intact, our IT experts were able to read the
> creation date of the template as March 18, 2009, almost a full month after they
> were purportedly signed.  This information has been placed in the hands of [Taos
> Schools'] legal counsel.

(Doc. 170 Ex. E at 65).  The Report went on to list each of the Plaintiffs, including Livingston,

by name, and identify them as a parties to the disputed contracts.  *Id.*

**Livingston's Second EEOC Complaint, Which Resulted in a Lawsuit**

On January 14, 2010, Livingston filed a second EEOC action against Taos Schools,

accusing the District of retaliating against her for filing her previous EEOC complaint:

> Since filing with the EEOC, I have been subjected to hostile behavior by certain
> members of the School Board and the Interim Superintendent.  My duties were
> severely compromised by an audit that was supported by and submitted to the
> Board in a[n] open meeting without presenting accurate documentation or facts to
> substantiate the audit findings.  I was forced to resign due to the continual lack of
> support and hostility demonstrated by some members of the School Board and
> interference in the daily execution of my daily responsibilities and assignments.
> In July 2009, I received a 2.1% pay decrease reflected in my last paychecks and
> no separation pay (sick leave compensation).

(Doc. 160 Ex. 2).

On January 27, 2010, the EEOC issued a Right to Sue letter to Livingston.

**Career Since Leaving Taos Schools**

After her retirement from Taos Schools, Livingston went to work for Penasco School

District for the 2009-1010 school year, at a salary of $73,400.  She continues to work for the

Penasco District, and has received one raise in salary since she began working there.

## LEGAL STANDARD

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be

rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 243.

**DISCUSSION**

I. Livingston's Retaliation Claim **Under Title VII**

"Title VII's anti-retaliation provision forbids an employer[2] from discriminating against an employee . . . because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Brown v. Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705, 711 (10th Cir.2012) (quotation omitted). Under long-standing Tenth Circuit precedent, "supervisors and other employees may not be held personally liable under Title VII." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.9 (10th Cir. 2007). *See also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."). Thus, the individual School Defendants – Coca-Ruiz, Cordova, Gallegos, and Gonzales – are entitled to summary judgment on the instant claim. Accordingly, the Court will consider whether Livingston has set forth a triable claim that Taos Schools, acting through its agents, the individual School Defendants, retaliated against her for filing an EEOC complaint in violation of Title VII.

**A. The Applicable Standard: the *McDonnell Douglas* Test**

Where, as here, there is no direct evidence of retaliation, a Title VII plaintiff's retaliation claim is analyzed under the burden-shifting framework employed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory

---

[2]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b).

reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons for the allegedly discriminatory actions are merely a pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

**B.  Livingston's Prima Facie Case**

As noted above, in order to satisfy the first prong of the *McDonnell Douglas* analysis, Livingston must be able to establish a prima facie case of retaliation.  Livingston can meet her burden by showing "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Id.*

**1.  Protected Activity**

It is undisputed that Livingston's filing of an EEOC charge was a protected activity within the meaning of Title VII retaliation law.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, plaintiff engaged in protected activity.").

**2.  Materially Adverse Employment Actions**

Livingston contends that Taos Schools allegedly caused her to suffer three materially adverse employment actions: (1) the 2.1% pay reduction applied to her salary prior to the commencement of the 2009-2010 school year, (2) her "constructive discharge" from her position, and (3) the publication of the allegedly defamatory IDEAS Reports.

***Livingston's salary reduction***

The District concedes that the 2.1% pay reduction qualifies as an adverse employment

action.  *See Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) ("[a]n

adverse employment action includes acts that constitute a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits") (internal quotation

omitted).  Thus, the Court need only consider Livingston's allegations relating to her

constructive discharge and the IDEAS Reports.

### No evidence of constructive discharge

The "bar is quite high" for establishing a constructive discharge under New Mexico law.

