**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

        Plaintiffs,

v.                                   No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court on Defendants Taos Board of Education, Taos

Municipal School District's ("Taos Schools'" or "the District's"), Arsenio Cordova's, Lorraine

Coca-Ruiz', Stella Gallegos', and Roberto J. Gonzales' (collectively, "the School Defendants'")

*Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on*

*Complaint by Maria Chavez-Medina* (Doc. 181).  Maria Chavez-Medina, one of eleven Plaintiffs

in the underlying suit, accuses the School Defendants of (I) retaliation in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2005e-5(f), et seq., and (II) the New Mexico Human

Rights Act, 28-1-1 N.M.S.A. (1996); (III) breach of contract; (IV) breach of the covenant of

good faith and fair dealing; and (V) procedural due process violations under the Fourteenth

Amendment and 42 U.S.C. § 1983.  The Court having considered the motion, briefs, exhibits,

and relevant law, and being otherwise fully informed, finds that the School Defendants' motion

should be **GRANTED.**


### FACTUAL BACKGROUND

Many of the "facts" asserted by the parties are conclusory allegations; summaries of the

opposing party's contentions; are not later offered in support of that party's claims or defenses;

or are not supported by correct citations to the record.  The Court considers only those facts

which are plainly relevant to the determination of whether a genuine dispute exists as to the

claims in issue.

#### Chavez-Medina Enters Into Two-Year Contract with the District

At the time the events in issue commenced, Plaintiff Maria Chavez-Medina was the

longtime Health Services Coordinator for Taos Schools in Taos, NM.  In early 2009, Chavez-

Medina entered into a two-year contract to continue with the District for the 2009-2011 school-

year period.  The contract was executed on behalf of the District by then-Superintendent Loretta

DeLong. The contract provided that Chavez-Medina would earn a salary of $60,200 "[s]ubject to

the provisions of the applicable approved budget. . . . In the event that the Administrator is

employed on a two (2) year contract, [it] will be amended in the first and second year to reflect

any appropriate district salary adjustment factors." (Doc. 227 Ex. R ¶ 8). The contract further

provided that it could be cancelled by Taos Schools' Superintendent in the event of insufficient

appropriations by the State legislature.  Chavez-Medina does not specifically dispute that Taos

Schools' 2009-2010 budget had yet to be adopted at the time she entered into the contract.

The parties dispute the date the contract was entered.  While Chavez-Medina asserts that the contract accurately states that it was signed by both Chavez-Medina and DeLong on February 20, 2009, the School Defendants contend that it could have been signed by the former at a later date, and made to look as if it was signed on February 20, 2009.

**Chavez-Medina's First EEOC Complaint, Which Did Not Result in a Lawsuit**

On May 28, 2009, Chavez-Medina filed a complaint against Taos Schools with the Equal Employment Opportunity Commission ("EEOC"), accusing Taos Schools board members Arsenio Cordova and Lorraine Coca-Ruiz of discrimination on the basis of race, color, sex, religion, national origin, age, and retaliation.  The parties do not assert whether this complaint resulted in the EEOC's issuing a Right to Sue notice to Chavez-Medina; however, it is undisputed that she did not press a lawsuit based on the charges made therein.

**Administrative Salary Reduction Proposed as Budget-Reducing Measure**

After assuming the Superintendent's position, DeLong's successor, Interim Superintendent Roberto Gonzales, informed a group of Taos Schools' administrators and board members that cuts would need to be made in light of a projected budgetary shortfall.  Under one proposal, certain administrative positions would be eliminated outright.  Another proposal called for the existing administrators' salaries to be reduced.  Chavez-Medina does not dispute that a potential 2.1% salary reduction was discussed at these meetings, and that she was aware that such a salary reduction might be applied to her.

**Chavez-Medina's Two-Year Contract is Rescinded**

On or about June 17, 2009, Gonzales informed Chavez-Medina that the two-year contract issued to her by DeLong was invalid and would be rescinded. Gonzales' proffered reason for

rescinding the contract was that only certified administrators were entitled to work under multi-year contracts.  Chavez-Medina testified at her deposition that, previous to Gonzales' becoming Superintendent, her nursing license was deemed tantamount to an administrative certification. Chavez-Medina does not specifically dispute that she does not possess a New Mexico educational administrator's license.

**New Contract Provides Chavez-Medina With Reduced Salary**

On June 29, 2009, Chavez-Medina was presented with a one-year "non-certified personnel contract," in substitution for her rescinded contract.  It is undisputed that the replacement contract, which is not in the record, reflected a 2.1% reduction in her pay.

