IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

          Plaintiffs,

v.                               No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

          Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Taos Board of Education, Taos

Municipal School District's ("Taos Schools'" or "the District's"), Arsenio Cordova's, Lorraine

Coca-Ruiz', Stella Gallegos', and Roberto J. Gonzales' (collectively, "the School Defendants'")

*Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on*

*Complaint by Nadine Vigil* (Doc. 188). Nadine Vigil, one of eleven Plaintiffs in the underlying

suit, accuses the School Defendants of (I) retaliation in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2005e-5(f), et seq., and (II) the New Mexico Human Rights Act, 28-1-1

N.M.S.A. (1996); (III) breach of contract; (IV) breach of the covenant of good faith and fair

dealing; and (V) procedural due process violations under the Fourteenth Amendment and 42

U.S.C. § 1983.  The Court having considered the motion, briefs, exhibits, and relevant law, and

being otherwise fully informed, finds that the School Defendants' motion should be

**GRANTED.**


## FACTUAL BACKGROUND

Many of the "facts" asserted by the parties are conclusory allegations; summaries of the

opposing party's contentions; are not later offered in support of that party's claims or defenses;

or are not supported by correct citations to the record.  The Court considers only those facts

which are plainly relevant to the determination of whether a genuine dispute exists as to the

claims in issue.

**Vigil Enters Into Two-Year Contract with the District**

At the time the events in issue commenced, Nadine Vigil was an elementary school

principal employed by Taos Schools in Taos, NM.[1]  In early 2009, Vigil entered into a two-year

contract to continue with the District for the 2009-2011 school-year period.  The contract was

executed on behalf of the District by then-Superintendent Loretta DeLong. The contract

provided that Vigil would earn a salary of $62,016, "[s]ubject to the provisions of the applicable

---

[1]Neither party asserts where Vigil was serving as Principal when the events in issue commenced.  Vigil has, however, proffered several documents indicating that she was later involuntarily transferred to the position of Co-Principal of Enos Garcia Elementary in August 2009 – a designation she shared with her Co-Plaintiff, Lucille Vigil.  *See, e.g.,* Doc. 205 Exs. 1, 15.  Vigil does not attempt to show how her involuntary transfer supports any of her claims, and the Court will not consider documents of indeterminate significance as evidence.

approved budget. . . . In the event that the Administrator is employed on a two (2) year contract, [it] will be amended in the first and second year to reflect any appropriate district salary adjustment factors." (Doc. 188 Ex. 2 ¶ 8). The contract further provided that it could be cancelled by Taos Schools' Superintendent in the event of insufficient appropriations by the State legislature. Vigil does not specifically dispute that Taos Schools' 2009-2010 budget had yet to be adopted at the time she entered into the contract.

The parties dispute the date the contract was entered. While Vigil asserts that the contract accurately states that it was signed by both Vigil and DeLong on February 20, 2009, the School Defendants contend that it could have been signed by the former at a later date, and made to look as if it was signed on February 20, 2009.

**Vigil's First EEOC Complaint, Which Did Not Result in a Lawsuit**

On June 1, 2009, Vigil filed a complaint against Taos Schools with the Equal Employment Opportunity Commission ("EEOC"), accusing Taos Schools board members Arsenio Cordova and Lorraine Coca-Ruiz of discrimination on the basis of sex and national origin. The narrative portion of the EEOC charge specifically identified three incidents of allegedly discriminatory conduct.

On October 9, 2009, the EEOC issued a Dismissal and Notice of Rights letter to Vigil regarding her complaint. It is undisputed that she did not exercise her right to sue within 90 days of receipt of the letter.

**Administrative Salary Reduction Proposed as Budget-Reducing Measure**

After assuming the Superintendent's position, DeLong's successor, Interim Superintendent Roberto Gonzales, informed a group of Taos Schools' administrators and board members that cuts would need to be made in light of a projected budgetary shortfall. Under one

proposal, certain administrative positions would be eliminated outright.  Another proposal called for the existing administrators' salaries to be reduced.  Vigil does not dispute that a potential 2.1% salary reduction was discussed at these meetings, and that she was aware that such a salary reduction might be applied to her.

**Salary Reduction Implemented and Applied to Vigil**

On a date not set forth in the record, the District implemented the planned 2.1% salary reduction, which was applied to Vigil.  There is no evidence that Vigil was issued a new contract concomitant with the reduction.

