IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

          Plaintiffs,


v.                                    No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

          Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

     This matter comes before the Court on Defendants Taos Board of Education, Taos

Municipal School District's ("Taos Schools'" or "the District's"), Arsenio Cordova's, Lorraine

Coca-Ruiz', Stella Gallegos', and Roberto J. Gonzales' (collectively, "the School Defendants'")

*Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on*

*Complaint by Esther Winter* (Doc. 189). Esther Winter, one of eleven Plaintiffs in the

underlying suit, accuses the School Defendants of (I) retaliation in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2005e-5(f), et seq., and (II) the New Mexico Human

Rights Act, 28-1-1 N.M.S.A. (1996); (III) breach of contract; (IV) breach of the covenant of good faith and fair dealing; and (V) procedural due process violations under the Fourteenth Amendment and 42 U.S.C. § 1983.  The Court having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the School Defendants' motion should be **GRANTED.**

## FACTUAL BACKGROUND

Many of the "facts" asserted by the parties are conclusory allegations; summaries of the opposing party's contentions; are not later offered in support of that party's claims or defenses; or are not supported by correct citations to the record.  The Court considers only those facts which are plainly relevant to the determination of whether a genuine dispute exists as to the claims in issue.

### Winter Enters Into Two-Year Contract with the District

At the time the events in issue commenced, Plaintiff Esther Winter was the longtime Personnel Director for Taos Schools in Taos, NM.  In early 2009, Winter entered into a two-year contract to continue with the District for the 2009-2011 school-year period.  The contract was executed on behalf of the District by then-Superintendent Loretta DeLong. The contract provided that Winter would earn a salary of $64,690, "[s]ubject to the provisions of the applicable approved budget. . . . In the event that the Administrator is employed on a two (2) year contract, [it] will be amended in the first and second year to reflect any appropriate district salary adjustment factors." (Doc. 214 Ex. 7 ¶ 8). The contract further provided that it could be cancelled by Taos Schools' Superintendent in the event of insufficient appropriations by the State legislature.  Winter does not specifically dispute that Taos Schools' 2009-2010 budget had

yet to be adopted at the time she entered into the contract.

The parties dispute the date the contract was entered.  While Winter asserts that the contract accurately states that it was signed by both Winter and DeLong on February 20, 2009, the School Defendants contend that it could have been signed by the former at a later date, and made to look as if it was signed on February 20, 2009.

**Winter's First EEOC Complaint, Which Did Not Result in a Lawsuit**

On June 1, 2009, Winter filed a complaint against Taos Schools with the Equal Employment Opportunity Commission ("EEOC"), accusing Taos Schools board members Arsenio Cordova and Lorraine Coca-Ruiz and DeLong's successor, Interim Superintendent Roberto Gonzales, of discrimination on the basis of race, sex, religion, national origin, and retaliation.  The narrative portion of the EEOC charge specifically identified 17 incidents of allegedly discriminatory conduct.

The parties do not assert whether this complaint resulted in the EEOC's issuing a Right to Sue notice to Winter; however, it is undisputed that she did not press a lawsuit based on the charges made therein.

**Administrative Salary Reduction Proposed as Budget-Reducing Measure**

After assuming the Superintendent's position, Gonzales informed a group of Taos Schools' administrators and board members that cuts would need to be made in light of a projected budgetary shortfall.  Under one proposal, certain administrative positions would be eliminated outright.  Another proposal called for the existing administrators' salaries to be reduced.  Winter does not dispute that a potential 2.1% salary reduction was discussed at these meetings, and that she was aware that such a salary reduction might be applied to her.

**Winter's Two-Year Contract is Rescinded**

On June 17, 2009, Gonzales issued a letter to Winter informing her that the two-year contract issued to her by DeLong was invalid and would be rescinded. Gonzales' proffered reason for rescinding the contract was that only certified administrators and (at the discretion of the school board) certified school instructors were entitled to work under multi-year contracts. Winter does not specifically dispute that she does not possess a New Mexico educational administrator's license.

