IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE COLLINS, Ph.D.,
LORETTA DeLONG, Ed. D.,
SANDRA A. GARCIA, LUCILLE
GALLEGOS-JARAMILLO, Ph.D.,
JEANELLE S. LIVINGSTON,
MARIA CHAVEZ-MEDINA, ROSE
M. MARTINEZ, MARY ANN
McCANN, ELIZABETH A.
TRUJILLO, NADINE M. VIGIL,
and ESTHER C. WINTER,

          Plaintiffs,

v.                                    No. CIV. 10-407 JCH-LFG

TAOS BOARD OF EDUCATION,
TAOS MUNICIPAL SCHOOL
DISTRICT; ARSENIO CORDOVA;
LORRAINE COCA-RUIZ;
STELLA GALLEGOS; ROBERTO J.
GONZALES; PETER BASTON; and
IDEAS BUSINESS TECHNOLOGY
INTEGRATION, LLC,

          Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      THIS MATTER comes before the Court on ten motions for summary judgment, filed by

IDEAS Business Technology Integration, LLC ("IDEAS") and Peter Baston (collectively,

"IDEAS" or "the IDEAS Defendants") against all but one[1] of the eleven Plaintiffs in this case:

*Motion for Summary Judgment with Respect to Claims of Plaintiff Loretta DeLong, Ed.D.* (Doc.

---

[1]Plaintiff Sandra Garcia has not asserted a claim against the IDEAS Defendants; accordingly, they do not seek summary judgment against her. The remaining Defendants in this case (i.e., "the School Defendants") have separately moved for summary judgment against all Plaintiffs, including Ms. Garcia. (Docs. 159, 160, 181-189). The Court will address the School Defendants' motions by separate opinion.

170), *Motion for Summary Judgment with Respect to Claims of Plaintiff Lucille Gallegos-Jaramillo, Ph.D.* (Doc. 171), *Motion for Summary Judgment with Respect to Claims of Plaintiff Nadine M. Vigil* (Doc. 172), *Motion for Summary Judgment with Respect to Claims of Plaintiff Mary Ann McCann* (Doc. 173), *Motion for Summary Judgment with Respect to Claims of Plaintiff Maria Chavez Medina* (Doc. 174), *Motion for Summary Judgment with Respect to Claims of Plaintiff Catherine Collins, Ph.D.* (Doc. 175), *Motion for Summary Judgment with Respect to Claims of Plaintiff Jeanelle S. Livingston* (Doc. 176), *Motion for Summary Judgment with Respect to Claims of Plaintiff Rose M. Martinez* (Doc. 177), *Motion for Summary Judgment with Respect to Claims of Plaintiff Esther C. Winter* (178), *Motion for Summary Judgment with Respect to Claims of Plaintiff Elizabeth A. Trujillo* (179).  The Court having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the IDEAS Defendants' motions should be granted in part and denied in part.

## RELEVANT FACTUAL BACKGROUND

This case arises out of a long series of incidents, most of which need not be addressed here.  Plaintiffs are current or former school administrators of the Taos Municipal School District (hereinafter, "Taos Schools" or "the District") who filed discrimination charges against the District with the Equal Employment Opportunity Commission (EEOC) in Spring 2009.  Plaintiffs contend that their filing of EEOC charges prompted the School Defendants to undertake a series of retaliatory acts against them, including hiring the IDEAS Defendants to perform a false and misleading quality assurance audit of the District, with the goal of publicly maligning them.  The IDEAS Defendants seek summary judgment on the only claim asserted

against them -- Plaintiffs' Count IV for defamation.[2]  The factual background underlying

Plaintiffs' defamation claims is set forth below.

## Superintendent DeLong Enters Into Contracts With the Other Plaintiffs

At the commencement of the events in issue, Plaintiff Loretta DeLong was Taos Schools'

Superintendent.  The remaining Plaintiffs had each recently entered into a new, two-year

contract with Taos Schools to serve in an administrative role: Catherine Collins, as a Federal

Program Coordinator; Lucille Gallegos-Jaramillo, a school Principal; Janelle Livingston, an

"Exceptional Program" Coordinator; Maria Chavez-Medina, a Health Services Coordinator;

Rose Martinez, a Director of Instruction; Mary Ann McCann, a Student Nutrition Coordinator;

Elizabeth Trujillo, a Finance Director; Nadine Vigil, a school Principal; and Esther Winter, a

Director of Personnel.  (It is unclear which, if any, Plaintiffs were new employees, and which

were continuing employees who signed new contracts.).  DeLong signed each of these contracts

on behalf of the school district.

The date(s) that DeLong and the other Plaintiffs entered into these employment contracts

is disputed by the parties.  Plaintiffs contend that the contracts were entered into on February 20,

2009.  The IDEAS Defendants concede that, on their face, the contracts appear to have been

signed on February 20, 2009.  They suggest, however, that other evidence suggests that the

contracts were entered into at a later time and intentionally backdated.  *See infra* at 7-8.

## School Board Calls for DeLong's Termination, Suspends Her; Unidentified Administrators Bring Discrimination Charges Against Certain School Defendants

On February 25, 2009, Taos Schools held a Board meeting at which certain Board

---

[2]Plaintiffs' consolidated response brief states that they "do not oppose the dismissal" of their alternative claim that the IDEAS Defendants' conduct constitutes a prima facie tort under New Mexico State law.  (Doc. 211 at 21).

members sought DeLong's resignation, which she declined to submit.  Following the meeting,

on February 26, 2009, *The Taos News* reported that "a group of Taos Municipal School District

administrators," not identified by name, had filed complaints against two Board members,

School Defendants Arsenio Cordova and Lorraine Coca-Ruiz.  (Doc. 171 Ex. C2).  The

newspaper reported that the complaints "were sent two weeks ago to a variety of state and

federal agencies, including the Office for Civil Rights, the Equal Employment Opportunity

Commission, the Department of Labor," in addition to State Secretary of Education Veronica

Garcia and the American Civil Liberties Union.  *Id.*  The allegations in these complaints were

not set forth at length, but reportedly included, *inter alia*, charges that Cordova and Coca-Ruiz

used "racial slurs" and engaged in "abusive or threatening behavior" and "circumvented the

district's chain of command."  *Id.*

On March 9, 2009, Taos Schools placed DeLong on administrative leave.  The District's

proffered reasons for the suspension are not included in the record on the instant motions.

**The IDEAS Defendants Enter Into Contract with the School Defendants**

Peter Baston is the Chief Executive Officer of IDEAS, a consulting business with "a

particular focus on the integration of information technology into business practices," including

within school districts.  (Doc. 170 Ex. A).  On March 16, 2009, IDEAS entered into a contract

with Taos Schools to "conduct an independent program and project analysis for [Taos Schools]

through a process quality assurance audit."  (Doc. 170 Ex. C).  The contract called for the

analysis to evaluate the infrastructure of Taos Schools with respect to its ability to "provide an

environment that supports educational excellence"; to "identify problems, issues and

weaknesses" with staff functions and operational functions; and to offer "solutions and potential

improvements" to any identified problems.  *Id.* at 8.

4

**Plaintiffs Bring EEOC Discrimination Charges Against School Defendants**

Plaintiffs, including DeLong, filed EEOC discrimination charges against Taos Schools and individual School Defendants Cordova and Coca-Ruiz at some point between February and June 2009.  While Plaintiffs assert that they filed their EEOC charges in May or June 2009 – a timeline that is not disputed by the IDEAS Defendants –  this appears to be inconsistent with other evidence in the record, including *The Taos News'* February 26, 2009 report that a group of unidentified administrators brought EEOC charges against Cordova and Coca-Ruiz "two weeks ago," *see supra* at 4, and Plaintiffs' additional allegation that "[a] gag order was issued . . . on April 9, 2009 to all administrators who had filed an EEOC complaint . . . this action was in retaliation for filing the EEOC complaint." (Doc. 106 Am. Cplt. ¶ 38).