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)**.**  "An employee must

allege facts sufficient to find that the employer made working conditions so intolerable, when

viewed objectively, that a reasonable person would be compelled to resign."  *Barber v. Lovelace*

*Sandia Health Systems*, 409 F. Supp. 2d 1313, 1330 (D.N.M. 2005), quoting *Gormley v.*

*Coca-Cola Enters.*, 137 N.M. 192, 195 (2005).  "Essentially, a plaintiff must show that she had

no other choice but to quit." *Gormley,* 137 N.M. at 195, quoting *Yearous v. Niobrara County*

*Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).

There is no evidence in the record from which a reasonable factfinder could conclude that

Livingston felt she had no choice but to resign.  In support of her claim, Livingston makes

several assertions, but does not support them with citations to the record, let alone attempt to

argue how they constitute constructive discharge under the governing law.  *See, e.g.,* Doc. 225 at

10 ("Defendants created an emotional and mental distress, alienation, public embarrassment,

humiliation, caused depression and anxiety"); (Livingston "was subject to a hostile work

environment at Board meetings when Cordova, Coca-Ruiz and Gallegos would turn their backs

on her when she was making a [ ] report"); ("Gonzales suggested that Livingston drop her EEOC

complaint to reduce her stress.  These actions constitute constructive discharge.").  The only aspect of Livingston's argument which appears to be linked to her own proposed facts – her contention that she "was forced to work in a building undergoing asbestos remediation for one and one-half months immediately prior to her resignation," *id.* – is not supported by evidence in the record, which appears to indicate that Livingston gave her notice before the project commenced.  *See* Doc. 160 Ex. 5 (Livingston announcing her intent to resign on June 16, 2009); Doc.  237 Ex. 3 (Livingston's  July 22, 2009 memo noting that "asbestos abatement has begun," that "on several occasions this week and last" a protective plastic covering that kept her workspace secure became separated from the wall," and that Livingston and her staff had been "asked to leave the site for several days this month").

Livingston cannot avoid summary judgment by repeating allegations unsupported by specific facts.  *See West,* U.S. Dist. LEXIS 131626, at *42.  Accordingly, the District will also be granted summary judgment on this aspect of her retaliation claim.

### No evidence that the IDEAS Report was an adverse action

The District argues that Livingston has not shown how the IDEAS Report constituted a significant change in her employment status. The Court agrees.  While Livingston proposes facts relating to the Report's suggestion that she and her Co-Plaintiffs backdated their February 2009 contracts, she does not argue, let alone proffer evidence, that this accusation itself constituted, or resulted in, a significant change in her employment status.  Instead, Livingston's response attempts to rely on – but fails to identify by correct citation to the record – another statement from an IDEAS Report, which she summarizes as reciting that

Students are not receiving appropriate educational services.

Communication is abysmal.  Lack of communication between staff, including

11

Plaintiff Livingston, as Coordinator of Exceptional Programs

Quality of staff is extremely variable

Staff was rude, non-communicative to parents.[3]

(Doc. 225 at 13).  Livingston's vague summary of certain alleged representations in the Reports, untethered to any specific factual support, is plainly insufficient to show an adverse action. Equally important, Livingston makes no attempt to show how the District is liable for any adverse action she suffered as a result of the Reports' publication, when the Reports were indisputably prepared and published by IDEAS.  In her only comment addressing the District's purported liability for the Reports' contents, Livingston merely suggests that the School Defendants "cannot have its agents defame an employee, publish that defamation online, . . . and than claim that the defamatory Report is not retaliation."  *Id*.  However, Livingston sets forth no evidence of an agency relationship between the parties.

Thus, the only adverse employment action set forth by Livingston relates to her 2.1% salary reduction.