**Chavez-Medina's Second EEOC Complaint, Which Resulted in a Lawsuit**

On January 14, 2010, Chavez-Medina filed a second EEOC action against Taos Schools, accusing the District of retaliating against her in violation of Title VII and the NMHRA for filing her previous EEOC complaint.  She noted, *inter alia*; the invalidation of her two-year contract and replacement with a one-year contract; change in status to "a non-certified employee"; and 2.1% decrease in salary.  She further noted that her "new contract does not stipulate a job class, job description or salary schedule."  (Doc. 181 Ex. B).

On January 27, 2010, the EEOC issued a Right to Sue letter to Chavez-Medina regarding her complaint.

## LEGAL STANDARD

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to

judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

**<u>Qualified Immunity</u>**

Because a successful qualified immunity defense "generally shields from liability for civil damages government officials performing discretionary functions . . .  insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary

judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

 In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry. First, the Court must determine whether the plaintiff's allegations, if true, establish a violation of the plaintiff's constitutional rights. *Gomes,* 451 F.3d at 1134. Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred." *Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134. The Tenth Circuit has provided the additional guidance that, under ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), in order for a plaintiff to demonstrate that the law was clearly established. However, in applying the first two prongs of the qualified immunity analysis, "[t]he judges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

 Finally, if the plaintiff shows that the law is clearly established, the third and final part of the inquiry requires the Court to consider whether, "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that her actions were unconstitutional that she should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

**DISCUSSION**

## I.  Chavez-Medina's Retaliation Claim Under Title VII

"Title VII's anti-retaliation provision forbids an employer[1] from discriminating against an employee . . . because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."  *Brown v. Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705, 711 (10th Cir.2012) (quotation omitted).  Under long-standing Tenth Circuit precedent, "supervisors and other employees may not be held personally liable under Title VII."  *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  *See also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  Thus, the individual School Defendants – Coca-Ruiz, Cordova, Gallegos, and Gonzales – are entitled to summary judgment on the instant claim. Accordingly, the Court will consider whether Chavez-Medina has set forth a triable claim that Taos Schools – acting through its agents, the individual School Defendants – retaliated against her for filing an EEOC complaint in violation of Title VII.

## A.  The Applicable Standard: the *McDonnell Douglas* Test

Where there is no direct evidence of retaliation, a Title VII plaintiff's retaliation claim is analyzed under the burden-shifting framework employed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having

---

[1]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]"  42 U.S.C. § 2000e(b).

made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons for the allegedly discriminatory actions are merely a pretext for discrimination.  *See McDonnell Douglas,* 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

**B.  Chavez-Medina's Prima Facie Case**

As noted above, in order to satisfy the first prong of the *McDonnell Douglas* analysis, Chavez-Medina must be able to establish a prima facie case of retaliation.  She can meet this burden by showing "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Id.*

**1.  Protected Activity**

It is undisputed that Chavez-Medina's filing of an EEOC charge was a protected activity within the meaning of Title VII retaliation law.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, plaintiff engaged in protected activity.").

**2.  Materially Adverse Employment Actions**

"An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation omitted).  While the Tenth Circuit defines "adverse employment action" liberally, not limiting its application only to actions involving "monetary losses in the form of wages or benefits," a plaintiff must nevertheless "show more than a mere inconvenience or an alteration of job responsibilities."

8

*Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).

Chavez-Medina contends that Taos Schools, acting through the individual School Defendants, allegedly caused her to suffer two materially adverse actions: (1) the recission of her two-year employment contract, which was replaced by a one-year contract; and (2) the reduction of her salary by 2.1%.[2]  Here, the District does not attempt to meet its initial burden of showing that there is an absence of evidence to support that these two actions would be considered materially adverse by a reasonable employee.  Accordingly, the Court treats the challenged actions as materially adverse for purposes of the instant motion.

### 3. Causal Connection

Similarly, the District does not attempt to show the absence of a causal connection between Chavez-Medina's filing an EEOC complaint and the adverse actions she allegedly suffered as a consequence.  The Court therefore treats Chavez-Medina's prima facie claim as established for purposes of the instant motion.