**Vigil's Second EEOC Complaint, Which Resulted in a Lawsuit**

On January 14, 2010, Vigil filed a second EEOC action against Taos Schools, accusing the District of retaliating against her in violation of Title VII and the NMHRA for filing her previous EEOC complaint.  She noted, *inter alia*, her pay decrease and the fact that unidentified person(s) within the District directed her "to sign an affidavit stipulating to the authenticity of the date of my two-year contract."  (Doc. 188 Ex. 2).  It is undisputed that Vigil exhausted her administrative remedies with respect to her second EEOC complaint.


## LEGAL STANDARD

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."

4

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## Qualified Immunity

Because a successful qualified immunity defense "generally shields from liability for civil damages government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry.

5

First, the Court must determine whether the plaintiff 's allegations, if true, establish a violation of the plaintiff's constitutional rights.  *Gomes,* 451 F.3d at 1134.  Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred."  *Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134.  The Tenth Circuit has provided the additional guidance that, under ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), in order for a plaintiff to demonstrate that the law was clearly established.  However, in applying the first two prongs of the qualified immunity analysis, "[t]he judges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Finally, if the plaintiff shows that the law is clearly established, the third and final part of the inquiry requires the Court to consider whether, "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that her actions were unconstitutional that she should not be imputed with knowledge of a clearly established right."  *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

**DISCUSSION**

6

## I.  Vigil's Retaliation Claim Under Title VII

"Title VII's anti-retaliation provision forbids an employer[2] from discriminating against an employee . . . because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."  *Brown v. Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705, 711 (10th Cir.2012) (quotation omitted).  Under long-standing Tenth Circuit precedent, "supervisors and other employees may not be held personally liable under Title VII."  *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  *See also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  Thus, the individual School Defendants – Coca-Ruiz, Cordova, Gallegos, and Gonzales – are entitled to summary judgment on the instant claim.  Accordingly, the Court will consider whether Vigil has set forth a triable claim that Taos Schools – acting through its agents, the individual School Defendants – retaliated against her for filing an EEOC complaint in violation of Title VII.

## A.  The Applicable Standard: the *McDonnell Douglas* Test

Where there is no direct evidence of retaliation, a Title VII plaintiff's retaliation claim is analyzed under the burden-shifting framework employed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden,

---

[2]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]"  42 U.S.C. § 2000e(b).

all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons for the allegedly discriminatory actions are merely a pretext for discrimination.  *See McDonnell Douglas,* 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

**B.  Vigil's Prima Facie Case**

As noted above, in order to satisfy the first prong of the *McDonnell Douglas* analysis, Vigil must be able to establish a prima facie case of retaliation.  She can meet this burden by showing "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Id.*

**1.  Protected Activity**

It is undisputed that Vigil's filing of an EEOC charge was a protected activity within the meaning of Title VII retaliation law.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, plaintiff engaged in protected activity.").

**2.  Materially Adverse Employment Actions**

"An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation omitted).  While the Tenth Circuit defines "adverse employment action" liberally, not limiting its application only to actions involving "monetary losses in the form of wages or benefits," a plaintiff must nevertheless "show more than a mere inconvenience or an alteration of job responsibilities."  *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).

Vigil alleges that Taos Schools reduction of her salary by 2.1% constitutes a materially adverse action.[3]  The District does not attempt to meet its initial burden of showing a lack of evidence supporting the position that a reasonable employee would consider the pay reduction to be materially adverse to her employment prospects.  Accordingly, the Court treats the challenged action as materially adverse for purposes of the instant motion.

### 3.  Causal Connection

Similarly, the District does not attempt to show the absence of a causal connection between Vigil's filing an EEOC complaint and the 2.1% salary reduction.  The Court therefore treats Vigil's prima facie claim as established for purposes of the instant motion.

### C.  The District's Legitmate, Nondiscriminatory Reason for Reducing Vigil's Pay and Her Attempt to Show Pretext

With respect to Taos Schools' decision to reduce Vigil's salary by 2.1%, the District contends that the decision was legitimate and nondiscriminatory because "it was lawful to adjust administrators' salaries if there was not sufficient money in the budget," which Vigil concedes there was not.  (Doc. 188 at 9).  The District further notes that the contract expressly provided that the salary recited therein would be paid to Vigil "subject to the provisions of the applicable