**New Contract Provides Winter With Reduced Salary**

On or about July 9, 2009, Winter was presented with a one-year "non-certified personnel contract," in substitution for her rescinded contract, which reflected a 2.1% reduction in her pay. Winter signed the contract but noted in an attached letter to Superintendent Gonzales that she did so "[w]ith reluctance and under duress," noting her belief that "DeLong, as CEO of the school district . . . had the right to hire me under a two-year contract."  (Doc. 214 Ex. 45).

**Winter's Second EEOC Complaint, Which Resulted in a Lawsuit**

On January 15, 2010, Winter filed a second EEOC action against Taos Schools, accusing the District of retaliating against her in violation of Title VII and the NMHRA for filing her previous EEOC complaint.  She noted, *inter alia*; the invalidation of her two-year contract and replacement with a one-year contract; change in status to "a non-certified employee"; and 2.1% decrease in salary.  (Doc. 189 Ex. 1).

On January 27, 2010, the EEOC issued a Right to Sue letter to Winter regarding her complaint.

# LEGAL STANDARD

## <u>Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## Qualified Immunity

Because a successful qualified immunity defense "generally shields from liability for civil damages government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry. First, the Court must determine whether the plaintiff 's allegations, if true, establish a violation of the plaintiff's constitutional rights. *Gomes,* 451 F.3d at 1134. Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred." *Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134. The Tenth Circuit has provided the additional guidance that, under ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), in order for a plaintiff to demonstrate that the law was clearly established. However, in applying the first two prongs of the qualified immunity analysis, "[t]he judges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Finally, if the plaintiff shows that the law is clearly established, the third and final part of the inquiry requires the Court to consider whether, "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that her actions were unconstitutional that she should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

## DISCUSSION

### I. <u>Winter's Retaliation Claim Under Title VII</u>

"Title VII's anti-retaliation provision forbids an employer[1] from discriminating against an employee . . . because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Brown v. Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705, 711 (10th Cir.2012) (quotation omitted).  Under long-standing Tenth Circuit precedent, "supervisors and other employees may not be held personally liable under Title VII." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  *See also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  Thus, the individual School Defendants – Coca-Ruiz, Cordova, Gallegos, and Gonzales – are entitled to summary judgment on the instant claim.  Accordingly, the Court will consider whether Winter has set forth a triable claim that Taos Schools – acting through its agents, the individual School Defendants – retaliated against her for filing an EEOC complaint in violation of Title VII.

---

[1]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]"  42 U.S.C. § 2000e(b).

**A.  The Applicable Standard: the *McDonnell Douglas* Test**

Where there is no direct evidence of retaliation, a Title VII plaintiff's retaliation claim is analyzed under the burden-shifting framework employed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons for the allegedly discriminatory actions are merely a pretext for discrimination.  *See McDonnell Douglas,* 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

**B.  Winter's Prima Facie Case**

As noted above, in order to satisfy the first prong of the *McDonnell Douglas* analysis, Winter must be able to establish a prima facie case of retaliation.  She can meet this burden by showing "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Id.*

**1.  Protected Activity**

It is undisputed that Winter's filing of an EEOC charge was a protected activity within the meaning of Title VII retaliation law.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, plaintiff engaged in protected activity.").

**2.  Materially Adverse Employment Actions**

"An adverse employment action includes acts that constitute a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation omitted). While the Tenth Circuit defines "adverse employment action" liberally, not limiting its application only to actions involving "monetary losses in the form of wages or benefits," a plaintiff must nevertheless "show more than a mere inconvenience or an alteration of job responsibilities." *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).

Winter contends that Taos Schools, acting through the individual School Defendants, allegedly caused her to suffer two materially adverse actions: (1) the Rescission of her two-year employment contract, which was replaced by a one-year contract; and (2) the reduction of her salary by 2.1%.[2] Here, the District does not attempt to meet its initial burden of showing a lack of evidence supporting the position that a reasonable employee would consider these two actions to be materially adverse to her employment prospects. Accordingly, the Court treats the challenged actions as materially adverse for purposes of the instant motion.