The substance of Plaintiffs' discrimination allegations are not set forth in the summary judgment record.

**Further Media Coverage of Discord Between Plaintiffs and the School Defendants**

On March 9, 2009, *The Taos News* reported on the "mess at the top" of Taos Schools, following DeLong's suspension by the School Defendants.  (Doc. 173 Ex. A4).  The paper described how the Board had organized an "emergency meeting" for the purpose of discussing DeLong's status at the District, which "turned into a community meeting where more than 300 people voiced varied concerns about the District, and most attendees seemed to support retaining DeLong."  *Id.*   The article went on to note that Cordova and Coca-Ruiz "have been accused of micro-managing the district and trying to force DeLong to resign," in a complaint filed with various state and federal agencies.  *Id.*  Each of the complainants (including, but not limited to, Plaintiffs) was identified by name and title.  However, only Superintendent DeLong's allegations of "hostility and racism" were described.  The article further noted that Special Education

Coordinator Livingston told the paper that "Cordova had intimidated and bullied her in the past," but "declined to list specific incidents" with respect to any Defendant's conduct; none of the other Plaintiffs were quoted or mentioned as having been interviewed.  *Id.  The Taos News* further reported that New Mexico Secretary of Education Veronica Garcia "threatened to suspend the Board's authority if it does not conduct itself differently."  *Id.*

On April 27, 2009, *The Taos News* reported that "a group of 11 administrators" had filed a complaint against the School Defendants with the EEOC.  (Doc. 173 Ex. B4).  It further identified some of the allegations made by certain members of the group – specifically, Superintendent DeLong, elementary school Principals Vigil and Gallegos-Jaramillo, and Special Education Coordinator Livingston, who, the article briefly noted, "accuses Cordova of breaching confidentiality by talking about specific students and situations."  *Id.*

**IDEAS' Contract is Amended**

On May 13, 2009, IDEAS' contract with the District was amended to reflect the fact that two of the School Defendants – Coca-Ruiz and DeLong's replacement, Acting Superintendent Roberto J. Gonzales – had "raised additional questions regarding matters that were not included in the original scope of work."  (Doc. 170 Ex. D).  Under its revised mandate, IDEAS was additionally tasked with "conduct[ing] a detailed analysis of the processes and procedures of specific departments" within Taos Schools, as identified by the Acting Superintendent, and issuing "a formal written report of the results."  *Id*.

**The IDEAS Reports**

Throughout Spring and early Summer 2009, IDEAS issued a series of preliminary reports regarding specific issues facing Taos Schools.  Many of the findings set forth in these preliminary reports were combined in a July 8, 2009 omnibus report ("the July Report"), which

6

IDEAS presented in summary fashion to the Taos School Board.  The July Report was subsequently revised, updated, and reissued on August 26, 2009 ("the August Report").  The July and August Reports were further published on the internet.  While the Amended Complaint lists dozens of (apparently non-exhaustive) "examples" of defamatory statements made about Plaintiffs in the IDEAS Reports, Plaintiffs' responses to the instant motion argue only that they have set forth a triable defamation claim with respect to two of these statements:[3]

### (1) Statement Alleging Accounting Software Tampering

In its May 1, 2009 "Preliminary Report in Findings in Finance," IDEAS claimed that a Taos Schools' Finance Department employee improperly turned off the audit-logging function of the District's accounting software.[4]  IDEAS concluded that DeLong either allowed the logging function to be turned off or "lacked the management understanding" to recognize that the logging function was not properly implemented.  According to IDEAS, these actions created "a very large risk" that Taos Schools "would be entirely liable for any losses":

> Network logs show that audit logging was turned off in [the accounting software] approximately 6 months ago.  When queried for 'a copy of the log files showing who has accessed what inside [the accounting software] over the past six months,' the Finance Director [i.e., Plaintiff Trujillo] replied that 'A log file showing who has accessed what inside [the software] over the past six months cannot be provided.  The 2x software does not allow for this[;] however, when we upgrade to [a different software] we will have that capability.'  An IDEAS analyst followed up with [the software manufacturer's] Customer Service, who advised us that all [the accounting software's] installations have audit logging turned on

---

[3]*See discussion of the abandoned aspects of Plaintiffs' claims, infra* at 11-13.

[4] The IDEAS Defendants stress that the May Report, which was addressed to Interim Superintendent Gonzales, included the disclaimer that it was a "draft" that existed "for the sole use of the addressed recipient[s] and may contain confidential and privileged information." (Doc. 170 at 18).  While it is unclear whether the findings at issue were repeated in the longer July Report, which was published at a Taos Schools Board Meeting and on the internet, it is undisputed that they did not appear in the August Report.

by default, that it was 'unheard of' for the function to be turned off and there could be no conceivable reason for doing so.

Turning off audit logging in the districts [sic] primary financial systems **disables user audit capabilities and creates a very large risk [of] management exposure,** as it is highly unlikely that any insurance company would even consider a claim if evidence of fraud is uncovered and the district would be entirely liable for any losses.  **Either Dr. DeLong was aware of this and permitted it, or she was unaware of it and lacked the management understanding to ask the right questions and verify that logging was fully implemented**.

(Doc. 170 Ex.L) (emphasis added).

The parties do not dispute that the conclusions arrived at in the quoted section of the Report were, in fact, erroneous. According to the IDEAS Defendants, the quoted passage did not appear in "subsequent reports, because later conversations with more senior representatives of the software manufacturer contradicted the information that IDEAS had originally received [which led IDEAS to conclude that the audit function had been intentionally disabled]."  (Doc. 170 at 18).  The extent of the error is unclear from the record, though the IDEAS Defendants do not specifically dispute Plaintiffs' contention that "there was no audit function" for the type of software used by Taos Schools.  (Doc. 200 at 2).

**(2) Statements Concerning DeLong's Contracts With the Remaining Plaintiffs**

In the August Report, IDEAS described a possible discrepancy between the actual date(s) that DeLong entered into employment contracts with the remaining Plaintiffs and the dates that appeared on the contracts.  In a section detailing the District's contracting process, the Report initially stated that "[i]n February 2009, contracts for administrators . . . were signed by then Superintendent Loretta DeLong."  (Doc. 170 Ex. E at 64); *see also* Doc. 211 Ex.1, IDEAS' May 19, 2009 "Preliminary Report on Findings' Regarding Administrators' Contracts" (stating that the personnel files of several Plaintiffs contained "two[-]year employment contracts signed by

Dr. DeLong prior to her suspension in February").

One paragraph below, however, IDEAS recited how its Information Technology experts had discovered information tending to cast doubt on the date the contracts were "purportedly signed":

> IDEAS requested and received an electronic copy of the template purportedly used to create the February 2009 contracts. The document was imbedded in an email, but when it was extracted intact, our IT experts were able to read the creation date of the template as March 18, 2009, almost a full month after they were purportedly signed. This information has been placed in the hands of [Taos Schools'] legal counsel.