### 3.  Causal Connection

Finally, in order to withstand summary judgment, Livingston must offer evidence of a causal connection between her filing an EEOC complaint and the adverse action she allegedly suffered as a consequence – in this case, her 2.1% reduction in salary.  Here, however, the District does not attempt to show the absence of a causal connection between the incidents.  The

---

[3]Livingston cites her response to one of the School Defendants' Interrogatories, which she attaches to her brief, as support for her summary.  The response at issue merely provides the same summary, and does not identify where in the several Reports published by IDEAS the challenged statements appear.  (Doc. 225 Ex. 6 at 14).

Court therefore treats Livingston's prima facie claim as established for purposes of the instant motion.

**C.  The District's Legitimate, Nondiscriminatory Reason for the Adverse Employment Action and Livingston's Attempt to Show Pretext**

The District proffers a facially nondiscriminatory reason for reducing Livingston's salary for the 2009-2010 school year – that "the school district, much like the nation as a whole, was experiencing budgetary issues that were addressed by imposition" of the reduction.  (Doc. 160 at 5).  To defeat the instant motion, Livingston must set forth evidence from which a reasonable jury could conclude that the proffered reason is pretextual.  *See Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) ("to establish a genuine issue as to pretext, [plaintiff] must demonstrate that [defendant's] proffered non-discriminatory reason is unworthy of belief") (quotation omitted).  Livingston "can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the District's proffered justification for reducing her salary "that a reasonable factfinder could rationally find [it] unworthy of credence." *Pinkerton,* 563 F.3d at 1065 (internal quotation marks and further citations omitted).

As evidence of pretext, Livingston states that the District "hired additional personnel" for the 2009-2010 school year, "added $180,000 to the budget for employees and cut about $10,000 by the 2.1% reduction." (Doc. 225 at 11).  It appears that Livingston means to allege that the salary reduction applied to her and other Plaintiffs saved the District only $10,000, yet the district added $180,000 to the budget for hiring new employees.  (It is unclear for what positions these new employees were hired).  Livingston further contends that other administrators who are not Plaintiffs in the instant case – she does identify who – "actually received raises in the form of

increments to their pay." *Id.*

Livingston's assertions, if supported by specific facts, would provide sufficient evidence of pretext to withstand summary judgment.  However, Livingston fails to identify by correct citation any evidence in the record that supports what are otherwise conclusory accusations.  Rather, she appears to rely for support on the fact that one of her Co-Plaintiffs has made a similar accusation.  *Id.* (citing *Fact No. 4 to McCann Response to [Taos Schools'] Motion for Summary Judgment).*  Livingston's response is not only insufficient to withstand summary judgment, it fails to abide by the Rules of this Court.  *See* D.N.M.L.R.-Civ. 7.1 ("A party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper.").

Accordingly, because Livingston has not set forth sufficient evidence of pretext to set forth a triable retaliation claim, the Court finds that summary judgment should be granted to the District as to her Title VII retaliation claim.

## II.      **Livingston's Retaliation Claim Under the NM Human Rights Act**

The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ("NMHRA"), are "actually identical" to the requirements set forth by Title VII. *See, e.g., Gioia v. Pinkerton's Inc.,* 194 F.Supp.2d 1207, 1220 (D.N.M. 2002).  Thus, for the reasons set forth above, the Court finds that the School Defendants are also entitled to summary judgment on Livingston's claim for retaliation under the NMHRA.

## III.     **Breach of Contract**

Next, the School Defendants seek summary judgment on Livingston's claim that the

14

District's reduction of her salary by 2.1% of the figure set forth in her February 2009 contract constitutes a breach of that contract.  Under New Mexico law, "[a] contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions." *LensCrafters, Inc. v. Kehoe*, 2012 N.M. LEXIS 243, at *12 (N.M., June 14, 2012).  "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent."  *Id.*; *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704 (1993) ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive") (quotation omitted).