## C. The District's Legitmate, Nondiscriminatory Reason for the Adverse Employment Actions and Chavez-Medina's Attempt to Show Pretext

### 1. Recission of Chavez-Medina's Two-Year Contract

_____

[2]Throughout her response, Chavez-Medina suggests that she has suffered numerous other acts of retaliation by the School Defendants. *See, e.g.,* Doc. 207 at 2 ("There were many acts of retaliation . . . other than the termination of her employment contract, which are detailed in her affidavit"); *id.* at 4 (noting, without proper citation, that IDEAS Reports were "designed to place Plaintiffs in a bad light and to cause harm to Plaintiffs and [are] an act of retaliation"); *id.* at 8 (rhetorically noting "what was the purpose of requiring Plaintiffs to sign an affidavit attesting to the date that the contract was signed when Defendants did not intend to honor the agreement[?]," without further elaboration).  The Court will consider only those alleged adverse actions analyzed by Chavez-Medina in her response, and treats all other vague, unsupported allegations of retaliation as abandoned.  Similarly, Chavez-Medina cites as an adverse action a "frivolous lawsuit" that Cordova brought against some of her Co-Plaintiffs.  *Id.* at 9.  The Court will consider only challenged actions suffered by the instant Plaintiff.

The District proffers a facially nondiscriminatory reason for Gonzales' decision to rescind the two-year contract issued to Chavez-Medina by his predecessor and replace it with a one-year contract – that Gonzales did so based on the advice of the District's legal counsel, who informed him that the contract should be rescinded and replaced with an appropriate one-year contract because "administrators [a]re not entitled to a multi-year contract without an administrative license." (Doc. 181 at 11). *See also* New Mexico School Personnel Act ("the Personnel Act"), NMSA (2006) § 22-10A-21(B)(4) (providing that "[a]ll employment contracts between local school boards and certified school personnel . . . shall be for a period of one school year," with few exceptions, including, *inter alia,* that "contracts not to exceed two years are permitted for certified school administrators in public schools who are engaged in administrative functions for more than one-half of their employment time").

To defeat the instant motion, Chavez-Medina must set forth evidence from which a reasonable jury could conclude that the proffered nondiscriminatory reason for the recission is pretextual. *See Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) ("to establish a genuine issue as to pretext, [plaintiff] must demonstrate that [defendant's] proffered non-discriminatory reason is unworthy of belief") (quotation omitted). Chavez-Medina "can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the District's proffered justification for reducing her salary "that a reasonable factfinder could rationally find [it] unworthy of credence." *Pinkerton,* 563 F.3d at 1065 (internal quotation marks and further citations omitted).

As evidence of pretext, Chavez-Medina notes that she was "not a certified administrator and hence [the Personnel Act] does not apply" to her. (Doc. 207 at 6). She does not attempt to support this contention by argument or citation to the record. Rather, Chavez-Medina states that

she "needed no certification.  She had the license required to perform her job."  *Id.*  This is

insufficient to show evidence of pretext.  By rescinding her contract, Gonzales did not discharge

Chavez-Medina from her employment.  Instead, he substituted a one-year contract applicable to

all non-certified school personnel for a two-year contract applicable only to certified

administrators, as required by statute.

Next, Chavez-Medina suggests that "even if the two-year agreement was not valid, that

would only invalidate the second year of the agreement, not the agreement itself."  (Doc. 207 at

6).  In support of her position, she cites *Ritchey v. Gerard,* 152 P.2d 394, 397 (N.M. 1944), in

which the New Mexico Supreme Court held that an otherwise legal contract's inclusion of a

divisible illegal clause did not invalidate the rest of the contract.  *Ritchey* is inapposite.  The

instant case involves measures taken to correct an employee's working under an invalid

contract,[3] not a single invalid provision that could be stricken from an otherwise valid legal

contract.  "A school district has only such power and authority as is granted by the legislature

and its power to contract, including contracts for employment, is only such as is conferred either

expressly or by necessary implication."  *Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 494

(1994) (quotation omitted).

_____

[3]Throughout the briefing, the parties use two terms of contract law -- "invalid" and
"void" – interchangeably.  *See, e.g.,* Doc. 181 at 2 (School Defendants noting that two-year
contract was "invalid"); Doc. 227 at 7 (School Defendants stating that two-year contract "was
ultra vires and void abnitio"); Doc. 207 at 8 (Chavez-Medina noting that "the contract was valid
and not void").  An "invalid contract" is defined as "[a]n agreement that is either void *or*
voidable," while a "void contract" is defined as "a contract that is of no legal effect, so that there
is really no contract in existence at all," and a "voidable contact" is defined as a "contract that
can be affirmed or rejected at the option of one of the parties."  BLACK'S LAW DICTIONARY (9th
ed. 2009) (emphasis added).  Because the Court need not reach the issue of whether the two-year
contract was invalid from the outset, and thus never had any legal effect, or whether it became
invalid once Gonzales rejected it as inapplicable to Chavez-Medina, the Court uses the more
inclusive term "invalid."