---

[3]Throughout her response, Vigil suggests that she has suffered numerous other acts of retaliation by the School Defendants.  *See, e.g.,* Doc. 205 at 2 ("There were many acts of retaliation . . . which are detailed in her affidavit"); *id.* at 4 (noting that report prepared by auditor "was designed to place Plaintiffs in a bad light and to cause harm to Plaintiffs and is an act of retaliation," but failing to offer specific evidence relating to the report or apply the relevant *McDonnell Douglas* analysis); *id.* at 5 (noting that "no meaningful hearing was provided either before or after Plaintiff's contract of employment was invalidated by Gonzales. This is an additional act of retaliation," after failing to set forth evidence that her contract was invalidated).  The Court will consider only those alleged adverse actions analyzed by Vigil her response, and treats all other vague, unsupported allegations of retaliation as abandoned. Similarly, Vigil cites as an adverse action a "frivolous lawsuit" that Cordova brought against some of her Co-Plaintiffs.  *Id.* at 4.  The Court will consider only challenged actions suffered by the instant Plaintiff.

approved budget" and allowed for "appropriate district salary adjustment[s]."  (Doc. 188 Ex. 2 ¶ 8).

As evidence of pretext, Vigil states that the District "hired additional personnel" for the 2009-2010 school year, "added $180,000 to the budget for employees and cut about $10,000 by the 2.1% reduction."  (Doc. 205 at 5).  It appears that Vigil means to allege that the salary reduction applied to her and other Plaintiffs saved the District only $10,000, yet the district added $180,000 to the budget for hiring new employees.  (It is unclear for what positions these new employees were hired).  Vigil further contends that other administrators who are not Plaintiffs in the instant case – she does identify who or set forth any evidence in support of her contention – "actually received raises in the form of increments to their pay."  *Id.* at 6.

Vigil's assertions, if supported by specific facts, would provide sufficient evidence of pretext to withstand summary judgment.  However, Vigil fails to identify by correct citation any evidence in the record that supports what are otherwise conclusory accusations.  *Id.* (citing as support only her own *Fact No. 4*, which claims that the "Winter Declaration," which Vigil does not identify by proper citation, supports her position).  Vigil's response is not only insufficient to withstand summary judgment, it fails to abide by the Rules of this Court.  *See* D.N.M.L.R.-Civ. 7.1 ("A party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper.").

Therefore, because Vigil has not set forth sufficient evidence of pretext to set forth a triable retaliation claim, the Court finds that summary judgment should be granted to the District as to her Title VII retaliation claim.

## II.  Vigil's Retaliation Claim Under the NM Human Rights Act

The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ("NMHRA"), are "actually identical" to the requirements set forth by Title VII. *See, e.g., Gioia v. Pinkerton's Inc.,* 194 F.Supp.2d 1207, 1220 (D.N.M. 2002).  Thus, for the reasons set forth above, the Court finds that the School Defendants are also entitled to summary judgment on Vigil's claim for retaliation under the NMHRA.

## III.  Breach of Contract

There are two aspects to Vigil's claim for breach of contract.  First, she argues that the two-year contract she signed in February 2009 was breached when it was rescinded "without an opportunity for a hearing.  Defendant cannot rely upon advice of an attorney to justify termination of a contract."  (Doc. 205 at 11).  Second, she argues that the reduction of her salary by 2.1% also constituted a contractual breach.  Vigil does not specify which of the School Defendants she alleges breached these contracts.

With respect to the alleged termination of her contract, the Court notes that Vigil has not asserted any facts tending to show that the School Defendants rescinded or in any way attempted to repudiate her February 2009 employment contract.  On the contrary, elsewhere in her response Vigil states that she "never signed another contract with a reduction in pay although my pay was reduced without my consent" and "never received an amended contract.."[4]  *Id.* at Ex. 1 Vigil

---

[4]Several (though not all) of Vigil's Co-Plaintiffs in this action have alleged that Interim Superintendent Gonzales rescinded two-year employment contracts they entered into with the District in February 2009 and replaced them with one-year contracts.  This suggests that the language in Vigil's response suggesting that her contract was rescinded is the result of an oversight.

Decl. ¶ ¶ 6, 8, 9.  Accordingly, the Court finds that the School Defendants are entitled to summary judgment on this aspect of Vigil's claim.