_____

[2]Throughout her response, Winter suggests that she has suffered numerous other acts of retaliation by the School Defendants. *See, e.g.,* Doc. 214 at 2 ("There were many acts of retaliation . . . which are detailed in her affidavit"); *id.* at 4 (noting that report prepared by auditor "was designed to place Plaintiffs in a bad light . . . and is an act of retaliation," after failing to set forth any specific facts or argument relating to the audit report); *id.* at 5 (noting that "no meaningful hearing was provided either before or after Plaintiff's contract of employment was invalidated by Gonzales. This is an additional act of retaliation," but failing to offer specific evidence relating to the report or apply the relevant *McDonnell Douglas* analysis); *id.* at 8 (rhetorically noting "what was the purpose of requiring Plaintiffs to sign an affidavit attesting to the date that the contract was signed when Defendants did not intend to honor the agreement[?]," without further elaboration); *id.* at 9 (stating that Cordova retaliated against Winter by "filing a frivolous lawsuit" against her, without providing additional detail or argument). The Court will consider only those alleged adverse actions analyzed by Winter in her response, and treats all other vague, unsupported allegations of retaliation as abandoned.

### 3.  Causal Connection

Similarly, the District does not attempt to show the absence of a causal connection between Winter's filing an EEOC complaint and the adverse actions she allegedly suffered as a consequence.  The Court therefore treats Winter's prima facie claim as established for purposes of the instant motion.

## C.  The District's Legitmate, Nondiscriminatory Reason for the Adverse Employment Actions and Winter's Attempt to Show Pretext

### 1.  Rescission of Winter's Two-Year Contract

The District proffers a facially nondiscriminatory reason for Gonzales' decision to rescind the two-year contract issued to Winter by his predecessor and replace it with a one-year contract –  that Winter "concedes that she does not have a New Mexico educational administrator's license," as required by State law for entry into a multi-year contract.  (Doc. 189 at 9); *see also* New Mexico School Personnel Act ("the Personnel Act"), NMSA (2006) § 22-10A-21(B)(4) (providing that "[a]ll employment contracts between local school boards and certified school personnel . . . shall be for a period of one school year," with few exceptions, including, *inter alia,* that "contracts not to exceed three years are permitted for certified school administrators in public schools who are engaged in administrative functions for more than one-half of their employment time").

To defeat the instant motion, Winter must set forth evidence from which a reasonable jury could conclude that the proffered nondiscriminatory reason for the Rescission is pretextual. *See Pinkerton v. Colo. Dept. of Transp*., 563 F.3d 1052, 1065 (10th Cir. 2009) ("to establish a genuine issue as to pretext, [plaintiff] must demonstrate that [defendant's] proffered non-discriminatory reason is unworthy of belief") (quotation omitted).  Winter "can meet this

10

standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the District's proffered justification for the Rescission "that a reasonable factfinder could rationally find [it] unworthy of credence." *Pinkerton,* 563 F.3d at 1065 (internal quotation marks and further citations omitted).

As evidence of pretext, Winter notes that she was "not a certified administrator and hence the [provisions related to certified employees should] not apply" to her. (Doc. 214 at 6). The Personnel Act explicitly states that only "certified school administrators" and "certified school instructors in public schools who have been employed in the school district for three consecutive school years" are entitled to multi-year contracts. NMSA § 22-10A-21(B)(4)-(5). While Winter's meaning is not entirely clear, she appears to suggest that, because was a *non-certified* school employee who did not require administrative certification in order to perform her job, the relevant portion of the statute, NMSA § 22-10A-21(B), does not apply to her. This argument lacks merit, and is insufficient to show pretext. Winter does not dispute that she is correctly categorized under the Personnel Act as "a non-certified school employee employed to perform primarily district wide management functions." *Id.* at 8, citing NMSA § 22-10A-26(C). The Personnel Act excludes this category of employees from only certain of its provisions – specifically, §§ 22-10-12 -- 22-10-14.1[recompiled] – which relate to termination decisions and procedures and reemployment procedures, not the duration of employment contracts. *See* NMSA § 22-10A-26. Thus, the employment contracts of "non-certified school employees" who "perform primarily district-wide management functions" must still comply with § 22-10A-21, which limits the administration of multi-year contracts to other categories of employees.