(Doc. 170 Ex. E at 65). The Report went on to list each of the Plaintiffs by name, and identify them as a parties to the disputed contracts. *Id.*

The parties dispute the accuracy of the Report's conclusion. Plaintiffs contend that the quoted passage amounts to a charge of tampering with public records, which they vigorously deny. Plaintiffs point to a May 19, 2009 e-mail from IDEAS' managing partner, Lilli Segre, to Plaintiff Winter, in which Segre requested that Winter "send me any contract templates that have been updated for 2009-2010" as evidence that IDEAS never requested the specific template used to create Plaintiffs' own contracts. (Doc. 170 Ex. N). Further, Plaintiffs point out that DeLong was already on administrative leave on March 18, 2009, the date the August Report suggests that the contracts were created. Plaintiffs note that Segre has both acknowledged that she was one of the "IT experts" who made the disputed findings, (Doc. 211 Ex. 2, Segre Dep. at 103:4-103:12), and admitted that none of her professional certifications is in the area of Information Technology. *Id.* at 144-147. Finally, Plaintiffs offer evidence that they claim shows that IDEAS doubted the accuracy of their accusation at the time it was made. *See* Doc. 211 Ex. 4 (notes produced by IDEAS in the instant case, which include comments made by Segre on July 27,

2009 – the month before the August Report was issued – suggesting that Peter Baston stated "that there is still doubt that these contracts are all invalid" and outlining steps that would need to be done "to obtain satisfactory . . . evidence of what actually transpired with these documents.").

The IDEAS Defendants concede that the template they obtained may not have been the template from which Plaintiffs' contracts were created. *See* Doc. 170 at 20 (stating that quoted passage "does not necessarily impugn the signatories; it could as easily be construed to call into question the reliability of the unnamed source who provided the template to IDEAS").  However, they contend that prior to Segre's e-mailing Winter IDEAS request for updated contract templates, "Segre had asked Winter in a face-to-face meeting for 'the electronic templates for the contracts that she held in her hand, which they had flipped through,' and which had included one of the administrators' two-year contracts."  (Doc. 241 at 4, citing Doc. 241 Ex. AA, Segre Dep. at 248-50 (brackets omitted)).  The IDEAS Defendants further stand by their contention that the contracts were not necessarily signed on February 20, 2009.  *See, e.g., id.* at 6 (IDEAS Defendants noting that DeLong's calendar for February 20 did not list appointments with the other Plaintiffs, and that she "made no mention of the contracts" at a February 25 Board meeting); *id.* at 14 (IDEAS describing as "bizarre . . . [t]he notion that DeLong had signed nine administrators' contracts on a single day – and that the administrators themselves had each signed on that same day," especially in light of DeLong's not describing the contracts at the Board meeting "in the midst of a budgetary emergency.").

10

## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

**DISCUSSION**

**I.  Abandoned Aspects of Plaintiffs' Defamation Claims**

As a threshold matter, the Court notes that Plaintiffs have narrowed the scope of their

defamation claims significantly.  Plaintiffs' 77-page Amended Complaint is replete with

apparently non-exhaustive examples of allegedly defamatory statements made by the IDEAS

Defendants in their Reports, including: (1) DeLong's claim that the IDEAS Reports questioned

her recommendation of a "disingenuous" reorganization plan for the District's finance

department; (2) Gallegos-Jaramillo's, Vigil's, Collins', Martinez', and Winter's claims that

IDEAS recommended that their salaries be cut by 2.1%; (3) McCann's, Chavez-Medina's, and

Winter's claims that IDEAS concluded that their contracts were not valid because they were not

certified administrators; (4) Livingston's claim that IDEAS criticized the efficacy of the special

education department; (5) DeLong's and Livingston's claim that a Report stated that they were

consulting with attorneys; (6) Collins' claims that IDEAS alluded to perceived problems within

her department and criticized "cronyism" within Taos Schools; (7) Martinez' claims that an

IDEAS Report stated that she had only a "vague understanding" of the business plan for school-

based health centers, and that, *inter alia,* she lacked the qualifications to supervise in certain

areas and relied on informal collaborative methods, rather than systematic planning; (8) Winter's

claims that the final IDEAS Report stated that she delayed the Report's issuance by refusing

access to her files, and that she, *inter alia,* frustrated the audit process and facilitated the process

by which employees lacking the necessary qualifications obtained Payroll Specialist licenses.

Plaintiffs' briefing on the instant motion fails to discuss any of the above categories of

statements.  Indeed, Plaintiffs have not even submitted the relevant sections of the Reports into

the record.  Because Plaintiffs have not attempted to show how a jury could find these statements

to be defamatory, the Court finds that Plaintiffs have waived their defamation claims with respect to these statements. The IDEAS Defendants will be granted summary judgment on those portions of Plaintiffs' defamation claims that involve these allegations, as well as any other allegations alluded to in the Amended Complaint and subsequently abandoned by Plaintiffs. *See Andrews v. Stallings,* 119 N.M. 478, 485 (N.M. Ct. App. 1995) (plaintiffs in a defamation suit "must plead precisely the statements about which they complain") (marks omitted).

Thus, only two aspects of Plaintiffs' defamation claims survive: (1) former Superintendent DeLong's and former Finance Director Trujillo's claim that they were defamed by IDEAS' contention that a finance department employee improperly disabled the audit-logging function of the District's accounting software, and succeeded in doing so because DeLong either permitted the disabling or lacked the management understanding to realize it had occurred; and (2) all Plaintiffs' claims that they were defamed by IDEAS' suggestion that the nine employment contracts separately entered into by DeLong and each of the remaining Plaintiffs – each of which bears a February 20, 2009 signature -- may have been executed at a later date.

## II. <u>Applicable Standards of Proof</u>

Before the Court can undertake to analyze Plaintiffs' remaining defamation claims, it must determine the correct standard of proof to be applied to each Plaintiff's claim for damages. The IDEAS Defendants argue that there are various reasons why all Plaintiffs must prove that IDEAS acted with malice in allegedly defaming them – first, that each Plaintiff should be considered a public official or public figure for purposes of the instant claim; second, that even if any Plaintiffs are private actors, a malice standard should be applied to their claims because the challenged statements relate to matters of public concern; and third, that the IDEAS Reports are

13

protected by a qualified privilege.

**A.      Status of the Plaintiffs – Private, Public Officials, or Public Figures?**

There are three categories of defamation plaintiffs – public officials, public figures, and private figures.  *See Newberry v. Allied Stores, Inc*., 108 N.M. 424, 429 (N.M. 1989).  While a private plaintiff can establish a defendant's liability by showing that he negligently made a defamatory statement about the plaintiff, "proof of actual malice (knowledge of the falsity of the statement or reckless disregard of the truth) applies to the public official and public figure plaintiff."  *Id.*  Further, "a public figure or public official must also show the falsity of statements at issue in order to prevail," while a private plaintiff need not make this showing.  *Id.*  Whether a plaintiff in a defamation suit is a public official, public figure, or a private figure is a question of law for the Court.  *See Schwartz v. Am. College of Emergency Phys.*, 213 F.3d 1140, 1145 (10th Cir. 2007).  Thus, if the Court determines that any of the Plaintiffs was a public official or a public figure – including a public figure for a limited range of issues -- at the time of the events in issue, that Plaintiff must set forth specific evidence that the IDEAS Defendants 1) made a false and defamatory statement about her, and 2) did so with knowledge of the falsity of the statement or with reckless disregard of the truth, in order to withstand summary judgment.  *See Philadelphia Newspapers v. Hepps,* 475 U.S. 767, 775 (1986); N.M. U.J.I. 13-1006; *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)); *Schwartz,* 215 F.3d at 1144.