Livingston's February 20, 2009 contract provided that she would earn $68,504 for the upcoming 2009-2010 school year, "[s]ubject to the provisions of the applicable approved budget. . . . . In the event that the Administrator is employed on a two (2) year contract, [it] will be amended in the first and second year to reflect any appropriate district salary adjustment factors."  (Doc. 160 Ex. 3 ¶ 8).  The contract further provided that it could "be cancelled by the Superintendent for cause not personal to the Administrator when a reduction in personnel is required as a result of . . . insufficient legislative appropriation or authorization being made by the state and/or federal government for the performance of this contract."  *Id.* ¶ 4.  A 2.1% reduction in Livingston's salary was reflected in her first paycheck for the 2009-2010 school year.  (Doc. 160 Ex.5).

The School Defendants argue that the contract unambiguously expresses that the salary promised therein was subject to adjustment for budgetary reasons.  As evidence that there is no dispute that the reduction occurred for such reasons, they proffer multiple Plaintiffs' deposition testimony that the possibility of a 2.1 % salary decrease had been repeatedly discussed at

meetings of the Board in Spring 2009, as an alternative to eliminating certain Administrators' positions outright. *See, e.g.* Doc. 160 Ex. 3, Livingston Dep. at 53:4-54:22; *Id.*, Ex. 4 Collins Dep. at 203:12-203:25.

In response, Livingston states only that her "contract had no provision allowing the Superintendent to lower the salary." (Doc. 225 at 19). She does not, however, address the provision that explicitly excused the District from paying the salary set forth therein if "the applicable approved budget" did not allow for it. This argument is insufficient to create a genuine dispute as to whether her contract was breached.

Accordingly, the Court finds that the School Defendants should be granted summary judgment on Livingston's claim for breach of contract.

**IV.     Breach of the Covenant of Good Faith and Fair Dealing**

"Under New Mexico law, 'every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.'" *Mt. Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010), quoting *Sanders v. FedEx Ground Package Sys., Inc*., 144 N.M. 449, 452 (N.M. 2008). Livingston asserts that the School Defendants breached the covenant by demanding that she sign an affidavit. However, the nature of the affidavit and the context in which Livingston's signature was allegedly demanded do not appear to be set forth anywhere in the record. *See, e.g.*, Doc. 106 Am. Cplt. ¶¶ 310-316 (alleging that covenant had been breached in various ways not mentioned by Livingston in defending the instant motion, as well as "by demanding an affidavit from Plaintiffs"). Further, it is unclear from the briefing which of the School Defendants Livingston alleges breached the covenant, or whether she means to accuse all of them.

16

Indeed, both parties' arguments as to Livingston's breach-of-covenant claim are so vague as to be practically indecipherable.  In support of their motion, the School Defendants summarize some of the points they offer in support of summary judgment on Livingston's breach of *contract* claim, without attempting to explain how these facts likewise support their motion on the breach-of-covenant claim: "[T]here was no breach of contract because Plaintiff was not terminated . . ., and the 2.1% reduction was . . . necessary because of the well-known dire financial difficulties the district faced and was applied across the board."  (Doc. 237 at 10). With respect to the breach-of-covenant claim specifically, the School Defendants state only that their "arguments addressing this issue are hereby adopted from the reply to School Defendants' motion for summary judgment on the complaint filed by Plaintiff Trujillo," which they make no attempt to designate by correct citation, as required by the rules of this Court.  *Id.*; *see* D.N.M.L.R.-Civ. 7.1.  The Court will not perform the work of counsel by combing through the record in an effort to set forth and support the parties' arguments for them.

Livingston's response is no less obscure. In support of her claim, she contends only that the School Defendants' "actions in demanding an affidavit when there was no intent to comply with the agreement were designed to cheat [Livingston] out of her contractual rights and hence a violation of the covenant of good faith and fair dealing."  (Doc. 225 at 20).  However, Livingston does not propose any material facts describing how any individual(s) demanded that she sign any affidavit; neither does she identify any agreement or explain how the School Defendants failed to comply with it.  Rather, the remainder of her argument is devoted to reproducing sizable excerpts from two New Mexico cases in support of the principle that, in this State, a claim for violation of the covenant of good faith and fear dealing is "valid in the public employment

context if the employee was not at will,"[4] without any discussion of how the underlying facts of this case support a breach-of-covenant claim.