Further, Chavez-Medina's response fails to elaborate on a representation she made at her deposition – that prior to Gonzales' becoming Superintendent, the District "considered [her] a certified administrator" because she had a nursing license, notwithstanding her lack of administrative certification.  (Doc. 181 Ex. D Chavez-Medina Dep. at 20:14-21:3).  Chavez-Medina proffers no evidence in support of this claim.  *See id.* at 49:24-50:6 (Chavez-Medina's testimony that the only two-year contract she signed during her tenure at Taos Schools was the rescinded February 2009 contract).  In the absence of any showing by Chavez-Medina that the District violated an agreement to treat her as a certified administrator in spite of her lack of credentials, summary judgment will be granted to the District on this aspect of Chavez-Medina's Title VII retaliation claim.

### 2.  2.1% Salary Reduction

With respect to Taos Schools' decision to reduce Chavez-Medina's salary by 2.1%, the District contends that the decision was legitimate and nondiscriminatory because "salary adjustments tied to available budget were explicitly allowed per the terms of the 'School Administrator' form contract issued to the Plaintiffs by DeLong."  (Doc. 181 at 12).  The Court agrees that, even if Chavez-Medina's two-year contract was valid before it was repudiated by Gonzales, *see* n. 3,  it expressly provided that the salary recited therein would be paid to her "subject to the provisions of the applicable approved budget."  (Doc. 227 Ex. R ¶ 8).

As evidence that the District's proffered reason is pretextual, Chavez-Medina states that the District "hired additional personnel" for the 2009-2010 school year, "added $180,000 to the budget for employees and cut about $10,000 by the 2.1% reduction."  (Doc. 207 at 5).  It appears that Chavez-Medina means to allege that the salary reduction applied to her and the other Plaintiffs saved the District only $10,000, yet the district added $180,000 to the budget for hiring

12

new employees.  (It is unclear for what positions these new employees were hired).  Chavez-Medina further contends that other administrators who are not Plaintiffs in the instant case – she does identify who – "actually received raises in the form of increments to their pay."  *Id.*

The Court finds Chavez-Medina's assertions insufficient to show pretext, as she wholly fails to cite to any evidence in the record that supports her position.  *Id.*  Accordingly, the District's motion for summary judgment on this aspect of Chavez-Medina's Title VII retaliation claim will be denied.

## II.  <u>Chavez-Medina's Retaliation Claim Under the NM Human Rights Act</u>

The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ("NMHRA"), are "actually identical" to the requirements set forth by Title VII.  *See, e.g., Gioia v. Pinkerton's Inc.,* 194 F.Supp.2d 1207, 1220 (D.N.M. 2002).  Thus, the Court finds that the District is entitled to summary judgment on Chavez-Medina's claim under the NMHRA that it retaliated against her by rescinding her contract.  Likewise, the Court finds that summary judgment should be denied to the District on Chavez-Medina's NMHRA claim that it retaliated against her by reducing her salary by 2.1%.

## III.  <u>Breach of Contract</u>

There are two aspects to Chavez-Medina's claim for breach of contract.  First, she argues that the two-year contract she signed in February 2009 was valid, and thus was breached by its recission.  Second, she argues that the reduction of her salary by 2.1% also constituted a contractual breach.  Chavez-Medina does not specify which of the School Defendants she alleges breached the contract.

**A.  Recission of Chavez-Medina's Two-Year Contract**

For the reasons set forth, *supra*, in relation to Chavez-Medina's retaliation claim, the Court finds that no question of fact exists as to Gonzales' ability to rescind her two-year contract.  It is undisputed that Chavez-Medina was not a certified administrator at the time the contract was executed, and New Mexico law provides that multi-year contracts should only be executed for "certified school administrators in public schools who are engaged in administrative functions for more than one-half of their employment time" or "certified school instructors in public schools who have been employed in the school district for three consecutive school years."  NMSA § 22-10A-21 (B)(4)-(5).  Because the contract was invalid as void or voidable, *see* n.3, the decision to rescind and replace it with a one-year contract was not a breach.