As to Vigil's claim that the District's reduction of her salary by 2.1% of the figure set forth in her February 2009 contract constitutes a breach, the Court disagrees.  Under New Mexico law, "[a] contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions." *LensCrafters, Inc. v. Kehoe*, 2012 N.M. LEXIS 243, at *12 (N.M., June 14, 2012).  "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent." *Id.*; *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704 (1993) ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive") (quotation omitted).  Here, as noted above, Vigil's two-year form contract clearly and unambiguously provided that she would earn an annual salary of $62,016, "[s]ubject to the provisions of the applicable approved budget," and could be "amended in the first and second year to reflect any appropriate salary adjustment factors."  (Doc. 188 Ex. 2 ¶ 8).

As evidence that there is no factual dispute that the pay reduction occurred due to a budgetary shortfall, the School Defendants proffer Vigil's own deposition testimony that concerns about the District's financial situation and the possibility of an across-the-board 2.1 % salary decrease for Taos Schools' administrators had been repeatedly discussed and debated at meetings of the school board in Spring 2009 – at which Vigil herself was present – as an alternative to eliminating certain administrators' positions outright. *See* Doc. 188 Ex. 1 Vigil Dep. at 44:9-44:15, 45:1-44:24, 92:1-92:17, 122:11-123:7.

Vigil's response does not set forth a theory of how the pay reduction constituted a breach

of contract.  *See* Doc. 205 at 11 (stating that "[t]he contract was breached at least in regard to the 2.1% reduction for the first year of the two[-]year agreement," without further elaboration). Indeed, she fails to address the provision that explicitly excused the District from paying the salary set forth therein in the event of budgetary deficiencies, let alone set forth evidence that such deficiencies were not the reason for the reduction.  Vigil's conclusory allegation is plainly insufficient to create a genuine dispute as to whether her contract was breached.

Accordingly, the Court finds that the School Defendants should be granted summary judgment on Vigil's claim for breach of contract.

## IV.  Breach of the Covenant of Good Faith and Fair Dealing

"Under New Mexico law, 'every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.'" *Mt. Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010), quoting *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 452 (N.M. 2008).  The parameters of Vigil's breach-of-covenant claim are unclear.  In support of their motion, the School Defendants assert that they should be granted summary judgment because the implied covenant "prevents a party from acting in bad faith to frustrate the contract's actual benefits," and that Vigil cannot show she lost any benefit to which she was contractually entitled (i.e., the salary provided in the contract, subject to the available budget).  (Doc. 188 at 16, quoting *Henning v. Rounds,* 142 N.M. 803, 808-809 (N.M. App. 2007)).

In her response, Vigil does not dispute that she cannot show deprivation of the benefits of her contract.  Rather, she asserts that the School Defendants breached the covenant by demanding that she sign an affidavit, "when there was no intent to comply with the agreement" –

a maneuver that was "designed to cheat [her] out of her contractual rights and hence a violation

of the covenant of good faith and fair dealings."  (Doc. 205 at 12).  However, Vigil does not

describe the underlying agreement to which she refers, explain who she accuses of not intending

to comply with it, or argue how that amounts to a breach of the covenant of good faith.[5]  The

remainder of her argument is devoted to reproducing sizable excerpts from two New Mexico

cases in support of the principle that, in this State, a claim for violation of the covenant of good

faith and fear dealing is "valid in the public employment context if the employee was not at

will," without any discussion of how the underlying facts of this case support a breach-of-

covenant claim.  *Id.*, quoting *Henning,* 142 N.M. at 808-809, and *Planning and Design Solutions*

*v. City of Santa Fe*, 118 N.M. 707 (N.M. 1994).

   The Court finds that summary judgment should be granted to the School Defendants on

this claim.  There does not appear to be any evidence in the record that the implied covenant was

breached; indeed, Vigil has not even articulated a coherent theory of *how* the covenant was

breached.  Accordingly, the Court concludes that there is no genuine issue for trial as to this

claim.


## V.  Vigil's Procedural Due Process Claim under 42 U.S.C. § 1983

   Finally, Vigil claims that the School Defendants violated her property rights under the

---

[5]Vigil attaches to her brief an affidavit dated July 9, 2009, in which she attests that she signed her two-year contract with then-Superintendent DeLong on February 20, 2009.  (Doc. 205 Ex. 16).  Vigil's response does not attempt to show how this document supports her breach-of-covenant claim, and the Court will not attempt to make out such a claim for her.

Fourteenth Amendment procedural Due Process Clause.[6]  Procedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  There are two elements of a Section 1983 claim for deprivation of procedural due process.  The plaintiff must establish that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide due process of law."  *See Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 194 (3d Cir. 2009).