Next, Winter suggests that "even if the two-year agreement is not allowed, that fact would merely invalidate the second year of the agreement, not the entire agreement." (Doc. 214

at 6). In support of her position, she cites *Ritchey v. Gerard,* 152 P.2d 394, 397 (N.M. 1944), in which the New Mexico Supreme Court held that an otherwise legal contract's inclusion of a divisible illegal clause did not void the rest of the contract. *Id. Ritchey* is plainly inapposite. The instant case involves measures taken to correct an employee's working under an invalid contract,[3] not a single invalid provision that could be stricken from an otherwise legal contract. "A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication." *Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 494 (1994) (quotation omitted).

Finally, Winter contends that her contract should not have been rescinded "without a Board RIF policy being followed."[4] (Doc. 214 at 6). Winter does not explain what she means by this statement, or attempt to set forth an argument that the Rescission was a violation of school board policy.

Thus, the Court finds that the District is entitled to summary judgment on this aspect of Winter's Title VII claim.

---

[3]Throughout the briefing, the parties use two terms of contract law -- "invalid" and "void" – interchangeably. An "invalid contract" is defined as "[a]n agreement that is either void *or* voidable," while a "void contract" is defined as "a contract that is of no legal effect, so that there is really no contract in existence at all," and a "voidable contact" is defined as a "contract that can be affirmed or rejected at the option of one of the parties." BLACK'S LAW DICTIONARY (9th ed. 2009) (emphasis added). Because the Court need not reach the issue of whether the two-year contract was invalid from the outset, and thus never had any legal effect, or whether it became invalid once Gonzales rejected it as inapplicable to Winter, the Court uses the more inclusive term "invalid."

[4]While Winter attaches to her response what appears to be a lengthy excerpt from Taos Schools' Policy Manual titled "Reduction-In-Force (R.I.F.)," (Doc. 214 Ex. 6), she does not attempt to show how this document supports her retaliation claim. The Court will not attempt to make out a Title VII claim for her.

**2.  2.1% Salary Reduction**

With respect to Taos Schools' decision to reduce Winter's salary by 2.1%, the District

contends that the decision was legitimate and nondiscriminatory because "adjusting salaries

based on the available budget was explicitly allowed per the terms of the 'School Administrator'

form contract. . . . The pay cut was imposed across the board to all administrators, and this was

done in the face of a longstanding budgetary shortfall of which [Winter was] well aware."  (Doc.

189 at 10).  The Court agrees that, even if Winter's two-year contract was valid before it was

ultimately repudiated by Gonzales, *see* n. 3, it expressly provided that the salary recited therein

would be paid to her "subject to the provisions of the applicable approved budget" and allowed

for "appropriate district salary adjustment[s]."  (Doc. 214 Ex. 7 ¶ 8).

> As evidence of pretext, Winter's response states only that the School Defendants
>
> hired additional personnel, increased the Full Time Employees, added $180,000
> to the budget for employees and cut about $10,000 by the 2.1% reduction.
> Clearly the action was to slap the Plaintiffs in the face.  This inference is raised
> especially when other non-plaintiff administrators actually received raises in the
> form of increments to their pay.

*Id.* at 6 (citing Winter's own *Fact No. 4*).  Winter does not follow up this statement with any

argument describing these purported discrepancies or explaining how they support her retaliation

claim. With respect to the first part of her statement, it appears that Winter means to allege that,

while the salary reduction applied to her and other Plaintiffs – all of whom occupied

administrative roles – saved the District only $10,000, the District added $180,000 to the budget

in salaries for newly-hired employees.  However, Martinez makes no attempt to support this

statement with specific facts, and offers no evidence that the "additional personnel" hired by the

District were similarly situated to Plaintiffs.