### Superintendent De Long – Public Official

A plaintiff should be designated a public official where she occupies a professional space "among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs," such that "the

14

public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all governmental employees." *Rosenblatt v. Baer,* 383 U.S. 75, 85-86 (1966).  "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy."  *Id.* at 86-87, n.13.  *See also Anaya v. CBS Broadcasting Inc*, 626 F. Supp. 2d 1158, 1184-85 (D.N.M. 2008) ("the Tenth Circuit has characterized certain language from *Rosenblatt v. Baer* as 'the test' for determining whether a person is a public official under the First Amendment").

While the New Mexico courts have not addressed whether a superintendent of a school district satisfies this standard, a number of other states' courts have held that the designation applies.  *See, e.g., Ghafur v. Bernstein*, 131 Cal. App. 4th 1230, 1238 (Cal. Ct. App. 2005) (noting that "whether public school . . . superintendents qualify for public official status has not been considered a close question").  Moreover, in New Mexico, as in many states, "[t]he local superintendent is the chief executive officer of the school district."  NMSA 1978 § 22-5-14(A) (2003).  The Court finds that the statutory definition of DeLong's role, taken together with the evidence that her ongoing dispute with the School Defendants was the subject of intense public interest at the time of her suspension, clearly supports her designation as a public official. Indeed, in *Scott v. News-Herald*, the Ohio Supreme Court found that Ohio law's identical description of a public school superintendent as "the executive officer for the [school] board" was clear evidence that a public school superintendent had "substantial responsibilities in the operation of the system," and thus was "a public official for purposes of defamation law."  *Scott,* 25 Ohio St. 3d 243, (Ohio 1986).  Other courts have noted that "there is apparently universal agreement that public school superintendents . . . merit that designation." *Ghafur*, 131 Cal. App.

at 1238 (collecting cases); *see also Kelley-Moser Consulting, LLC v. Daniels,* 2012 U.S. Dist. LEXIS 21140, at * 65 (D.S.C., Feb. 21, 2012) (treating superintendent as public official in defamation action); *Linton v. Streetsboro City Sch. Dist. Bd. of Educ*., 162 Fed. Appx. 532, 539 (6th Cir. 2006) (defamation plaintiff "agree[d] that, as a school superintendent, she should be classified as a 'public official' for purpose of defamation analysis.").

Plaintiffs' argument for a contrary finding is based solely on their attempt to distinguish this case from *Garcia v. Bd. of Ed. of the Socorro Consol. Sch. Dist.*, 777 F.2d 1403 (1985) – thus far, the only Tenth Circuit case to consider whether certain school officials should be considered public officials within the meaning of *Rosenblatt*.  In *Garcia*, the Tenth Circuit held that "public official" status should be applied to members of a New Mexico public school board, because the board's role as the policy-setting body of the school district gave its members sufficient apparent authority to merit "public official" designation.  Plaintiffs contend that the court's ruling was wholly premised on the fact that a local school board is "the policy-setting body of a school district."  (Doc.211 at 8, citing NMSA 1978 § 22-5-4 (2003)).  Thus, according to Plaintiffs' logic, because a Superintendent does not actually set a school district's policies, she cannot have substantial responsibility for or control over the conduct of the district's affairs.

The holding in *Garcia* is hardly as narrow as Plaintiffs suggest.  The Tenth Circuit concluded that "public official" status should be applied to the board members because

> school board policies are often carefully scrutinized by residents.  Members of the local school board, who are elected to make decisions regarding local education, clearly 'have, or appear to the public to have, substantial responsibility for or control over the conduct of government affairs.'" The strong public interest in ensuring open discussion of their job performance warrants the conclusion that school board members are public officials.

*Id.* at 1408, quoting *Rosenblatt,* 383 U.S. at 85.  Where the board members in *Garcia* received

public scrutiny because their particular function was to set educational policies, here there is evidence that DeLong received public scrutiny because of her high-profile position as the chief executive officer for Taos Schools.  Moreover, Plaintiffs have not identified a single defamation case in which a court held a public school superintendent should be designated as a private plaintiff.  Accordingly, the Court finds that DeLong is a public official for purposes of her defamation claim.

### Principals Gallegos-Jaramillo and Vigil – Public Officials

At the time of the events in issue, Gallegos-Jaramillo was Principal of Arroyo del Norte Elementary School and Vigil was Principal of Enos Garcia Elementary School, both public schools in the Taos School District.  New Mexico courts have yet to take up the question of whether public school principals are to be considered public officials, and other jurisdictions are split on the issue.  Courts that have applied the public-official designation to school principals have emphasized the importance of public schools as national institutions and the fact that a school principal is, in fact and appearance, the person in charge of a school's operation.  *See, e.g. Johnson v. Robbinsdale Indep. School Dist. No. 281,* 827 F. Supp. 1439, 1443 (D. Minn. 1993) (the fact that an elementary school principal "appeared to have responsibility over the conduct of education at [the school] is sufficient to trigger public official standards"); *Palmer v. Bennington Sch. Dist.,*159 Vt. 31, 38 (1992) ("[b]ecause of the crucial role of public education in American society, we agree with the courts holding that a principal is a public official"); *Williams v. Detroit Bd. of Educ.,* 523 F. Supp. 2d 602, 610 (E.D. Mich. 2007).

Courts that have held public school principals were not public officials within the meaning of the Supreme Court's rule in *Rosenblatt* have based their rulings on the findings that principals, in general, are too removed from the general conduct of government to warrant the

17

designation, and/or that the principal in the underlying case had not achieved fame in the community. *See, e.g., Ellerbee v. Mills,* 262 Ga. 516, 517 (Ga. 1992) ("public officials . . . have greater access to media . . . and, therefore a better opportunity to rebut false statements than do private individuals. . . . a principal simply does not have the relationship with government to warrant 'public official status'); *Beeching v. Levee*, 764 N.E.2d 669, 679 (Ind. Ct. App. 2002) (facts that principal was appointed, rather than elected, and lacked notoriety in community weighed against designating her a public official); *E. Canton Ed. Assn. v. McIntosh*, 85 Ohio St. 3d 465 (Ohio 1999) ("The relationship a public school teacher or principal has with the conduct of government is far too remote, in our minds, to justify exposing these individuals to a qualified privileged assault upon his or her reputation.").

After considering the case law, the Court predicts that the New Mexico Supreme Court would classify a public school principal as a public official within the meaning of *Rosenblatt*. New Mexico courts considering a plaintiff's designation have properly relied on the Supreme Court's instruction that "public official" designation is deserved where the government employee "has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds [the position], beyond the general public interest in the qualifications and performance of all government employees." *See, e.g., Furgason v. Clausen*, 109 N.M. 331, 339 (N.M. Ct. App. 1989) (rejecting "public official" status for members of mayoral advisory committee where committee members did not fit the Supreme Court's description of public official as a government employee who "usually enjoy[s] significantly greater access to the channels of effective communication and hence [has] a more realistic opportunity to counteract false statements than private individuals usually enjoy.") (quotation and marks omitted).