The Court finds that summary judgment should be granted to the School Defendants on this claim.  There does not appear to be any evidence in the record that the implied covenant was breached; indeed, Livingston has not even articulated a coherent theory of *how* the covenant was breached.  Accordingly, the Court concludes that there is no genuine issue for trial as to this claim.

## V.  Livingston's Procedural Due Process Claim under 42 U.S.C. § 1983

Next, Livingston claims that the School Defendants violated her Fourteenth Amendment procedural due process rights[5] when they deprived her of her property interest in (A.) the salary set forth in her 2009-2011 contract and (B.) her continued employment at Taos Schools, which ended when she was "constructively discharged" by the District.  Procedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  There are two elements of a Section 1983 claim for deprivation of procedural due process.  The plaintiff must establish that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide due process

---

[4]*Id.,* quoting *Henning v. Rounds,* 142 N.M. 803, 808-809 (N.M. App. 2007), and *Planning and Design Solutions v. City of Santa Fe*, 118 N.M. 707 (N.M. 1994).

[5]Livingston has withdrawn her additional claim for Fourteenth Amendment due process violation of a protected liberty interest.  (Doc. 225 at 13).

of law."  *See Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ.*, 587 F.3d

176, 194 (3d Cir. 2009).[6]

## A.  Livingston's 2.1% Salary Reduction

The School Defendants contend that Livingston cannot show that she had a protected

property interest in the salary provided in her February 2009 contract, in light of the language in

the contract that Livingston would earn the stated salary, "[s]ubject to the provisions of the

applicable approved budget" and the evidence that the budget was not yet approved at the time

of the contract.  (Doc. 160 Ex. 3 ¶ 8).  "Property interests are not created by the Constitution, but

rather by independent sources such as state law."  *Copelin-Brown v. N.M. State Pers. Office*, 399

F.3d 1248, 1254 (10th Cir. 2005).  "Thus, constitutionally protected property interests are created

and defined by statute, ordinance, **contract**, implied contract and rules and understandings

developed by state officials." *Hulen v. Yates,* 322 F.3d 1229, 1240 (10th Cir. 2003) (per curiam)

(emphasis added).

Here, Livingston's contract expressly provided that her salary was "subject to the

provisions of the applicable approved budget."  It is undisputed that the budget for the 2009-

2010 school year was not yet finalized at the time Livingston entered the contract, but that it was

---

[6]The School Defendants argue for the first time in their reply brief that Livingston cannot
establish a due process violation because the "statutory due process rights afforded other school
employees are specifically excepted from licensed administrator employees" under the New
Mexico School Personnel Act § 22-10A-26 (B), NMSA 1978.  (Doc. 237 at 8).  The Court will
not consider any argument, even a potentially meritorious one, raised for the first time in a reply
brief.  *See Plant Oil Powered Diesel Fuel Sys. v. ExxonMobil Corp.*, 2012 U.S. Dist. LEXIS
47274, *42 (D.N.M., Mar. 22, 2012) ("The inequity of a court considering arguments and issues
that were raised for the first time in a reply brief should be apparent, because the respondent will
not have had an opportunity to respond to the new arguments.") (quotation omitted); *see also
United States v. Lewis*, 594 F.3d 1270, 1285 (10th Cir. 2010) (a party "may not hold [a] specific .
. . [argument] in reserve until it is too late for the [other side] to respond.").

finalized prior to the institution of the reduction, which was reflected in her first paycheck of the 2009-2010 school year.  In the absence of any evidence that the 2.1% administrator-salary reduction was implemented for reasons other than budgetary limitations, the Court concludes that Livingston has not shown that she had a legitimate expectation of earning the salary set forth in her February 2009 contract for the 2009-2010 school year. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *see also Piekutowski v. Twp. of Plains*, 2006 U.S. Dist. LEXIS 82012, *15 (M.D. Pa., Nov. 9, 2006) (no protected property interest where "there was nothing in the [contract] that limited defendants' ability to change the health insurance plan . . .  for cause").