**B.  2.1% Salary Reduction**

Next, the School Defendants seek summary judgment on Chavez-Medina's claim that the District's reduction of her salary by 2.1% of the figure set forth in her February 2009 contract constitutes a breach of that contract. Chavez-Medina's claim that her salary was reduced from the promised sum again assumes that the contract was valid.  However, even if the contract was valid at the time it was entered, the Court finds that the District's decision to reduce her listed salary by 2.1% did not amount to a contractual breach.

Under New Mexico law, "[a] contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions."  *LensCrafters, Inc. v. Kehoe*, 2012 N.M. LEXIS 243, at *12 (N.M., June 14, 2012).  "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent."  *Id*.; *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704 (1993) ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language

14

employed by them; and where such language is not ambiguous, it is conclusive") (quotation omitted). Here, as noted above, Chavez-Medina's two-year contract clearly and unambiguously provided that the salary recited therein would be paid to her "subject to the provisions of the applicable approved budget. . . . In the event that the Administrator is employed on a two (2) year contract, [this provision] will be amended in the first and second year to reflect any appropriate salary adjustment factors." (Doc. 227 Ex. R ¶ 8). It further provided that it could "be cancelled by the Superintendent for cause not personal to the Administrator [for] insufficient legislative appropriation or authorization being made by the state and/or federal government for the performance of this contract." *Id.* ¶ 4.

As noted above, there is simply no evidence that the 2.1% salary reduction was implemented for reasons other than budgetary restrictions. Indeed, Chavez-Medina pointedly fails to address the provision that explicitly excused the District from paying the salary set forth therein in the event of budgetary deficiencies, let alone set forth evidence that such deficiencies were not the reason for the reduction. Accordingly, the Court finds that the School Defendants should be granted summary judgment on Chavez-Medina's claim for breach of contract.

## IV. Breach of the Covenant of Good Faith and Fair Dealing

"Under New Mexico law, 'every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.'" *Mt. Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010), quoting *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 188 P.3d 1200, 1203 (N.M. 2008). The parameters of Chavez-Medina's beach-of-covenant claim are unclear. In support of their

15

motion, the School Defendants assert that they should be granted summary judgment because the implied covenant "prevents a party from acting in bad faith to frustrate the contract's actual benefits," and that Chavez-Medina cannot show she lost any benefit to which she was contractually entitled (i.e., a contract of two years' duration or an unreduced salary).  (Doc. 181 at 21, quoting *Henning v. Rounds,* 142 N.M. 803, 808-809 (N.M. App. 2007)).

In her response, Chavez-Medina asserts that the School Defendants breached the covenant by demanding that she sign an affidavit, "when there was no intent to comply with the agreement" –  a maneuver that was "designed to cheat [her] out of her contractual rights and hence a violation of the covenant of good faith and fair dealings."  (Doc. 207 at 13).  The only other reference to an affidavit in Chavez-Medina's brief is the statement in her proposed facts that two other Defendants – Peter Baston and IDEAS Business Technology Integration, LLC (collectively, "the IDEAS Defendants"), who are not parties to the instant motion – falsely asserted that her contract was not created on the date it was purportedly signed, "thus falsely accusing Plaintiffs of perjury who had previously been required to sign an affidavit attesting to the correctness of the date of signature."  *Id.* at 4.  Chavez-Medina does not describe any underlying agreement, explain who she accuses of not intending to comply with it, or argue how it amounts to a breach of the covenant of good faith.  The remainder of her argument is devoted to reproducing sizable excerpts from two New Mexico cases in support of the principle that, in this State, a claim for violation of the covenant of good faith and fear dealing is "valid in the public employment context if the employee was not at will,"[4] without any discussion of how the underlying facts of this case support a breach-of-covenant claim.

_____

[4]*Id.* at 14, quoting *Henning,* 142 N.M. at 808-809, and *Planning and Design Solutions v. City of Santa Fe*, 118 N.M. 707 (N.M. 1994).

16

The Court finds that summary judgment should be granted to the School Defendants on Chavez-Medina's breach-of-covenant claim.  There does not appear to be any evidence in the record that the implied covenant was breached; indeed, Chavez-Medina has not even articulated a coherent theory of *how* the covenant was breached.  Accordingly, the Court concludes that there is no genuine issue for trial as to this claim.

## V.  Chavez-Medina's Procedural Due Process Claim under 42 U.S.C. § 1983

Finally, Chavez-Medina claims that the School Defendants violated her Fourteenth Amendment procedural due process rights.[5]  Procedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  There are two elements of a Section 1983 claim for deprivation of procedural due process.  The plaintiff must establish that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide due process of law."  *See Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 194 (3d Cir. 2009).  Here, Chavez-Medina contends that the School Defendants deprived her of her property interest in (A.) a two-year employment contract and (B) the salary it provided.