Here, Vigil contends that the School Defendants deprived her of her property interest in the salary set forth in her two-year employment contract.[7]  In support of the instant motion, the individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales – contend that they are entitled to qualified immunity, while Taos Schools contends that Vigil cannot show that it is liable under § 1983 for the alleged actions of its Superintendent in instituting the reduction.

### A.  The Individual School Defendants are Entitled to Qualified Immunity

"In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) 'the facts taken in the light most favorable to the plaintiff show that the

---

[6]Vigil has waived her additional claim for Fourteenth Amendment due process violation of a protected liberty interest.

[7]Vigil also suggests that "the termination of her contract" by the School Defendants constitutes an additional due process violation.  (Doc. 205 at 7).  As noted above, Vigil has not asserted any facts or set forth any evidence showing that the contract in issue was terminated.  *See supra* at 11, n.4.

15

defendant's conduct violated a constitutional right' and (2) 'the right violated was clearly established.'" *Webb v. Padilla*, 2009 U.S. Dist. LEXIS 101489, at *51 (D.N.M. Sept. 30, 2009), quoting *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id.* (quotation and further citations omitted). Thus, only if Vigil meets her burden of demonstrating both that the individual School Defendants' actions violated a constitutional right and that the right was clearly established at the time of the alleged conduct, will the School Defendants, as the moving parties, be required to satisfy the usual summary judgment standard by showing that there are no genuine issues of material facts and that they are entitled to judgment as a matter of law. *See id.; see also Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

The Court finds that Vigil has not presented sufficient evidence to survive summary judgment on this portion of her claim. As an initial matter, Vigil makes no attempt to establish that she had a protected interest in the salary set forth in her contract. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it," which must arise from a source independent from the Constitution, such as a contract or state statute. *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). Here, Vigil fails to argue how she could have a legitimate claim of entitlement to a salary that her contract explicitly stated would be provided to her "[s]ubject to the provisions of the applicable approved budget," and was further subject to amendment throughout the contract period "to reflect any appropriate district salary adjustment factors." (Doc. 188 Ex. 2 ¶ 8). Neither does she attempt to show that a budgetary shortfall was not the reason for the salary reduction. Instead, Vigil wholly

16

ignores the first prong of the procedural due process analysis and addresses only the issue of whether she was afforded appropriate process.

Even assuming, *arguendo,* that Vigil had shown that she possessed a protected interest in her pre-reduction salary, the law is not clearly established that she was entitled to the level of process she claims to have been improperly denied.  "An essential principle of due process is that a deprivation of . . .  property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009), quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  According to the Supreme Court, the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (emphasis in the original).  However, "a full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992).  Rather, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond." *Id.*

Vigil does not dispute that she had the opportunity to voice her objections to the proposed salary reduction at a series of open meetings before the reduction took effect. However, she contends that she was entitled to "a full-blown adversarial [ ] hearing," at which she could have questioned the School Defendants under oath as to whether the reduction would apply or was applied to other administrators besides Plaintiffs.  (Doc. 205 at 8).  In support of her position, Vigil purports to rely on the "Taos Municipal School District Board of Education Policy Manual, Reduction-in-Force 227-1," which she claims to – but fails to – have attached to her response brief. *Id.*  She further cites to the New Mexico Administrative Code (NMAC) § 6.67.3, without explaining its relevance to her position. *Id.*  The Court has reviewed the cited

17

section of the NMAC, which codifies the requirements for "termination or discharge of licensed school personnel when reduction in personnel is required," and finds that it is irrelevant to the question of whether an adversarial hearing is required in the situation at issue, and thus would not have put the individual School Defendants on notice that they could not reduce Vigil's salary without providing her with a full-blown adversarial hearing.

As Vigil has not met her burden of proving that the property right of which she was allegedly deprived (if it existed) was clearly established, the individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales -- are entitled to summary judgment on the basis of qualified immunity as to her due process claims.

**B.  Taos Schools is Also Entitled to Summary Judgment on Vigil's Claim That the Salary Reduction Violated Her Procedural Due Process Rights**

Vigil's procedural due process claim against Taos Schools must be analyzed under the usual summary judgment standard, which places on the District the initial burden of showing the lack of a genuine factual dispute as to whether it violated her due process rights.