With respect to her statement that "other non-plaintiff administrators actually received

raises in the form of increments to their pay," Winter cross-cites to her own declaration, in which she identifies, *inter alia,* four individuals – Roger Harrington, Carolyn Lavadie, Michael Regnier, and Rae Lujan, all of whom she refers to only as "non-certified employee(s) performing district-wide functions" – whom she contends did not experience a salary reduction. *Id.,* Ex. 1 Winter Aff. ¶¶ 26, 32..  Winter also provides 2008-2009 and 2009-2010 contracts for these individuals which appear to support her position. *Id., Exs.* 48-55.  The Court finds Winter's evidence insufficient to show a triable claim for Title VII retaliation.  Winter does not assert whether or not any of the four named individuals filed an EEOC claim against the School Defendants – the act that she contends provided the basis for the challenged reduction.  Neither does she offer any evidence to support her otherwise conclusory assertion that the four individuals were within the class of "administrators" to whom the reduction was to be applied. Therefore, in the absence of any evidence of pretext sufficient to set forth a triable claim for retaliation, the Court finds that summary judgment should be granted to the District as to Winter's Title VII claim.

**II.  Winter's Retaliation Claim Under the NM Human Rights Act**

The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ("NMHRA"), are "actually identical" to the requirements set forth by Title VII. *See, e.g., Gioia v. Pinkerton's Inc.,* 194 F.Supp.2d 1207, 1220 (D.N.M. 2002).  Thus, for the reasons set forth above, the Court finds that the School Defendants are also entitled to summary judgment on Winter's claim for retaliation under the NMHRA.

**III.  Breach of Contract**

There are two aspects to Winter's claim for breach of contract.  First, she argues that the two-year contract she signed in February 2009 was valid, and thus was breached by its rescission.  Second, she argues that the reduction of her salary by 2.1% also constituted a contractual breach.  Winter does not specify which of the School Defendants she alleges breached her contract.

## A.  Rescission of Winter's Two-Year Contract

For the reasons set forth, *supra*, in relation to Winter's retaliation claim, the Court finds that no question of fact exists as to the reason for Gonzales' decision to rescind her two-year contract.  It is undisputed that Winter was not a certified administrator at the time the contract was executed, and New Mexico law provides that multi-year contracts should only be executed for "certified school administrators in public schools who are engaged in administrative functions for more than one-half of their employment time" or "certified school instructors in public schools who have been employed in the school district for three consecutive school years."  NMSA § 22-10A-21(B)(4)-(5).  Because the contract was invalid as applied to Winter, the decision to rescind and replace it with a one-year contract was not a breach.

## B.  2.1% Salary Reduction

As to Winter's claim that the District's reduction of her salary by 2.1% of the figure set forth in her February 2009 contract constitutes a breach, the Court disagrees.  Under New Mexico law, "[a] contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions."  *LensCrafters, Inc. v. Kehoe*, 2012 N.M. LEXIS 243, at *12 (N.M., June 14, 2012).  "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent."  *Id.*; *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704 (1993) ("The purpose, meaning and

intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive") (quotation omitted).  Here, as noted above, Winter's two-year form contract clearly and unambiguously provided that she would earn an annual salary of $64,690, "[s]ubject to the provisions of the applicable approved budget. . . . In the event that the Administrator is employed on a two (2) year contract, [it] will be amended in the first and second year to reflect any appropriate district salary adjustment factors." (Doc. 214 Ex. 7 ¶ 8).

As evidence that there is no factual dispute that the pay reduction occurred due to a budgetary shortfall, the School Defendants proffer deposition testimony from several Plaintiffs that concerns about the District's financial situation and the possibility of an across-the-board 2.1 % salary decrease for Taos Schools' administrators had been repeatedly discussed at meetings of the school board in Spring 2009, as an alternative to eliminating certain administrators' positions outright.  *See, e.g.,* Doc. 189 Ex.4 Collins Dep. At 120:7-121:15; *see also id.* Ex. 7 Gallegos-Jaramillo Dep. at 165:4-65:19.  Winter herself does not dispute that she was aware of both the budgetary shortfall and the likelihood of a salary adjustment.

For her part, Winter does not set forth a theory of how the pay reduction constituted a breach of contract.  *See* Doc. 214 at 13 (stating that "[t]he contract was breached at least in regard to the 2.1% reduction for the first year of the two[-]year agreement," without further elaboration).  Indeed, she fails to address the provision that explicitly excused the District from paying the salary set forth therein in the event of budgetary deficiencies, let alone set forth evidence that such deficiencies were not the reason for the reduction.  Winter's conclusory allegation is plainly insufficient to create a genuine dispute as to whether her contract – assuming, *arguendo,* that it was valid at the time it was entered – was breached.