18

Under New Mexico law, a public school principal "assume[s] administrative responsibility and overall instructional leadership" for an entire public school.  NMSA 1978 § 22-10A-18 (2003).  Given the centrality of public education as a national institution, the Court concludes that this professional description elevates a public school principal's status in the hierarchy of government employees above that of a private individual, at least with respect to the public's independent interest in his or her qualifications and performance.  Further, there is no evidence that Gallegos-Jaramillo and Vigil possessed less authority than typical public school principals, or less notoriety in the community.  On the contrary, they (and DeLong) were the only Plaintiffs whose EEOC complaints against the individual School Defendants received more than cursory treatment by the local media.  *See* Doc. 173 Ex. B4 (*Taos News* article reporting some of the specific allegations contained in the complaints of DeLong, Gallegos-Jaramillo, and Vigil).  Accordingly, the Court concludes that Gallegos-Jaramillo and Vigil had such apparent importance as to warrant designation as public officials during the relevant time period.[5]

### The Remaining Plaintiffs – Neither Public Officials nor Limited-Purpose Public Figures

The Court finds that none of the remaining Plaintiffs – Collins, a Federal Program Coordinator; Livingston, an "Exceptional Program" Coordinator; Chavez-Medina, a Health Services Coordinator; Martinez, a Director of Instruction; McCann, a Student Nutrition Coordinator; Trujillo, a Finance Director; or Winter, a Personnel Director -- merit public official status.  The IDEAS Defendants have not proffered any evidence that any of these positions has

---

[5]Because the Court finds that DeLong, Gallegos-Jaramillo, and Vigil were public officials at the time of the events in issue, it need not consider the IDEAS Defendants' alternative argument that they were also public figures with respect to the issues raised in the IDEAS Reports.

such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees.  It is insufficient to suggest, as the IDEAS Defendants do, that because "education is an essential government function," all public school administrators – regardless of the nature of their duties,  their position in a school district's hierarchy, or the degree of the public's independent interest in their qualifications and performance – have the apparent importance to merit "public official" designation.  (Doc. 173 at 8) (quotation omitted).

In the alternative, the IDEAS Defendants contend that the remaining Plaintiffs should be considered public figures "with respect to the issues explored by the IDEAS Reports."  (Doc. 171 at 9).  An otherwise private individual becomes a public figure for a limited range of issues where she "voluntarily injects [her]self or is drawn into a particular public controversy." *Schwartz,* 215 F.3d at 1144.(quotation and marks omitted).  The IDEAS Defendants point to three short articles that appeared in *Taos News* in February-April 2009 as evidence purportedly showing that Plaintiffs voluntarily injected themselves into a public controversy:

The first article described how, following DeLong's suspension, DeLong and an unidentified group of administrators filed discrimination complaints against School Defendants Cordova and Coca-Ruiz with various state and federal agencies.  The article suggested, in closing, that the complainants were "hop[ing] to have a good showing of support" at the next School Board meeting.  (Doc. 171 Ex. C2).  It is unclear from the article who expressed this hope, or even whether support was requested on DeLong's behalf or for the other complainants, none of whose grievances were set forth in the article (as, indeed, no Plaintiff other than DeLong was quoted or identified by name);

20

The second article focused on the "mess at the top" of Taos Schools, in light of DeLong's suspension by the School Defendants and the New Mexico Secretary of Education's subsequent threat to suspend the Board. (Doc. 173 Ex. A4). The article noted that the School Defendants were also the subjects of a complaint filed with various state and federal agencies, and included bullets identifying each of the complainants (including, but not limited to, Plaintiffs) by name and title. Livingston – the only one of the remaining Plaintiffs who appears to have spoken to the press – was quoted as stating that the complainants have "been trying really hard here for the past two years. We just couldn't take it anymore." *Id.* However, Livingston "declined to list specific incidents" with respect to any Defendant's conduct towards her or any other complainant;

The third and final article noted that "a group of 11 administrators" had filed a complaint against the School Defendants with the EEOC. (Doc. 173 Ex. B4). The article went on to identify some of the allegations made by Superintendent DeLong and Principals Vigil and Gallegos-Jaramillo. The only one of the remaining Plaintiffs to be mentioned by name is Livingston, whom the article briefly noted "accuses Cordova of breaching confidentiality by talking about specific students and situations." *Id.*

The three *Taos News* articles do not establish the remaining Plaintiffs as public figures with respect to the issues in controversy. At most, six of the seven remaining Plaintiffs – Collins, Chavez-Medina, Martinez, McCann, Trujillo, and Winter – were merely identified in the press as joining in the recently-suspended Superintendent's EEOC complaint against the School Defendants. There is no suggestion that the specific grievances of any of these six Plaintiffs ever became publicly known and no indication that any of the six even spoke to the press. "The status of the individual claiming to be defamed is the controlling factor, not the nebulous interest

21

of the public in a matter with which he is inconspicuously involved." *Lawrence v. Moss*, 639 F.2d 634, 638 (10th Cir. 1981) (holding that defamation plaintiff's campaign consultancy to U.S. Senator "may have made him newsworthy but does not transform him into a public figure"); *see also Anaya*, 626 F. Supp. 2d at 1205 (plaintiff was not limited-purpose public figure during period that CBS television network ran three news broadcasts in which she or the underlying controversy were mentioned, as she did not "thrust herself to the forefront of the public controversy" during this time). Moreover, the fact that one of the articles suggests in passing that the EEOC complainants were "hop[ing] to have a good showing of support" at an upcoming Board meeting is not evidence that Plaintiffs were seeking to transform themselves into public figures.  The article fails to attribute this sentiment to any of the named Plaintiffs, and the Court notes that not all of the administrators who brought the EEOC complaint are parties to the instant lawsuit.

Further, Livingston's speaking to the *Taos News* – but declining to discuss the specifics of the complaint she filed – is insufficient to transform her into a public figure.  This court has "emphasize[d] that a plaintiff does not have to abstain from talking to the press to avoid becoming a public figure." *Anaya,* 626 F. Supp. 2d at 1213 (finding that plaintiff only became a public figure after employing "the weapons of the media" in a sustained media effort); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 454 n.3 (1976) ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceedings in an attempt to satisfy inquiring reporters coverts her into a 'public figure.'").  The stray comments attributed to Livingston and one-line mention of one of her allegations against Defendant Cordova are not evidence of the kind of "voluntary, extensive media campaign to counteract adverse publicity" that this court has found merits designation as a limited-purpose public figure.  *Anaya,* 626 F.

22

Supp. 2d at 1213; *see also Hutchinson v. Proxmire*, 443 U.S.111, 135 (1979) (plaintiff was not

limited-purpose public figure despite making comments published in some newspapers and wire

services, as he "did not have the regular and continuing access to the media that is one of the

accouterments of having become a public figure").

 Accordingly, the Court finds that Collins, Chavez-Medina, Livingston, Martinez,

McCann, Trujillo, and Winter are private figures for purposes of the instant defamation claim.


**B.** **Allegedly Defamatory Statements Being Matter of "Public Concern" is Insufficient to Impose Malice Standard**

 Next, the IDEAS Defendants contend that the malice standard applies to all Plaintiffs'

defamation claims, regardless of their public or private status, because New Mexico law

privileges a defendant "who comments and communicates regarding a matter of public interest

where the subject of the commentary has voluntarily sought and received a government

contract."  (Doc. 170 at 11-12, quoting *Mauck, Stastny & Rassam, P.A. v. Bicknell*, 95 N.M. 702,

704 (Ct. App. 1980)).  The IDEAS Defendants' argument is premised on a misstatement of New

Mexico's defamation law.  Prior to its ruling in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323

(1974), the Supreme Court held defamation plaintiffs to a malice standard in three situations –

where the "plaintiff was either a public official or public figure, or where an allegedly

defamatory statement involved a matter of public concern."  *Marchionado v. Brown*, 98 N.M.