**B.  Livingston's Alleged Constructive Discharge**

The School Defendants argue that summary judgment should be granted as to the remainder of Livingston's procedural due process claim because she cannot establish a Fourteenth Amendment violation based upon "constructive discharge."  As discussed above, there is no evidence in the record from which a reasonable jury could conclude that Livingston was constructively discharged by the District.  Therefore, the Court need not reach the issue of whether Livingston was afforded due process when she did not receive an adversarial post-termination hearing after she voluntarily resigned from Taos Schools.

In light of the above findings, the court grants summary judgment as to Livingston's procedural due process claim because Livingston has failed to show that she was deprived of a property interest that is protected by the Fourteenth Amendment.

**C. Livingston's Purported Conspiracy Claim**

20

In the same section of their brief devoted to Livingston's procedural due process claim, the School Defendants argue that summary judgment should be granted against her on her "related conspiracy claim." (Doc. 160 at 13). Livingston does not set forth a separate cause of action alleging that the School Defendants engaged in a civil conspiracy against her, and the School Defendants note that she "does not specify whether she brings her conspiracy theory under New Mexico state law, federal law, or both." *Id.* It appears that this portion of the School Defendants' motion is based on the following language in the Amended Complaint:

> Defendants Arsenio Cordova, Lorraine Coca-Ruiz, Stella Gallegos, acting through and in conspiracy with Defendant Roberto J. Gonzales and Defendant Peter Baston conspired on behalf of Defendant [Taos] School[s] in violation of 42 U.S.C. § 1983 to violate Plaintffs' due process rights and as such are liable for punitive damages.

(Doc. 106 Am. Cplt. ¶ 309). In her response, Livingston clarifies her contention that the School Defendants conspired "to deny her due process [along] with Baston and IDEAS."[7] (Doc. 225 at 16). She asserts in conclusory fashion that

> The timing of [the School] Defendants' acts in hiring Baston and the nature of the IDEAS Report which denigrates each of the Plaintiffs, mentions their EEOC charge negatively, and identifies the 2.1% pay cut are sufficient to infer a conspiracy between Baston, IDEAS and Gonzales for [Taos Schools] against [Livingston].

*Id.* Livingston does not, however, set forth any specific evidence in support of what appears to be her theory that her due process rights were violated by the IDEAS Defendants' publication of several reports detailing their findings in the Spring and Summer of 2009. Neither does she identify a protected property interest or explain what level of process she was due or how it was denied by the alleged conspiracy. Thus, because Livingston has not set forth a triable claim for

---

[7]Baston and IDEAS are not parties to the instant motion, and have moved for summary judgment on the only claim still pending against them, for defamation.

violation of her procedural due process rights, her related claim for conspiracy to commit a due process violation necessarily fails.

**D.  The School Defendants' Argument as to Entity Liability**

Because the School Defendants are entitled to summary judgment on the merits of all Livingston's claims, the Court need not reach their additional argument that Livingston has failed to establish Taos Schools' entity liability on those of her claims brought under 42 U.S.C. § 1983.  *See Monell v. Dept. of Soc. Servs. of City of NY*, 436 U.S. 658, 691 (1978) (in order to show liability of municipality or state entity, plaintiff must prove that alleged unconstitutional and/or illegal act was inflicted by an employee of the entity pursuant to official policy or custom).

<u>**CONCLUSION**</u>

Therefore, for the reasons set forth above, the Court finds that the School Defendants' *Motion for Summary Judgment and Memorandum in Support of Motion on Claims Brought by Plaintiff Livingston* (Doc. 160) is **GRANTED.**

UNITED STATES DISTRICT COURT