## A.  Chavez-Medina Did Not Have a Property Interest in an Invalid Two-Year Contract

As discussed at length, *supra*, there is no evidence in the record that Superintendent Gonzales erred in rescinding Chavez-Medina's two-year contract, when it is undisputed that she

---

[5]Chavez-Medina states in her response that she has waived her additional claim for Fourteenth Amendment due process violation of a protected liberty interest.  (Doc. 207 at 16).

lacked the certification required to enter into a contract for that duration of time.  *See Hulen v. Yates,* 322 F.3d 1229, 1240 (10th Cir. 2003) ("[C]onstitutionally protected property interests are created and defined by statute, ordinance, **contract**, implied contract and rules and understandings developed by state officials") (per curiam) (emphasis added).  Thus, all School Defendants – the District and the individual School Defendants – are entitled to summary judgment on this aspect of Chavez-Medina's due process claim.

## B.  The Individual School Defendants are Entitled to Qualified Immunity on Chavez-Medina's Claim That the Salary Reduction Violated Her Procedural Due Process Rights

The individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales – contend that they are entitled to qualified immunity on Chavez-Medina's claim that her salary reduction constituted a procedural due process violation, while Taos Schools contends that Chavez-Medina cannot show that it is liable under § 1983 for the alleged actions of its Superintendent in instituting the reduction.

"In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) 'the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right' and (2) 'the right violated was clearly established.'" *Webb v. Padilla*, 2009 U.S. Dist. LEXIS 101489, at *51 (D.N.M. Sept. 30, 2009), quoting *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id.* (quotation and further citations omitted).  Thus, only if Chavez-Medina meets her burden of demonstrating both that the individual School Defendants' actions violated a constitutional right and that the

right was clearly established at the time of the alleged conduct, will the School Defendants, as the moving parties, be required to satisfy the usual summary judgment standard by showing that there are no genuine issues of material facts and that they are entitled to judgment as a matter of law. *See id.; see also Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

The Court finds that Chavez-Medina has not presented sufficient evidence to survive summary judgment on this portion of her claim. As an initial matter, Chavez-Medina makes no attempt to establish that she had a protected interest in the salary set forth in her original, rescinded contract. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it," which must arise from a source independent from the Constitution, such as a contract or state statute. *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). Instead, Chavez-Medina ignores the first prong of the procedural due process analysis and addresses only the issue of whether she was afforded appropriate process.

Even assuming, *arguendo,* that Chavez-Medina had asserted a protected interest in her pre-reduction salary, the law is not clearly established that she was entitled to the level of process she claims to have been improperly denied. "An essential principle of due process is that a deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009), quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). According to the Supreme Court, the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (emphasis in the original). However, "a full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand County*, 967 F.2d 362, 367 (10th Cir.

19

1992).  Rather, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond."  *Id.*

Here, Chavez-Medina does not dispute that she had the opportunity to voice her objections to the proposed salary reduction at a series of open meetings before the reduction took effect.  However, she contends that she was entitled to "a full-blown adversarial [ ] hearing," at which she could have questioned the School Defendants under oath as to whether the reduction would apply or was applied to other administrators besides Plaintiffs.  (Doc. 207 at 10).  In support of her position, Chavez-Medina purports to rely on the "Taos Municipal School District Board of Education Policy Manual, Reduction-in-Force 227-1," which she claims to – but fails to – have attached to her response brief.  (Doc. 207 at 10).  She further cites to the New Mexico Administrative Code (NMAC) § 6.67.3, without explaining its relevance to her position.  *Id.* The Court has reviewed the cited section of the NMAC, which codifies the requirements for "termination or discharge of licensed school personnel when reduction in personnel is required," and finds that it is irrelevant to the question of whether an adversarial hearing is required in the situation at issue, and thus would not have put the individual School Defendants on notice that they could not reduce Chavez-Medina's salary without providing her a full-blown adversarial hearing.

As Chavez-Medina has not met her burden of proving that the property right of which she was allegedly deprived (if it existed) was clearly established, the individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales -- are entitled to summary judgment on the basis of qualified immunity as to her due process claims.

**C.  Taos Schools is Also Entitled to Summary Judgment on Chavez-Medina's Claim That the Salary Reduction Violated Her Procedural Due Process Rights**

Chavez-Medina's procedural due process claim against Taos Schools must be analyzed under the usual summary judgment standard, which places on the District the initial burden of showing a lack of a genuine factual dispute as to whether it violated her due process rights.