The District contends that it is entitled to summary judgment on the instant claim because Vigil cannot show that any of its employees violated her constitutional rights pursuant to an official policy.  While a school district is not immune from being sued under § 1983 suit in a federal court, it can be held "liable only if the violation of a plaintiff's federal rights results from an action taken under an official custom or policy."  *Douglas v. Beaver County Sch. Dist. Bd.*, 82 Fed. Appx. 200, 203 (10th Cir. 2003), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978).  Thus, a plaintiff suing a school district under § 1983 for the allegedly unconstitutional acts of one of its employees must prove: (1) that a district employee committed a constitutional violation, and (2) that an official policy or custom was the moving force behind

the constitutional deprivation.  *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  In the case where a plaintiff seeks to impose entity liability on a school district on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with final authority to establish official district policy with respect to the action ordered.  *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-84 (1986).  In addition to demonstrating conduct properly attributable to the school district, "[t]he plaintiff must also demonstrate that through its deliberate conduct, the [district] was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the [district's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [district's] action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997).

   For the reasons set forth above, the Court finds that no genuine issue of material fact exists over whether a District employee – Superintendent Gonzales – violated Vigil's constitutional rights by reducing her pay.  As set forth above, the School Defendants have proffered evidence that the contract explicitly allowed for salary adjustments to be made in the event of a budgetary shortfall, and that Vigil was aware in advance of the reductions that such a shortfall existed.  *See* Doc. 188 Ex. 1 Vigil Dep. at 44:9-44:15, 45:1-44:24, 92:1-92:17, 122:11-123:7.  For her part, Vigil has failed to set forth any evidence that Gonzales instituted the salary reduction for reasons other than deficiencies in the District's budget. Consequently, the Court finds that Vigil lacked a legal entitlement to the unreduced salary sufficient to create a protected interest. *See Hulen,* 322 F.3d at 1240 ("constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials.").  Thus, because there is no evidence that Vigil had a protected

19

property interest in the salary set forth in her February 2009 contract, the Court need not reach the question of whether she was afforded an appropriate level of process.

Accordingly, because Vigil has failed to set forth evidence from which a reasonable jury could conclude that a District employee violated her constitutional rights, the Court need not reach the issue of whether the District was the "moving force" behind the violation.

## C. Vigil's Purported Conspiracy Claim

In the same section of their brief devoted to Vigil's procedural due process claim, the School Defendants argue that summary judgment should be granted against her on her "related conspiracy claim." (Doc. 188 at 13). Vigil does not set forth a separate cause of action alleging that the School Defendants engaged in a civil conspiracy against her, and the School Defendants note that she "does not specify whether she brings her conspiracy theory under New Mexico state law, federal law, or both." *Id.* It appears that this portion of the School Defendants' motion is based on the following language in the Amended Complaint:

> Defendants Arsenio Cordova, Lorraine Coca-Ruiz, Stella Gallegos, acting through and in conspiracy with Defendant Roberto J. Gonzales and Defendant Peter Baston conspired on behalf of Defendant [Taos] School[s] in violation of 42 U.S.C. § 1983 to violate Plaintiffs' due process rights and as such are liable for punitive damages.

(Doc. 106 Am. Cplt. ¶ 309). In her response, Vigil clarifies her contention that Superintendent Gonzales conspired "to deny her due process [along] with Baston and IDEAS."[8] (Doc. 205 at 9). She asserts, in conclusory fashion, that

> The timing of [the School] Defendants' acts in hiring Baston and the nature of the

---

[8]Peter Baston and IDEAS were hired by the District to perform an internal quality-assurance audit in 2009. The IDEAS Defendants are not parties to the instant motion, and have separately moved for summary judgment on the only claim still pending against them, for defamation.

> IDEAS Report which denigrates each of the Plaintiffs, mentions their EEOC
> charge negatively, and identifies the 2.1% pay cut are sufficient to infer a
> conspiracy between Baston, IDEAS and Gonzales for [Taos Schools] against
> [Vigil].

*Id.* at 9-10.  Vigil does not, however, set forth any specific evidence in support of what appears to be her theory that her due process rights were violated by the IDEAS Defendants' publication of several reports detailing their findings in the Spring and Summer of 2009.  Neither does she identify a protected property interest or explain what level of process she was due or how it was denied by the alleged conspiracy.  Thus, because Vigil has not set forth a triable claim for violation of her procedural due process rights, her related claim for conspiracy to commit a due process violation necessarily fails.

## CONCLUSION

Therefore, for the reasons set forth above, the Court finds that the School Defendants' *Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on Complaint Filed by Nadine Vigil* (Doc. 188) is **GRANTED.**

_____
UNITED STATES DISTRICT COURT JUDGE