Accordingly, the Court finds that the School Defendants should be granted summary judgment on Winter's claim for breach of contract.

## IV.  Breach of the Covenant of Good Faith and Fair Dealing

"Under New Mexico law, 'every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.'" *Mt. Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010), quoting *Sanders v. FedEx Ground Package Sys., Inc*., 144 N.M. 449, 452 (N.M. 2008).  The parameters of Winter's breach-of-covenant claim are unclear.  In support of their motion, the School Defendants assert that they should be granted summary judgment because the implied covenant "prevents a party from acting in bad faith to frustrate the contract's actual benefits," and that Winter cannot show she lost any benefit to which she was contractually entitled (i.e., a contract of two years' duration or an unreduced salary).  (Doc. 189 at 17, quoting *Henning v. Rounds,* 142 N.M. 803, 808-809 (N.M. App. 2007)).

In her response, Winter does not dispute that she cannot show deprivation of the benefits of her contract.  Rather, she asserts that the School Defendants breached the covenant by demanding that she sign an affidavit, "when there was no intent to comply with the agreement" – a maneuver that was "designed to cheat [her] out of her contractual rights and hence a violation of the covenant of good faith and fair dealings."  (Doc. 218 at 13).  However, Winter does not describe the underlying agreement to which she refers, explain who she accuses of not intending to comply with it, or argue how that amounts to a breach of the covenant of good faith.[5]  The

---

[5]Winter attaches to her brief an affidavit dated July 8, 2009, in which she attests that she signed her rescinded two-year contract on February 20, 2009.  (Doc. 214 Ex. 8).  Winter does not

remainder of her argument is devoted to reproducing sizable excerpts from two New Mexico cases in support of the principle that, in this State, a claim for violation of the covenant of good faith and fear dealing is "valid in the public employment context if the employee was not at will," without any discussion of how the underlying facts of this case support a breach-of-covenant claim.  (Doc. 218 at 13-14, quoting *Henning,* 142 N.M. at 808-809, and *Planning and Design Solutions v. City of Santa Fe*, 118 N.M. 707 (N.M. 1994)).

     The Court finds that summary judgment should be granted to the School Defendants on this claim.  There does not appear to be any evidence in the record that the implied covenant was breached; indeed, Winter has not even articulated a coherent theory of *how* the covenant was breached.  Accordingly, the Court concludes that there is no genuine issue for trial as to this claim.


**V.  Winter's Procedural Due Process Claim under 42 U.S.C. § 1983**

     Finally, Winter claims that the School Defendants violated her Fourteenth Amendment procedural due process rights.[6]  Procedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). There are two elements of a Section 1983 claim for deprivation of procedural due process.  The plaintiff must establish that "(1) [s]he was deprived of an individual interest that is encompassed

---

attempt to argue how the affidavit supports her breach-of covenant claim, and the Court will not attempt to make out such a claim for her.

     [6]Winter has waived her additional claim for Fourteenth Amendment due process violation of a protected liberty interest.

within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide due process of law." *See Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 194 (3d Cir. 2009).  Here, Winter contends that the School Defendants deprived her of her property interest in (A.) a two-year employment contract and (B.) the salary it provided.

## A.  Winter Did Not Have a Property Interest in an Invalid Two-Year Contract

As discussed at length, *supra*, there is no evidence in the record that Superintendent Gonzales erred in rescinding Winter's two-year contract, when it is undisputed that she lacked the certification required to enter into a contract for that duration of time.  *See Hulen v. Yates,* 322 F.3d 1229, 1240 (10th Cir. 2003) ("[C]onstitutionally protected property interests are created and defined by statute, ordinance, **contract**, implied contract and rules and understandings developed by state officials") (per curiam) (emphasis added).  Thus, the School Defendants are entitled to summary judgment on this aspect of Winter's due process claim.