394, 402 (N.M 1982) (collecting cases).  In *Gertz*, however, the Supreme Court eliminated the

mandatory application of the malice standard to a private plaintiff's claim that he was defamed

by speech involving a matter of public concern.  *See Gertz,* 418 U.S. at 347 ("so long as they do

not impose liability without fault, the States may define for themselves the appropriate standard

of liability for a publisher . . . of defamatory falsehood injurious to a private individual.").  New Mexico courts have cited *Gertz* in holding that the "ordinary common law negligence standard of proof shall apply to private defamation plaintiffs to establish liability," including in cases involving matters of public concern.  *Marchionado*, 98 N.M. at 402.

In *Mauck* – which was decided after *Gertz* but before *Marchionado* – the New Mexico Court of Appeals held that a government contractor, the defendant to a libel action brought by a group of private plaintiffs, should have been permitted to amend his Answer to add the privilege defense of "fair comment."  The court found that, once the "fair comment" defense was added, the malice standard would apply to the private plaintiffs' claim:

> Although it is clear that the constitutional privilege [of fair comment] has not been extended beyond cases in which public figures or public officials are involved, *Gertz, supra*, and that the plaintiffs herein are neither public figures nor public officials . . . the common law privilege has been applied to cases where the communication relates to work being paid for out of public funds.  In *Bishop v. Wometco Enterprises, Inc*., 235 So.2d 759 (Fla. Ct. App. 1970) the court stated that where one brings himself into the public arena, regardless of whether he is a public official, a public figure or involved in a matter of public interest, a qualified privilege is created in the communicator.  We agree. . . .

*Mauck*, 95 N.M. at 705.  The IDEAS Defendants fail to mention that *Mauck's* interpretation of defamation law, which relied heavily on pre-*Gertz* case law, was specifically disapproved by the New Mexico Supreme Court in *Marchionado*.  *See Marchionado*, 98 N.M. at 403-04 ("In *Gertz*, however, the United States Supreme Court clearly retreated from, though it did not expressly overrule, its prior position. . . .") (expressly overruling "all other opinions of this Court and the Court of Appeals [that] are inconsistent with this opinion.").  The Court will not be influenced by a thirty-two year-old, overruled Court of Appeals decision in determining the standard of

proof in the instant case.[6]

## C.     The IDEAS Reports Were Initially Protected by Qualified Privilege

Next, the IDEAS Defendants contend that because the challenged statements are protected by qualified privilege, all Plaintiffs, public or private, must meet the "actual malice" standard of proof in order to prove their defamation claims.  Under New Mexico law, "qualified privilege exists where there is a good faith publication in the discharge of a public or private duty." *Bookout v. Griffin*, 97 N.M. 336, 339 (N.M. 1982).  The existence of a qualified privilege "has the effect of taking away from defamatory language the presumption of malice in the publication, and cast[ing] upon the plaintiff the burden of proving actual malice." *Gengler v. Phelps*, 92 N.M. 465, 468 (N.M. Ct. App. 1978).  Information published at the request of or for the benefit of a third party is typically entitled to a qualified privilege.  *See* Restatement (Second) of Torts § 595(1) (qualified privilege exists where publication contains "information that affects a sufficiently important interest of the recipient or a third person" and "the recipient is one to whom the publisher is under a legal duty to establish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct"); *Hagebak v. Stone*, 133 N.M. 75, 79 (N.M. Ct. App. 2002).  The Court agrees that the IDEAS Reports, which were prepared pursuant to a contract between IDEAS and Taos Schools, are publications prepared in the discharge of a private contractual duty.  *See Hemsing v. Philips*

---

[6]As additional support for their position that a malice standard must apply to all Plaintiffs' claims the IDEAS Defendants cite *Vigil v. State Auditor's Office*, 138 N.M. 63 (N.M. Ct. App. 2005), in which the New Mexico Court of Appeals held that the subject of an audit failed to establish that the certified public accountant who performed the audit owed him a duty of care, in considering the former's common-law negligence claim.  *Vigil* did not involve a claim for defamation and the Court does not find its analysis helpful to the resolution of the instant claim.

*Semiconductors*, 1999 U.S. App. LEXIS 15152 at *11 (10th Cir., July 9, 1999) (independent consultant hired to perform audit held qualified privilege with respect to his findings).

**D.     Whether Qualified Privilege was Abused**

Next, the Court must determine whether reasonable minds can disagree as to whether the IDEAS Defendants abused their qualified privilege.  *See Mahona-Jojanto, Inc. v. Bank of New Mexico*, 79 N.M. 293, 296 (1968) (abuse of qualified privilege is a question of fact); *Stewart v. Ging*, 64 N.M. 270, 274 (1958) (same).  Here, Plaintiffs contend that the IDEAS Defendants abused their qualified privilege in three ways: (1) by exceeding the scope of their mandate to include discussing "any so-called improper actions" by Plaintiffs (Doc. 211 at 16); (2) by publishing the challenged communications in a public report, rather than making them confidential "to [Taos Schools'] attorney or Superintendent," *id;* and (3) by publishing the allegedly defamatory statements while not having a reasonable belief in their truth. *See* N.M. U.J.I. 13-1012 (2012) (itemizing circumstances leading to abuse of qualified privilege, such as when the speaker published the challenged statement(s) for an improper purpose or beyond what was reasonably necessary "to accomplish the proper purpose for which the communication was made," "acted with reckless disregard for the truth or falsity of the statement," or "did not believe, or did not have reasonable cause to believe, that the communication was true.").

With respect to their first contention, Plaintiffs fail to set forth any evidence showing that the IDEAS Defendants exceeded the scope of their mandate to "conduct a detailed analysis of the processes and procedures of specific departments" within Taos Schools,  when they identified supposed irregularities regarding the district's accounting software and Plaintiffs' employment contracts, and allegedly assigned blame for those irregularities to Plaintiffs.   (Doc. 170 Ex. D).  The Court will not make and support an argument on Plaintiffs' behalf.

26

Similarly, Plaintiffs fail to offer any support for their contention that IDEAS published its Reports beyond what was necessary by presenting at least one of them in summary form at a Taos Schools Board meeting and making both the July and August Reports publicly available on the internet.  Further, Plaintiffs do not explain how, if at all, their position is affected by IDEAS' argument that the Reports were public records which would have been subject to public inspection even if they had not been widely disseminated.  *See* NMSA 1978 § 14-2-1 (2011). Accordingly, the Court finds there is no evidence that the IDEAS Defendants abused their qualified privilege by publishing the allegedly defamatory remarks beyond what was necessary.

Finally, with respect to Plaintiffs' argument that the IDEAS Defendants abused their qualified privilege because they did not have a reasonable basis to believe in the truth of the challenged statements, the IDEAS Defendants respond by challenging the legality of the applicable State-law standard.  *See* N.M. U.J.I.13-1012 ( "Defendant abused the privilege if . . . Defendant did not believe, or *did not have reasonable cause to believe*, that the communication was true") (emphasis added).  The IDEAS Defendants note that the Restatement requires a showing of actual malice to overcome a qualified privilege in a defamation case and that New Mexico law allowing the privilege to be defeated on a  lesser, "lack of reasonable cause" showing creates the possibility of an outcome that "would make no sense."  Doc. 170 at 15; *see also* Restatement (Second) of Torts, § 600; NM UJI 13-1012.  They suggest that providing for a loss of qualified privilege under these circumstances would be tantamount to allowing the privilege to be lost by a showing of defendant's negligence, the same standard of proof that private plaintiffs must meet in defamation cases.  Thus, according to the IDEAS Defendants, "if that same negligence [used to support a finding that a defendant was liable for defamation of a private plaintiff] . . . sufficed to negate the [defendant's] qualified privilege, the privilege would

27

accomplish nothing whatsoever."  (Doc. 170 at 15-16).