The District contends that it is entitled to summary judgment on the instant claim because Chavez-Medina cannot show that any of its employees violated her constitutional rights pursuant to an official policy.  While a school district is not immune from being sued under § 1983 suit in a federal court, it can be held "liable only if the violation of a plaintiff's federal rights results from an action taken under an official custom or policy."  *Douglas v. Beaver County Sch. Dist. Bd.*, 82 Fed. Appx. 200, 203 (10th Cir. 2003), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978).  Thus, a plaintiff suing a school district under § 1983 for the acts of one of its employees must prove: (1) that a district employee committed a constitutional violation, and (2) that an official policy or custom was the moving force behind the constitutional deprivation.  *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998).  In the case where a plaintiff seeks to impose entity liability on a school district on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with final authority to establish official district policy with respect to the action ordered.  *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-84 (1986).  In addition to demonstrating conduct properly attributable to the school district, "[t]he plaintiff must also demonstrate that through its deliberate conduct, the [district] was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the [district's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [district's] action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997).

21

Thus, the Court first considers where the District has shown the lack of a triable issue that Gonzales violated Chavez-Medina's procedural due process rights.  If necessary, the Court will then consider whether the evidence tends to show that the District was the moving force behind the alleged violation.

### 1.  Whether Gonzales Committed a Constitutional Violation

The Court finds that the District has shown the absence of a genuine dispute over whether Chavez-Medina had a legal entitlement to the salary set forth in her two-year contract sufficient to create a protected interest.  As more fully described above, even if the contract in issue was valid at the time it was executed, the District has proffered evidence that the salary set forth therein was dependent on the as-yet-unapproved budget for the contract period.  It is further undisputed that Chavez-Medina knew of a possible 2.1% salary reduction for months before it was implemented.  Moreover, Chavez-Medina fails to set forth any evidence that Superintendent Gonzales instituted the reduction for reasons other than deficiencies in the District's budget.  Accordingly, the Court concludes that Chavez-Medina lacked a protected property right to the salary in her two-year contract.

Moreover, even if Chavez-Medina had a property right, which she demonstrably did not, there is no genuine dispute that she was afforded an appropriate level of process.  As noted above, the District has established that employees to be affected by the District's salary-reduction plan, including Chavez-Medina, were given the opportunity to voice their objections to the proposal at a series of meetings conducted by the school board.   Even where a plaintiff employee has faced imminent discharge from employment, rather than the salary reduction at issue here, the Tenth Circuit has held that "warnings and an opportunity for a face-to-face meeting with supervisors" are sufficient to satisfy due process.  *West,* 967 F.2d at 367.

22

> A full evidentiary hearing is not required prior to an adverse employment action. The individual entitled to due process protection needs only to be given notice and an opportunity to respond. We have held that pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and a conversation between an employee and his supervisor immediately prior to the employee's termination, were sufficient to satisfy constitutional requirements.

*Id.*, citing *Seibert v. Univ. of Okla. Health Sciences Center*, 867 F.2d 591, 598 (10th Cir. 1989);

*Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989).

The Personnel Act does not set forth specific requirements and procedures for a governing authority's implementation of salary adjustments. Indeed, the parties have cited no authority from New Mexico state law or the Tenth Circuit on the issue, and the Court has found none. *But see McNeil v. City of Pittsburgh*, 1997 U.S. Dist. LEXIS 2034, at * 12-*13 (W.D. Pa., Feb. 6, 1997) ("where the Due Process Clause is invoked with relation to an adverse job action, terminations form the vast bulk of such cases. A much smaller deprivation arguably could call for a more relaxed process, or no process. Actions having the effect of deprivations but which are not targeted at individuals may not implicate due process at all.") (granting summary judgment in favor of municipality in employee's action for procedural due process violation in the reduction of her pay without hearing and finding that even if plaintiff had a property interest in the lost three percent of her salary, due process requirements were met by her receipt of "notice of the salary reduction by letter" and opportunity to respond in writing).

Chavez-Medina suggests that she was entitled to a full-blown adversarial hearing under the facts of this case, in which ten of the employees affected by the reduction had filed EEOC complaints against the district. The Court disagrees. "[C]onfrontation and cross-examination . . . are not rights universally applicable to all hearings." *Wolff v. McDonnell*, 418 U.S. 539, 567 (1974). Chavez-Medina does not deny that she was allowed ample opportunity to confront

Gonzales and members of the school board at a series of meetings regarding the reduction, both before and after it was implemented. *See West*, 967 F.2d at 369 (post-termination hearing comported with due process despite employee's inability to cross-examine witnesses, where there was no suggestion that employee "was inhibited or restricted" from confronting witness).