## B.  The Individual School Defendants are Entitled to Qualified Immunity on Winter's Claim That the Salary Reduction Violated Her Procedural Due Process Rights

With respect to Winter's claim that her salary reduction constituted a procedural due process violation, the individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales – contend that they are entitled to qualified immunity, while Taos Schools contends that Winter cannot show that it is liable under § 1983 for the alleged actions of its Superintendent in instituting the reduction.

"In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) 'the facts taken in the light most favorable to the plaintiff show that the

defendant's conduct violated a constitutional right' and (2) 'the right violated was clearly established.'" *Webb v. Padilla*, 2009 U.S. Dist. LEXIS 101489, at *51 (D.N.M. Sept. 30, 2009), quoting *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id.* (quotation and further citations omitted). Thus, only if Winter meets her burden of demonstrating both that the individual School Defendants' actions violated a constitutional right and that the right was clearly established at the time of the alleged conduct, will the School Defendants, as the moving parties, be required to satisfy the usual summary judgment standard by showing that there are no genuine issues of material facts and that they are entitled to judgment as a matter of law. *See id.; see also Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

The Court finds that Winter has not presented sufficient evidence to survive summary judgment on this portion of her claim. As an initial matter, Winter makes no attempt to establish that she had a protected interest in the salary set forth in her original, rescinded contract. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it," which must arise from a source independent from the Constitution, such as a contract or state statute. *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). Instead, Winter wholly ignores the first prong of the procedural due process analysis and addresses only the issue of whether she was afforded appropriate process.

Even assuming, *arguendo,* that Winter had shown that she possessed a protected interest in her pre-reduction salary, the law is not clearly established that she was entitled to the level of process she claims to have been improperly denied. "An essential principle of due process is

that a deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009), quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  According to the Supreme Court, the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Loudermill*, 470 U.S. at 542 (emphasis in the original).  However, "a full evidentiary hearing is not required prior to an adverse employment action."  *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992).  Rather, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond."  *Id.*

Here, Winter does not dispute that she had the opportunity to voice her objections to the proposed salary reduction at a series of open meetings before the reduction took effect. However, she contends that she was entitled to "a full-blown adversarial [ ] hearing," at which she could have questioned the School Defendants under oath as to whether the reduction would apply or was applied to other administrators besides Plaintiffs.  (Doc. 214 at 10).  In support of her position, Winter purports to rely on the "Taos Municipal School District Board of Education Policy Manual, Reduction-in-Force 227-1," which she attaches to her response brief.  However, Winter fails to offer any argument as to how this portion of the Manual supports her claim.  She further cites to the New Mexico Administrative Code (NMAC) § 6.67.3, without explaining its relevance to her position.  *Id.*  The Court has reviewed the cited section of the NMAC, which codifies the requirements for "termination or discharge of licensed school personnel when reduction in personnel is required," and finds that it is irrelevant to the question of whether an adversarial hearing is required in the situation at issue, and thus would not have put the individual School Defendants on notice that they could not reduce Winter's salary without

providing her a full-blown adversarial hearing.

As Winter has not met her burden of proving that the property right of which she was allegedly deprived (if it existed) was clearly established, the individual School Defendants – Cordova, Coca-Ruiz, Gallegos, and Gonzales -- are entitled to summary judgment on the basis of qualified immunity as to her due process claims.

**C. Taos Schools is Also Entitled to Summary Judgment on Winter's Claim That the Salary Reduction Violated Her Procedural Due Process Rights**

Winter's procedural due process claim against Taos Schools must be analyzed under the usual summary judgment standard, which places on the District the initial burden of showing the lack of a genuine factual dispute as to whether it violated her due process rights.

The District contends that it is entitled to summary judgment on the instant claim because Winter cannot show that any of its employees violated her constitutional rights pursuant to an official policy. While a school district is not immune from being sued under § 1983 suit in a federal court, it can be held "liable only if the violation of a plaintiff's federal rights results from an action taken under an official custom or policy." *Douglas v. Beaver County Sch. Dist. Bd.*, 82 Fed. Appx. 200, 203 (10th Cir. 2003), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). Thus, a plaintiff suing a school district under § 1983 for the allegedly unconstitutional acts of one of its employees must prove: (1) that a district employee committed a constitutional violation, and (2) that an official policy or custom was the moving force behind the constitutional deprivation. *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). In the case where a plaintiff seeks to impose entity liability on a school district on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with final authority to

establish official district policy with respect to the action ordered.  *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-84 (1986).  In addition to demonstrating conduct properly attributable to the school district, "[t]he plaintiff must also demonstrate that through its deliberate conduct, the [district] was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the [district's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [district's] action and the deprivation of federal rights."  *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997).