It is unambiguous that under New Mexico's defamation law, qualified privilege is lost on a showing that the holder of the privilege lacked "reasonable grounds for belief[] in the truth of the alleged defamation."  *Mahona-Jojanto*, 79 N.M. at 296; *see also* N.M. U.J.I. 13-1012; *Gregory Rockhouse Ranch, LLC v. Glenn's Water Well Service, Inc.,* 144 N.M. 690 699 (N.M. Ct. App. 2008) (acknowledging that privilege can be abused on this basis but finding that it was not abused in the underlying suit); *Baker v. Bhajan*, 117 N.M. 278, 283 (1994); *Gengler*, 92 N.M. at 468; *Salazar v. Bjork*, 85 N.M. 94, 97 (N.M. Ct. App. 1973); *Anderson v. Dun & Bradstreet, Inc*., 543 F.2d 732, 738-39 (10th Cir. 1976).  This is not the isolated suggestion of the New Mexico Court of Appeals in a single case, as the IDEAS Defendants suggest, but the law of the State as set forth in numerous cases and in the applicable Uniform Jury Instruction. *See id.*  The Court declines to reject this sizable body of governing law on the strength of the IDEAS Defendants' conclusory suggestion that finding privilege abused under these circumstances is the equivalent to finding privilege abused where the defamation defendant was negligent.  Therefore, the Court must consider whether the evidence suggests that reasonable minds can differ on the question of whether the IDEAS Defendants lacked reasonable grounds for believing in the truth of the allegedly defamatory sections of the IDEAS Reports.

### No Abuse of Privilege in IDEAS' Statement About the Supposedly Disabled Accounting Software

The record presents no basis upon which a juror could conclude that the IDEAS Defendants lacked the reasonable grounds to believe that the accounting software was intentionally disabled by a Finance Department employee, a maneuver that the Report claimed "create[d] a very large risk of management exposure" to liability.  (Doc. 170 Ex. L).  Plaintiffs

28

offer no evidence tending to cast doubt on the Report's statement that this finding was based on

a tip from the software manufacturer's customer service department, and make no argument that

it was unreasonable to believe the customer service agent's declaration.  Rather, Plaintiffs simply

state that the IDEAS Defendants deliberately "falsified the statement that the 'Network logs

show that audit logging was turned off in [the software] approximately 6 months ago,'" without

elaborating further or offering any argument as to why, if the IDEAS Defendants intentionally

made a false statement, they elected to omit this statement from subsequent Reports after

receiving contradictory information from higher-ranking representatives of the software

company.  (Doc. 200 at 2).  Accordingly, the Court finds that there is no question of material fact

regarding whether the IDEAS Defendants maintained their qualified privilege to publish the

above statement, which Plaintiff Trujillo contends defames her.[7]

### Possible Abuse of Privilege in IDEAS' Statement That Plaintiffs' Contracts May Have Been Backdated

The Court finds that there is a genuine issue of material fact as to whether the IDEAS

Defendants abused their qualified privilege when they reported that they had uncovered

information which cast doubt on the date that Plaintiffs' employment contracts were

"purportedly signed."  (Doc. 170 Ex. E at 65).  The Report's statement that "IDEAS requested

and received an electronic copy of the template purportedly used to create the 2009 contracts," is

contradicted by Plaintiffs' evidence that IDEAS actually requested, with far less specificity, "any

contract templates that have been updated for 2009-2010."  (Doc. 170 Ex. N).  If the IDEAS

---

[7]Because Plaintiff DeLong is a public official, the privilege analysis has no effect on her claim that she was defamed by other language in the same section of the Report – the malice standard of proof applies to her claim whether or not IDEAS held a qualified privilege to publish the statement she challenges.

Defendants cannot establish that the request was made as represented in the Report, a factfinder could conclude that IDEAS lacked a reasonable basis to believe that the templates it received were the same templates used to generate Plaintiffs' contracts, and thus lacked a reasonable basis to suggest in a public report that the contracts must have been backdated "almost a full month after they were purportedly signed."  (Doc. 170 Ex. E at 65).  Indeed, there is evidence that, a month before the August Report was issued, IDEAS recognized "that there is still doubt" as to whether or not the contracts were invalid for being falsified, and that Baston outlined several steps that would need to be taken "to obtain satisfactory . . . evidence of what actually transpired with these documents."  (Doc. 211 Ex. 4).  IDEAS has proffered no evidence that it took any of the measures indicated.  Thus, the Court concludes that Plaintiffs have set forth evidence that, if believed, would establish that the IDEAS Defendants lost their qualified privilege by publishing statements about Plaintiffs' contracts that they did not have a reasonable basis to believe were true.

In sum, the Court finds that, because the statements in the IDEAS Reports related to the allegedly disabled accounting software are privileged, in order to withstand summary judgment on this aspect of their defamation claims, both public official DeLong and private figure Trujillo need to set forth sufficient evidence that the IDEAS Defendants defamed them with malicious intent.  However, because there is a material dispute as to whether the IDEAS Defendants abused their qualified privilege with respect to another of the Report's findings – that Plaintiffs' employment contracts may have been intentionally backdated -- summary judgment will be granted on this aspect of Plaintiffs' claims only if the IDEAS Defendants can show that they would be entitled to summary judgment even if the privilege was lost.  Thus, the IDEAS Defendants will only be granted summary judgment on Plaintiffs' claims that they were defamed

30

by the statements about their contracts' dates if the Court finds an absence of sufficient evidence

that IDEAS maliciously defamed the three public-official Plaintiffs (DeLong, Gallegos-

Jaramillo, and Vigil) and negligently defamed the seven remaining private Plaintiffs.

### III.  Analyzing Plaintiffs' Remaining Defamation Claims

Under New Mexico law, the elements of defamation include (1) a publication by the

defendant (2) of an asserted fact (3) which is defamatory, (4) communicated to a third person,

(5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff.  *See*

*Schwartz*, 213 F.3d at 1145, citing *Newberry,* 108 N.M. at 429; *see also* N.M. U.J.I. 13-1007.

The IDEAS Defendants do not dispute that Plaintiffs can establish the first, second, fourth, fifth,

and sixth elements of a defamation claim.  Thus, the Court need only consider whether there is

sufficient evidence in the record that the statements at issue were defamatory.  The Court will

deem a statement to be defamatory per se, if

> without reference to extrinsic evidence and viewed in its plain and obvious
> meaning, the statement imputes to plaintiff: the commission of some criminal
> offense involving moral turpitude; affliction with some loathsome disease, which
> would tend to exclude the person from society; unfitness to perform duties of
> office or employment for profit, or the want of integrity in discharge of the duties
> of such office or employment; some falsity which prejudices plaintiff in his or her
> profession or trade; or unchastity of a woman.

*Newberry*, 108 N.M. at 429.  A statement this is not defamatory per se, "but which becomes

defamatory when its meaning is illuminated by proof of extrinsic facts," is actionable as

defamation per quod.  *Id.*; *see also Marchionado*, 98 N.M. at 287-88.