Rather, Chavez-Medina implies, but does not explicitly argue, that her opportunity to confront Gonzales was insufficient because the confrontation would not have occurred under oath. *See* Doc. 207 at 10 ("Plaintiff was entitled to a full-blown adversarial post-termination [sic] hearing as required for due process at which her attorney was allowed to call witnesses and cross-examine witnesses who testified under oath."). Specifically, she suggests that having the opportunity to cross-examine witnesses would have enabled her to determine whether the pay reduction was applied only to those administrators who filed EEOC complaints against the District. However, Chavez-Medina testified at her deposition that she knew of a school principal employed by the District who was not subjected to a pay reduction, whom she identified by name. (Doc. 181 Ex. D Chavez-Medina Dep. at 63:8-64:3). There is no mention of this individual anywhere in her response, which entirely fails to articulate her vaguely suggested theory that the pay reduction was a subterfuge for a constitutional deprivation. Thus, even if Chavez-Medina had possessed a property right in an unreduced salary, in the absence of any evidence that she was inhibited from obtaining the information she sought without the benefit of cross-examination, the Court concludes that, when it views the evidence in the record in the light most favorable to Chavez-Medina, she has not established that a reasonable jury could find that Gonzales violated her right to procedural due process.

### 2.  Whether District Policy Was "Moving Force"

Accordingly, because Chavez-Medina has failed to set forth evidence from which a

reasonable jury could conclude that Gonzales violated her constitutional rights, the Court need not reach the issue of whether the District was the "moving force" behind the violation.

### D.  Chavez-Medina's Purported Conspiracy Claim

In the same section of their brief devoted to Chavez-Medina's procedural due process claim, the School Defendants argue that summary judgment should be granted against her on her "related conspiracy claim."  (Doc. 181 at 18).  Chavez-Medina does not set forth a separate cause of action alleging that the School Defendants engaged in a civil conspiracy against her, and the School Defendants note that she "does not specify whether she brings her conspiracy theory under New Mexico state law, federal law, or both."  *Id.*  It appears that this portion of the School Defendants' motion is based on the following language in the Amended Complaint:

> Defendants Arsenio Cordova, Lorraine Coca-Ruiz, Stella Gallegos, acting through and in conspiracy with Defendant Roberto J. Gonzales and Defendant Peter Baston conspired on behalf of Defendant [Taos] School[s] in violation of 42 U.S.C. § 1983 to violate Plaintiffs' due process rights and as such are liable for punitive damages.

(Doc. 106 Am. Cplt. ¶ 309).  In her response, Chavez-Medina clarifies her contention that Superintendent Gonzales conspired "to deny her due process [along] with Baston and IDEAS."[6]

(Doc. 207 at 11).  She asserts, in conclusory fashion, that

> The timing of [the School] Defendants' acts in hiring Baston and the nature of the IDEAS Report which denigrates each of the Plaintiffs, mentions their EEOC charge negatively, and identifies the 2.1% pay cut are sufficient to infer a conspiracy between Baston, IDEAS and Gonzales for [Taos Schools] against [Chavez-Medina].

---

[6]Chavez-Medina refers to two Co-Defendants in this case, Peter Baston and IDEAS Business Technology Integration, LLC (collectively, "the IDEAS Defendants"), who were hired by the District to perform an internal quality-assurance audit in 2009.  The IDEAS Defendants are not parties to the instant motion, and have separately moved for summary judgment on the only claim still pending against them, for defamation.

*Id.*  Chavez-Medina does not, however, set forth any specific evidence in support of what appears to be her theory that her due process rights were violated by the IDEAS Defendants' publication of several reports detailing their findings in the Spring and Summer of 2009.  Neither does she identify a protected property interest or explain what level of process she was due or how it was denied by the alleged conspiracy.  Thus, because Chavez-Medina has not set forth a triable claim for violation of her procedural due process rights, her related claim for conspiracy to commit a due process violation necessarily fails.


**CONCLUSION**

Therefore, for the reasons set forth above, the Court finds that the School Defendants' *Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on Complaint by Maria Chavez-Medina* (Doc. 181) is **GRANTED**.


UNITED STATES DISTRICT COURT JUDGE