For the reasons set forth above, the Court finds that no genuine issue of material fact exists over whether a District employee – Superintendent Gonzales – violated Winter's constitutional rights by reducing her pay.  As set forth above, the School Defendants have proffered evidence that the contract explicitly allowed for salary adjustments to be made in the event of a budgetary shortfall, and that Winter was aware in advance of the District's instituting the adjustment that such a shortfall existed.  For her part, Winter has failed to set forth sufficient evidence that her salary was reduced for reasons other than deficiencies in the District's budget.  Consequently, the Court finds that Winter lacked a legal entitlement to the unreduced salary sufficient to create a protected interest.  *See Hulen,* 322 F.3d at 1240 ("constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials.").  Thus, because there is no evidence that Winter had a protected property interest in the salary set forth in her February 2009 contract, the Court need not reach the question of whether she was afforded an appropriate level of process.

Accordingly, because Winter has failed to set forth evidence from which a reasonable jury could conclude that a District employee violated her constitutional rights, the Court need not reach the issue of whether the District was the "moving force" behind the violation.

23

**C. Winter's Purported Conspiracy Claim**

In the same section of their brief devoted to Winter's procedural due process claim, the

School Defendants argue that summary judgment should be granted against her on her "related

conspiracy claim." (Doc. 189 at 14). Winter does not set forth a separate cause of action

alleging that the School Defendants engaged in a civil conspiracy against her, and the School

Defendants note that she "does not specify whether she brings her conspiracy theory under New

Mexico state law, federal law, or both." *Id.* It appears that this portion of the School

Defendants' motion is based on the following language in the Amended Complaint:

> Defendants Arsenio Cordova, Lorraine Coca-Ruiz, Stella Gallegos, acting
> through and in conspiracy with Defendant Roberto J. Gonzales and Defendant
> Peter Baston conspired on behalf of Defendant [Taos] School[s] in violation of 42
> U.S.C. § 1983 to violate Plaintiffs' due process rights and as such are liable for
> punitive damages.

(Doc. 106 Am. Cplt. ¶ 309). In her response, Winter clarifies her contention that Superintendent

Gonzales conspired "to deny her due process [along] with Baston and IDEAS."[7] (Doc. 214 at

11). She asserts, in conclusory fashion, that

> The timing of [the School] Defendants' acts in hiring Baston and the nature of the
> IDEAS Report which denigrates each of the Plaintiffs, mentions their EEOC
> charge negatively, and identifies the 2.1% pay cut are sufficient to infer a
> conspiracy between Baston, IDEAS and Gonzales for [Taos Schools] against
> [Winter].

*Id.* Winter does not, however, set forth any specific evidence in support of what appears to be

her theory that her due process rights were violated by the IDEAS Defendants' publication of

_____

[7]Peter Baston and IDEAS were hired by the District to perform an internal quality-
assurance audit in 2009. The IDEAS Defendants are not parties to the instant motion, and have
separately moved for summary judgment on the only claim still pending against them, for
defamation.

several reports detailing their findings in the Spring and Summer of 2009.  Neither does she

identify a protected property interest or explain what level of process she was due or how it was

denied by the alleged conspiracy.  Thus, because Winter has not set forth a triable claim for

violation of her procedural due process rights, her related claim for conspiracy to commit a due

process violation necessarily fails.


**CONCLUSION**

Therefore, for the reasons set forth above, the Court finds that the School Defendants'

*Consolidated Motion and Memorandum for Summary Judgment and Qualified Immunity on*

*Complaint by Esther Winter* (Doc. 189) is **GRANTED.**


UNITED STATES DISTRICT COURT JUDGE