### A.  <u>Statement About the Supposedly Disabled Accounting Software</u>

There is no evidence in the record that the IDEAS Defendants maliciously defamed

DeLong and Trujillo by reporting the circumstances that led them to conclude that the audit-

logging function of the District's accounting software had been intentionally disabled, leaving

Taos Schools subject to "a very large risk of management exposure."  (Doc. 170 Ex. L).  Under

the "actual malice" standard, a plaintiff must prove by clear and convincing evidence "that a

defamatory statement was published with knowledge that it was false or with reckless disregard

of whether it was false."  *Anaya*, 626 F. Supp. 2d at 1183 (quotation and marks omitted); *see*

*also Hardin v. Santa Fe Reporter, Inc*., 745 F.2d 1323, 1326 (10th Cir 1984) (plaintiff's burden

under malice standard is to show "that the defendant realized that his statement was false or that

he subjectively entertained serious doubt as to the truth of his statement") (quotation omitted).

While the Report's conclusions that the disabling was deliberate and that DeLong either

permitted it or "lacked the management understanding" to realize it had occurred were

admittedly erroneous, there is no evidence that these conclusions were based on anything but

information obtained directly from the software manufacturer's own customer service

department.  *See supra at 28*.  Given the severity of the Report's conclusion with respect to

DeLong, the outcome of the Court's analysis might have been different if DeLong and Trujillo

were merely required to set forth evidence that IDEAS was negligent in not seeking additional

guidance as to whether the software was disabled.  However, under the applicable "actual

malice" standard, there is simply no evidence that the IDEAS Defendants entertained any serious

doubt that the audit-logging function was intentionally disabled.  Thus, because Plaintiffs have

not set forth sufficient evidence that the challenged statement was published with reckless

disregard as to its truth or falsity, the Court need not reach the question of whether the

statements were defamatory.

**B.**   **Statement That Plaintiffs' Contracts May Have Been Backdated**

The parties dispute whether a defamatory meaning can be given to the August Report's

statement that

> IDEAS requested and received an electronic copy of the template purportedly
> used to create the February 2009 contracts.  The document was imbedded in an
> email, but when it was extracted intact, our IT experts were able to read the
> creation date of the template as March 18, 2009, almost a full month after they
> were purportedly signed.  This information has been placed in the hands of [Taos
> Schools'] legal counsel.

(Doc. 170 Ex. E at 65).  While the IDEAS Defendants argue that the statement "does not

necessarily impugn the signatories" and "could as easily be construed to call into question the

reliability of the unnamed source who provided the template to IDEAS," (Doc. 170 at 20),

Plaintiffs respond that, because they were each identified in a chart adjacent to the above

statement, each of them were accused of "backdat[ing] a public document. . . . That is a fourth

degree felony."  (Doc. 211 at 18, citing NMSA 1978, § 3-26-1 (defining charge of "tampering

with public records" under New Mexico law)).  The Court agrees with Plaintiffs that a

reasonable factfinder could view the above statement in its plain and obvious meaning to accuse

them of the kind of extreme misconduct that could prejudice them in their professions. *See*

*Newberry*, 108 NM. at 429; NM UJI 13-10007 ("Defamatory communications are those which

tend to expose a person to contempt, to harm the person's reputation, or to discourage others

from association or dealing with [her]").  Thus, the only question that remains for the Court to

consider is whether each Plaintiff has set forth sufficient evidence to meet the applicable

standard of proof for her defamation claim.

Private-figure Plaintiffs Collins, Chavez-Medina, Livingston, Martinez, McCann,

Trujillo, and Winter have provided sufficient evidence to permit a jury to find that the IDEAS

Defendants acted negligently in publishing the above statement. New Mexico courts have

articulated the meaning of negligence in the context of a defamation suit as publishing an

allegedly defamatory statement "with negligent disregard for the truth."  *Furgason v. Clausen*, 109 N.M. 331, 338 (N.M. Ct. App. 1989).  Here, there is a genuine factual dispute over how IDEAS phrased its request for the contract template – indeed, the parties dispute whether IDEAS even requested the specific template used to create Plaintiffs' contracts.  Should the jury believe Plaintiffs' version of events, it could conclude that, at the very least, the IDEAS Defendants negligently disregarded the truth when they strongly suggested that the contracting parties backdated their contracts.  Further, Plaintiffs have proffered evidence that IDEAS recognized that several steps would need to be taken "to obtain satisfactory . . . evidence of what actually transpired with these documents," (Doc. 211 Ex. 4), and there is nothing in the record to indicate that IDEAS took those steps before publishing the challenged statement.

        The same evidence that supports a finding of negligent defamation is also sufficient to meet DeLong's, Vigil's, and Gallegos-Jaramillo's burden of supporting their claims under the "actual malice" standard.  As the IDEAS Defendants themselves note, if a jury believes Plaintiffs' evidence that IDEAS did not specifically request the correct template from Plaintiff Winter as claimed in the Report, the jury must reject as false "the factual premise of the entire paragraph" at issue.  (Doc. 170 at 21).  Moreover, Plaintiffs' proffering of a document that appears to show that Peter Baston acknowledged cause for doubt as to validity of the backdating charge before proceeding to publishing that charge is evidence that the statement was published with reckless disregard for whether it was true or false.  *Anaya*, 626 F. Supp. 2d at 1183.  The IDEAS Defendants contend that the document in question – which attributes to Baston the "statement that there is still doubt that these contracts are all invalid" (Doc. 211 Ex. 4) – does not allude to Baston's own subjective doubt, but to the doubts of others.  (Doc. 241 at 4).  While a jury may or not believe IDEAS' contention, the Court finds that the evidence that IDEAS

34

recognized that additional measures would need to be taken to "conclusively" establish when the contracts were signed, yet failed to take them, is sufficient to deny summary judgment on the "public official" Plaintiffs' defamation claims.

Therefore, the Court finds that a triable issue of fact exists as to whether the IDEAS Defendants abused their qualified privilege by publishing the statements related to the possible backdating of Plaintiffs' employment contracts in the August Report.  Further, the Court finds that all Plaintiffs – be they private figures or public officials – have set forth sufficient evidence to establish a genuine issue of material fact as to whether they were defamed by this section of the August Report, under either a negligence- or "actual malice" standard of proof.


## CONCLUSION

For the foregoing reasons, it is therefore ordered that the IDEAS Defendants' various motions for summary judgment against the individual Plaintiffs (Doc. 170-179) are granted in part and denied in part as follows:

1.      The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Loretta DeLong, Ed.D.* (Doc. 170) is DENIED as to DeLong's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of DeLong's claim;

2.      The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Lucille Gallegos-Jaramillo, Ph.D.* (Doc. 171) is DENIED as to Gallegos-Jaramillo's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all

other aspects of Gallegos-Jaramillo's claim;

3.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Nadine M. Vigil* (Doc. 172) is DENIED as to Vigil's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Vigil's claim;

4.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Mary Ann McCann* (Doc. 173) is DENIED as to McCann's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of McCann's claim;

5.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Maria Chavez-Medina* (Doc. 174) is DENIED as to Chavez-Medina's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Chavez-Medina's claim;

6.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Catherine Collins, Ph.D.* (Doc. 175) is DENIED as to Collins' claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Collins' claim;

7.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Jeanelle S. Livingston* (Doc. 176)  is DENIED as to Livingston's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of

36

Livingston's claim;

8.      The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Rose M. Martinez* (Doc. 177) is DENIED as to Martinez' claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Martinez' claim;

9.      The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Esther C. Winter* (178) is DENIED as to Winter's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Winter's claim;

10.     The IDEAS Defendants' *Motion for Summary Judgment with Respect to Claims of Plaintiff Elizabeth A. Trujillo* (179) is DENIED as to Trujillo's claim that she was defamed by the section of the August Report suggesting that Plaintiffs' contracts were backdated; the motion is GRANTED with respect to all other aspects of Trujillo's claim.


_____
UNITED STATES DISTRICT COURT JUDGE